# Exhibit 3

CAUSE NO. 2011 08168

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § § § | |
| Plaintiff, | § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| TOXIKON CORPORATION, | § § | |
| Defendant | § § § | 113 JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Spark Energy Gas, LP complains of Defendant, Toxikon Corporation, and respectfully shows the Court as follows:

### I. DISCOVERY LEVEL

1. Discovery should be conducted pursuant to Level 2 of Texas Rule of Civil Procedure 190.3.

### II. PARTIES

2. Plaintiff, Spark Energy Gas, LP ("Plaintiff" or "Spark Energy"), is a partnership organized under the laws of the State of Texas, with its principal place of business at 2105 City West Boulevard, Suite 100, Houston, Texas 77042.

3. Defendant Toxikon Corporation ("Defendant" or "Toxikon") is a Massachusetts corporation registered to and doing business in Texas, with its principal place of business at 15 Wiggins Avenue, Bedford, Massachusetts 01730. Defendant may be served with process through its registered agent in the State of Texas, Stephen Mohan, at 5962 Negley Drive, Kyle, Texas 78640.

**FILED**
Chris Daniel
District Clerk
FEB - 8 2011
Time: _____
Harris County, Texas
By _____ Deputy

## III. VENUE, JURISDICTION AND CONDITIONS PRECEDENT

4. Venue is proper in Harris County, Texas, pursuant to Chapter 15.002 of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions and damages giving rise to Plaintiff's claims occurred in Harris County, Texas, and in the alternative because Plaintiff resides in Harris County, Texas.

5. Defendant is registered to and regularly conducts business in the State of Texas and maintains an agent for service of process in Texas. Further, Defendant entered into a contract performable in Texas.

6. The damages sought in this lawsuit are within the jurisdictional limits of this Court.

7. All conditions precedent to the filing of this lawsuit have occurred or transpired.

## IV. FACTUAL BACKGROUND

8. Spark Energy provides natural gas services to retail customers. Spark Energy has provided natural gas to Toxikon under two contracts. On or about May 8, 2007, Spark Energy entered into a Natural Gas Sales Agreement with Toxikon, which was effective from June 1, 2007 through May 31, 2010. On or about May 9, 2007, Spark Energy entered into a second Natural Gas Sales Agreement (the "Contract") with Toxikon. The Contract was effective from June 1, 2010 through May 31, 2012. A true and correct copy of the Contract is attached hereto as "Exhibit A."

9. Under the terms of the two agreements executed in May 2007, Spark Energy agreed to provide fixed quantities of natural gas, at a fixed price, to meet Toxikon's monthly demand from June 2007 through May 2012. This fixed price arrangement enabled Toxikon to avoid the financial uncertainties associated with variable or fluctuating prices for natural gas.

Toxikon, among other things, agreed to take the gas provided to it, and to pay the amounts invoiced for the gas by the due date stated in the Contract.

10. From June 2007 through May 31, 2010, Spark Energy provided natural gas to Toxikon under the first contract. Spark Energy began providing natural gas to Toxikon under the second Contract on June 1, 2010, and continued through August 2010. Toxikon was invoiced on a monthly basis for the gas provided by Spark Energy. Thereafter, Toxikon refused to take gas as required by the Contract and refused to pay any invoices after May 2010.

11. The Contract provides that in the event of an uncured default, Spark Energy is entitled to terminate and liquidate the Contract, calculate the liquidated amount owed by Toxikon with reference to the Contract price and market price, discounted to present value, and to determine a settlement amount by calculating the gains, losses, and costs (including attorneys' fees) incurred as a result of liquidation. Spark Energy determined that the settlement amount pursuant to the Contract was $301,124, exclusive of attorney's fees and costs associated with pursuing this lawsuit. The basis for this amount is set forth in the Affidavit attached hereto as "Exhibit B."

12. After informal attempts to obtain payment failed, on November 11, 2010, Spark Energy sent Toxikon a Notice of Default notifying Toxikon that an Event of Default had occurred under section 8 of the Contract, and demanding the settlement amount of $301,124 if the default was not cured with ten (10) days. After Toxikon failed to cure the default, Spark Energy sent a second letter to Toxikon on December 1, 2010 requesting immediate remittance of $301,124. Despite this demand, Toxikon failed to pay this or any outstanding amounts owed to Spark Energy. On January 18, 2011 Spark Energy sent a final demand letter to Toxikon again requesting payment within ten (10) days of the $301,124 owed by Toxikon under the Contract.

13. Toxikon has failed to pay any of the settlement amount owed to Spark Energy under the Contract.

## V. CAUSES OF ACTION

Each of the following causes of action are alleged as alternative pleadings.

### Breach of Contract

14. Plaintiff incorporates the paragraphs above as if fully restated herein.

15. The Natural Gas Sales Agreement is an enforceable contract between Spark Energy and Toxikon.

16. Spark Energy fully performed all of its obligations under the Contract, including contracting with third-parties for and obtaining the requisite supply of natural gas to satisfy Toxikon's monthly demand, and delivering natural gas to Toxikon in the agreed-upon amounts.

17. Toxikon failed to perform its obligations under the Contract by refusing to make timely payments due under the Contract and refusing take and pay for the natural gas as required by the Contract.

18. Spark Energy provided Toxikon with Notice of Default and a sufficient opportunity to cure, which Toxikon failed to do.

19. Spark Energy suffered damages as a result of Toxikon's breach.

20. Pursuant to the terms of the Contract, Spark Energy is entitled to the settlement amount of $301,124 from Toxikon.

### Attorneys' Fees

21. Plaintiff incorporates the paragraphs above as if fully restated herein.

22. Plaintiff has presented a written demand to Defendant for payment of its obligations under the Contract. More than thirty (30) days have passed after the date of the demand for payment, and Defendant has failed to pay the amounts owed.

23. As a result of the above and foregoing, Plaintiff has employed the law firm of Baker & Hostetler LLP to prosecute its claims against Defendant. Pursuant to the Texas Civil Practice and Remedies Code Sections 38.001 and 38.002, *et seq.*, Plaintiff is entitled to recover reasonable and necessary attorneys' fees from Defendant.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Spark Energy Gas, LP prays that upon trial of this matter, it be granted all of the relief requested herein, including actual damages, pre-and post-judgment interest, reasonable and necessary attorneys' fees, and all costs and expenses associated with the prosecution of these claims. Plaintiff further prays for all other relief, legal and equitable, to which it is justly entitled.

Respectfully submitted,

BAKER & HOSTETLER LLP

By: *[signature]*
Glen Shu
State Bar No. 00797429
Joshua C. Thomas
State Bar No. 24066185
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: (713) 751-1600
Facsimile: (713) 276-1626

**ATTORNEYS FOR PLAINTIFF**

Certified Document Number: 47787018 - Page 5 of 5



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 24, 2011

Certified Document Number:       47787018 Total Pages: 5

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

CONFIRMED FILE DATE: 2/8/2011

May 09 07 01:48p    Patriot Energy    1-781-378-0538    p.3

**SPARK ENERGY GAS, L.P.**
3810 BRIARPARK
Houston, TX 77042
Phone: 1-877-??-9427

Toxilcon Corporation
Dexter Williams
Multiple

Billing Contact: Dexter Williams
Billing Address: 15 Wiggins Avenue Bedford, MA 01730

Type: Non-Daily    [X] New    [ ] Renewal    [ ] Amendment
Term: From June 1, 2010 to May 31, 2012
Utility: Keyspan    Pool: TGP

Monthly Demand Quantities (MDQ):
January 3,330   March 2,806   May 1,773   July 1,003   September 1,408   November 2,693
February 4,536   April 2,453   June 1,836   August 1,108   October 1,733   December 3,501

Price: [X] Fixed   $13.000 /Dth   Total 32,797
       [ ] NYMEX Plus

Price Date: 05/09/07

The Gas Daily Index: TGP

Ken Zlober    5-9-07
5-9-07


EXHIBIT A

Certified Document Number: 47787019 - Page 1 of 2



Certified Document Number: 47787019 - Page 2 of 2

# SPARK ENERGY GAS, L.P.

## TERMS OF SERVICE

1. Terms of Service: The "Terms of Service" that URS is required to provide to certain Customers under 220 C.M.R. § 14.05(2) are specified on this and the reverse side of this page. Please call 1-877-228-9427 (1-URS2BUYGAS) for URS customer service and complaints.

2. Term: The term of this Agreement is the Term specified on the reverse side of this page ("Primary Term"). The term will renew month-to-month (each month a "Subsequent Term") unless a "Renewal" Agreement is executed or this Agreement is terminated by a party upon 30 days written notice effective at the end of the term then in effect. The Price for each Subsequent Term will be the Gas Daily Index plus the fee specified on the reverse side of this page, in addition to customers monthly billed costs of capacity assigned by its utility, if any. If this Agreement is an "Amendment," the terms of this Agreement supersede and replace any prior Agreement for the specified Service Locations.

3. Delivery and Imbalances: Title to, control, possession of and risk of loss in the Gas will pass from URS to Customer at the Utility city gate. The parties shall use reasonable efforts to avoid imbalances resulting in penalties or cash-out obligations under the provisions of the transportation tariffs of any pipeline or LDC transporting gas sold hereunder. Except as otherwise provided herein, URS will be responsible for and indemnify Customer against any charges or penalties assessed by a pipeline or LDC against either party, as a result of URS' over or under deliveries of gas for the account of Customer to correspond with the Monthly Demand Quantities set forth in this contract, except as a result of Force Majeure. Provided however, Buyer will promptly (at least three (3) Business Days prior to such event or circumstance) advise URS of any event or circumstance that is likely to cause Customer's natural gas consumption during the current month, or any future month, to be 20% more or less than Customer's Monthly Demand Quantity as set forth in this contract, including, without limitation, opening or closing of a facility, increases or decreases in operating hours, furnace outages, boiler shutdowns and additions or maintenance of equipment (a "Material Change"). Customer recognizes that in the event Customer's usage varies from the amount delivered by URS, the upstream pipeline(s) and/or LDC may assess URS certain charges or penalties.

4. Price: The NYMEX Plus Price is the sum of a NYMEX-based charge and the fixed fee specified on the reverse side of this page. The NYMEX-based charge for each month is the settlement price on the last day of trading of the New York Mercantile Exchange ("NYMEX") Gas futures contract for the relevant month ("Settlement Date"); however, the parties may agree at any time 3 business days prior to 12:00 noon of the Settlement Date for any month to select the NYMEX-based charges for that month and the remaining months of the Primary Term based on NYMEX Gas futures contract prices. "Gas Daily Index" means the average of the specified *Gas Daily* daily index midpoint prices set forth on the reverse side of this page for the relevant month.

5. Billing and Payment: URS will invoice Customer for Gas delivered during each billing period. Customer's billing period will be approximately 30 days in duration. Customer will remit the amount due to URS in the manner specified in URS' invoice instructions no later than the 25th day of each month. Customer will pay URS interest on any overdue amount from the due date until the date payment is made at the lesser of (i) 10% per annum; or (ii) the maximum rate permitted under 220 C.M.R. § 25.10 or other applicable law ("Interest Rate").

6. Taxes: The Price and any GSA described on the opposite side of this page exclude applicable federal, state and local taxes ("Taxes"). Customer will pay or reimburse URS for any Taxes URS is required to collect or pay on the sale of Gas to Customer, including new or modified Taxes.

7. Credit: URS may request a security deposit pursuant to 220 C.M.R § 26 and Customer will post the security deposit within 15 days of URS' request. Interest on cash and cash-equivalent deposits will be paid as set forth under 220 C.M.R. § 26.09.

8. Events of Default: "Event of Default" means (i) the failure of either Party (or its guarantor) to make any payment required by the applicable due date and the failure is not remedied within five (5) days of receipt of written demand for cure; (ii) the failure of Customer to provide satisfactory Credit Assurance within five (5) days of URS' demand; and (iii) the failure of either Party to perform any other obligation within ten (10) days of receipt of written demand for cure.

9. Remedies: Upon the occurrence and during the continuance of an Event of Default, the non-defaulting Party may: (i) withhold any payments or suspend any deliveries due hereunder; (ii) upon written notice at least one day in advance, accelerate any amounts owing between the Parties and terminate and liquidate any agreements between the Parties; (iii) determine a settlement amount for each agreement by calculating the gains, losses and costs (including reasonable attorney's fees and the costs of obtaining, maintaining and liquidating commercially reasonable hedges) incurred as a result of the liquidation, discounted to present value at 6% per annum, and (iv) calculate a net settlement amount by aggregating into one amount all settlement amounts and all other amounts owing between the Parties. Any net settlement amount due from the defaulting Party will be paid within three (3) days of receipt of written notice from the non-defaulting Party. Interest on any unpaid portion of the net settlement amount will accrue daily at the Interest Rate. The settlement amount for this Agreement is the difference between the Price and the market price (as reasonably determined by URS) of the MDQ for the remainder of the Primary Term, discounted to present value at 6% per annum.

10. Limitations: Neither Party will be liable to the other Party for any consequential, punitive or indirect damages or specific performance arising from its non-performance, breach or breach of warranty under this Agreement. No delay or failure by a party to exercise any right or remedy to which it may become entitled will constitute a waiver of that right or remedy. All waivers must be in writing. All remedies set forth herein are without prejudice and in addition to any right of setoff, recoupment, combination of accounts, lien or other right to which a Party is at any time otherwise entitled (whether by operation of law, under contract or otherwise).

11. Changes in Laws: This Agreement is subject to all tariffs, laws, orders, rules, Taxes and regulations issued, approved by or on file with duly constituted governmental authorities having jurisdiction ("Laws"). If a change in Laws (excluding new or modified Taxes, which may always be passed through to Customer under Section 6) affects the Price, the Price will be adjusted to restore, to the maximum extent feasible, the economic benefits and burdens of this Agreement, provided that, either Party may terminate this Agreement upon 30 days written notice if a change in Laws (except new or modified Taxes) materially and adversely affects the Price.

12. Force Majeure: Neither Party will be liable to the other Party for failure to perform its obligations when the failure is due to causes not reasonably within the Party's control, and not caused by the Party's own negligence ("Force Majeure"). Force Majeure cannot be caused by an increase or decrease in Taxes or the cost of Gas, or the economic hardships of a Party or its business. Force Majeure will not excuse Customer from paying for Gas delivered for its account. The Party affected by a Force Majeure event will notify the other Party in writing as soon as practicable and will use due diligence to resume performance under this Agreement. Settlement of strikes and/or lockouts is solely at the discretion of the affected Party.

13. Warranties: URS warrants (i) it has good title to all Gas delivered, (ii) it has the right to sell the Gas, and (iii) the Gas will be free from all royalties, liens, encumbrances, and all applicable Taxes that are imposed upon the production or removal of Gas prior to passage of title. ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ARE DISCLAIMED.

14. Binding Agreement: This Agreement will inure to and be binding on the successors and permitted assigns of the Parties; provided that Customer may not assign this Agreement, nor any of its rights or obligations, without obtaining written consent from URS, which consent will not be unreasonably withheld, conditioned or delayed. This Agreement may be signed in any number of counterparts, each of which is an original document, and all of which together constitute one Agreement. This Agreement is governed by New York law.

15. Massachusetts Specific Terms: No more than one supplier may be designated to provide natural gas services to a meter or group of meters at a specific location. Customer's LDC may charge a fee for changing natural gas suppliers; contact your LDC for information. If there is a dispute between Customer and URS, URS will make available alternative dispute resolution procedures as required by 220 C.M.R. § 14.06(4)(b). URS will provide Customer a minimum of 10 days written notice by first class mail prior to termination of service due to reasons other than non-payment. Customer should contact its local distribution company for details on the availability and terms of default LDC service. URS will notify Customer in writing at least 30 days prior to the expiration of the Term of any changes in the Terms of Service for the Subsequent Term, unless already described herein.

Customer Signature [signature]

Date 5-9-07

5/9/07

I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 24, 2011

Certified Document Number:     47787019 Total Pages:  2

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

CAUSE NO. **2011 08168**

| | | |
|---|---|---|
| SPARK ENERGY GAS LP | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| TOXIKON CORPORATION, | § § | 113 JUDICIAL DISTRICT |
| Defendant | § § § | |

### AFFIDAVIT OF DREW HENDERSON

STATE OF TEXAS §
§
COUNTY OF HARRIS §

1. My name is Drew Henderson. I am over the age of 21 years, of sound mind, and am in all respects competent and qualified to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct. I am Director of Retail Gas Structuring and Pricing for Spark Energy Gas, LP ("Spark Energy"), Plaintiff in the above-styled lawsuit.

2. I have reviewed the factual statements in Plaintiff's Original Petition and these statements are all true and correct to the best of my knowledge.

3. Spark Energy entered into two Natural Gas Sales Agreements with Toxikon Corporation ("Toxikon"), Defendant in the above-styled lawsuit. The first agreement was executed on or about May 8, 2007, and was effective from June 1, 2007 through May 31, 2010. The second Agreement was executed on or about May 9, 2007, and was effective from June 1, 2010 through May 31, 2012. A true and correct copy of the second Natural Gas Sales Agreement is attached to Plaintiff's Original Petition as "Exhibit A."

4. Pursuant to these agreements, Spark Energy was to provide natural gas at a fixed price to meet Toxikon's monthly demand for the duration of the agreements. To fulfill Toxikon's monthly demands under the Natural Gas Sales Agreements, Spark Energy contracts with third-parties to obtain the requisite supply of natural gas, and delivers the gas to Toxikon in the agreed-upon amounts. Toxikon agreed, among other things, to timely pay for the gas as invoiced.



EXHIBIT B

5. From June 2007 through May 31, 2010, Spark Energy performed under the first (May 8, 2007) Natural Gas Sales Agreement by obtaining the requisite supply of gas, and delivering the gas to Toxikon. Toxikon accepted the gas and paid the amounts invoiced.

6. Spark Energy performed under the second Natural Gas Sales Agreement (Exhibit A) by obtaining the requisite supply of natural gas to meet Toxikon's demand, and began providing gas to Toxikon on or about June 1, 2010. Spark Energy continued providing gas to Toxikon through August 2010. Toxikon was invoiced on a monthly basis for the gas provided by Spark Energy. However, Toxikon refused to take gas as required by the Contract and refused to pay any invoices after May 2010.

7. The Natural Gas Sales Agreement (Exhibit A), at section 8, defines an "Event of Default" as, among other things, "the failure of either Party ... to make any payment required by the applicable due dated and the failure is not remedied within five (5) days of receipt of written demand for cure."

8. The Natural Gas Sales Agreement (Exhibit A), at section 9, provides that in the event of a continuing Event of Default, the non-defaulting Party may:

> (ii) upon written notice at least one day in advance, accelerate any amounts owing between the Parties and terminate and liquidate any agreements between the Parties; (iii) determine a settlement amount for each agreement by calculating the gains, losses and costs (including reasonable attorney's fees and the costs of obtaining, maintaining and liquidating commercially reasonable hedges) incurred as a result of the liquidation, discounted to present value at 6% per annum....

9. Toxikon failed to make payments required by the applicable due dates, beginning in May 2010. Spark Energy attempted to obtain payments from Toxikon. After these attempts failed, Spark Energy calculated a settlement amount pursuant to Section 9 of the Natural Gas Sales Agreement, as follows:

   a. Spark Energy calculated the cost total cost of obtaining the requisite supply of natural gas for the duration of the primary term, through May 2012.

   b. The total cost was divided by the contracted volume (i.e., the sum of the Monthly Demand Quantities ("MDQ")) to obtain a total cost per Dekatherm (dth).

   c. The total cost per dth was subtracted from the fixed contract Price per dth. This value is the difference in the contract Price and Spark Energy's actual cost, per dth. This difference in unit prices was multiplied by the contracted volume (total MDQ) for the Primary Term to obtain the total liquidated value of the contract.

2

Case 4:11-cv-01120   Document 1-3   Filed on 03/28/11 in TXSD   Page 13 of 15

    d.    The total liquidated value was discounted to present value using a discount rate of 6% per annum, per Section 9 of the Natural Gas Sales Agreement.

    e.    The resulting settlement amount is $301,124. This amount does not include attorneys' fees.

10. On November 11, 2010, Spark Energy sent Toxikon a Notice of Default notifying Toxikon that an Event of Default had occurred under section 8 of the Contract, and demanding the settlement amount of $301,124 if the default was not cured with ten (10) days. Toxikon failed to cure the default.

11. On December 1, 2010, Spark Energy sent a second letter to Toxikon requesting immediate remittance of $301,124. Toxikon again failed to pay the settlement amount.

12. On January 18, 2011, Spark Energy sent a final demand letter to Toxikon again requesting payment of $301,124 within ten (10) days. Toxikon continues to refuse to pay this or any amount owed to Spark Energy.

13. Spark Energy has complied with the Natural Gas Sales Agreement (Exhibit A) by obtaining and providing natural gas to Toxikon, by calculating an appropriate settlement amount pursuant to Section 9 of the Agreement, by timely notifying Toxikon of the Event of Default, and by allowing Toxikon well over ten days in which to cure the default.

[Signature Follows on Next Page]

Certified Document Number: 47787021 - Page 3 of 4

3

Further affiant sayeth not.

_____
Drew Henderson

Subscribed and sworn to before me this 3RD day of February 2011.

_____
Notary Public – State of Texas



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 24, 2011

Certified Document Number:    47787021 Total Pages: 4

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**