IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | Jury |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION
& ALTERNATIVELY
MOTIONS TO TRANSFER VENUE UNDER 28 U.S.C. §§ 1406(a) OR 1404(a)**

FRED DIETRICH
State Bar No. 05857050
THE DIETRICH LAW FIRM
2211 Norfolk St., Suite 620
Houston, Texas 77098
Tel.:   713.830.7687
Fax:    713.721.3112
fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I. NATURE & STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II. ISSUES TO BE RULED UPON & STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . .  2

III. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

V. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION: ARGUMENT &
AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    A. The Standard: Defendant's Purposeful Contacts, Fair Play & Substantial Justice . . .  7

    B. No Specific Jurisdiction: The Contract did Not Require Performance in Texas  . . . .  9

    C. No General Jurisdiction: No General Business Presence *in Texas*  . . . . . . . . . . . .  13

    D. Fair Play and Substantial Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

VI. MOTION TO TRANSFER VENUE UNDER RULE 12(b)(3) & 28 U.S.C. § 1406(a):
ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    A. Standard for transfer under 28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    B. Application of law to fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

VII. MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a): ARGUMENT &
AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    A. Standard for transfer under 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    B. This Suit Could have been Brought in the United States District Court, District of
    Massachusetts, Boston Division . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

    C. Transfer Would be Convenient and in the Interest of Justice . . . . . . . . . . . . . . . . .  21

VIII. PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

i

# INDEX OF AUTHORITIES

**Cases**:

*Access Telecomm., Inc. v. MCI Telcomms. Corp.*
    197 F.3d 694 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

*Alpine View Co. v. atlas Copco AB,*
    205 F.3d 208, 214 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 478 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dalton v. R&W Marine, Inc.,*
    897 F.2d 1359 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Freudensprung v. Offshore Tech. Servs.,*
    379 F.3d 327 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Holt Oil & Gas Corp. v. Harvey,*
    801 F.2d 773 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

*Johnston v. Multidata Sys. Int'l Corp.,*
    523 F.3d 602 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 14, 15, 16

*King v. Russell,*
    963 F.2d 1301 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*LeBlanc v. Patton-Tully Transportation, LLC,*
    138 F.Supp.2d 817, 819 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Leonard v. USA Petroleum Corp.,*

829 F.Supp 882 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Luv n' care, Ltd. v. Insta-Mix, Inc.,*
    438 F.3d 465 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Moncrief Oil Int'l., Inc. v. OAO Gazprom,*
    481 F.3d 309 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
    253 F.3d 865 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14, 19

*Psarros v. Avior Shipping, Inc.,*
    192 F. Supp. 2d 751, 753 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Revell v. Lidov,*
    317 F.3d 467 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Siemer v. Learjet Acquisition Corp.,*
    966 F.2d 179 (5th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Stroman Realty, Inc. v. Wercinski,*
    513 F.3d 476 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17


**Rules or Statutes:**

28 U.S.C.§ 1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 20, 25

28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18, 19, 25

220 C.M.R. § 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 11, 12, 23, 24

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

iii

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | Jury |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION
& ALTERNATIVELY
MOTIONS TO TRANSFER VENUE UNDER 28 U.S.C. §§ 1406(a) OR 1404(a)**

Pursuant to Fed. R. Civ. P. 12(b)(2), defendant Toxikon Corporation (Toxikon) moves for an order dismissing this case for lack of personal jurisdiction, or alternatively, transferring this case to the United States District Court, District of Massachusetts, Boston Division under either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). In support of these motions, Toxikon respectfully shows the following:

### I. NATURE & STAGE OF THE PROCEEDINGS

A Texas citizen filed a common law breach of contract claim[1] in Texas state court against a Massachusetts citizen (Toxikon). On March 28, 2011, Toxikon timely removed based upon diversity.

The parties have not yet conferred under Rule 26(f), and the joint discovery/case

---

[1]Based on Massachusetts and New York law.

1

management plan is due by May 15, 2011.  No discovery has been done.

## II.   ISSUES TO BE RULED UPON & STANDARD OF REVIEW

1.      Does this Court have personal jurisdiction over defendant Toxikon Corporation?  A district

court's dismissal for lack of personal jurisdiction is reviewed de novo.[2]

2.      Should this Court transfer this case under 28 U.S.C. § 1406(a) to the Boston Division of the

District Court of Massachusetts?  A district court's decision to transfer a case pursuant to 28 U.S.C.

§ 1406(a) is reviewed for abuse of discretion.[3]

3.      Should this Court transfer this case under 28 U.S.C. § 1404(a) to the Boston Division of the

District Court of Massachusetts?  A district court's decision to transfer venue under 28 U.S.C. §

1404(a) is reviewed only for clear abuses of discretion that produce patently erroneous results.[4]

## III.   SUMMARY OF THE ARGUMENT

Plaintiff went to the State of Massachusetts to ask for and received a license to sell a

regulated commodity (natural gas) through a form contract to Massachusetts citizens and under

Massachusetts law.  In order to have the privilege of selling and delivering gas to Massachusetts

citizens, plaintiff also committed to  alternative dispute resolution, including arbitration in certain

circumstances, in Massachusetts.

Under the alleged contract, plaintiff was to deliver natural gas in Massachusetts, to a

Massachusetts citizen (Toxikon), under Massachusetts and New York law.  Nothing in the alleged

contract notified Toxikon that it could or would be dragged into a Texas courtroom if a dispute

---

[2]*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

[3]*See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

[4]*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311-312 (5th Cir. 2008).

2

arose.  Nothing about the transaction notified Toxikon that it could or would be dragged into a Texas courtroom if a dispute arose.  Instead, everything about the alleged contract and transaction suggests that this was just a local transaction: a purchase in Massachusetts, of a Massachusetts commodity, for Massachusetts use, under Massachusetts and New York law, and with dispute resolution in Massachusetts.

1.      Specific jurisdiction does not exit over Toxikon on plaintiff's only  claim, a common law breach of contract claim under Massachusetts and New York law, because Toxikon did nothing in Texas and the alleged contract did not require either party to do anything in Texas.

2.      General jurisdiction does not exist over Toxikon because it has nothing and does nothing in Texas.  Moreover, the portion of its sales that come from Texas customers is so small that, as a matter of law, it does not have a business presence *in Texas.  See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 613-14 (5th Cir. 2008).

3.      Even were jurisdiction to exist, this case should be transferred under 28 U.S.C. § 1406(a) to the Boston Division of the District Court of Massachusetts because venue is wrong in the Southern District of Texas: a substantial part of the events or omissions giving rise to plaintiff's claim did not occur in the Southern District of Texas.

4.      Even were jurisdiction to exist, this case should be transferred under 28 U.S.C. § 1404(a) to the Boston Division of the District Court of Massachusetts.  Plaintiff reached out to the State of Massachusetts for a license to sell a regulated commodity through a form contract in Massachusetts to Massachusetts citizens under Massachusetts law, and plaintiff agreed to alternative dispute resolution, including arbitration in certain circumstances, in Massachusetts.  This public interest factor, along with the other applicable private and public interest factors, weighs clearly in favor of

3

transfer.

## IV.  FACTS

Massachusetts has a comprehensive regulatory code, whose purpose is to "establish the rules that will govern the natural gas industry in the Commonwealth."[5]

Plaintiff Spark Energy Gas, LP, applied for, and obtained, a license from Massachusetts to sell natural gas in Massachusetts.[6]  Plaintiff uses "form contracts" to sell natural gas to unknown numbers of Massachusetts citizens.[7]   These form contracts include terms required by Massachusetts's comprehensive regulatory code and are governed by New York law.[8]  This lawsuit involves one of these form contracts.[9]  Plaintiff alleges Toxikon breached this form contract because it failed to take delivery of natural gas at Toxikon's laboratories in Massachusetts.[10]

Defendant Toxikon Corporation does bio-tech research and testing at its laboratories near Boston, Massachusetts.  Toxikon did not sign the form contract that plaintiff alleges it breached, and Toxikon received no natural gas under the alleged contract.[11]

Someone from a non-party, Patriot Energy Management, Inc., apparently signed the alleged contract "for" Toxikon.[12]   Patriot Energy Management, Inc., however, was not authorized by

---

[5]*See* Exhibit 1: 220 C.M.R § 14: "The Unbundling of Service Related to the Provision of Natural Gas."

[6]See Exhibit 2, p. 5: Plaintiff (license GS-027) is on list of companies licensed to sell gas in Massachusetts.

[7]Exhibit 3: Plaintiff's Original Petition, including its Exhibit A.

[8]Exhibit 3: Plaintiff's Original Petition, including its Exhibit A, p.2, ¶¶ 1, 7,14 and 15.

[9]Exhibit 3: Plaintiff's Original Petition, including its Exhibit A.

[10]Exhibit 3: Plaintiff's Original Petition, p. 3, ¶ 10.

[11]Exhibit 4: Declaration of Laxman Desai, p. 2, ¶ 2.

[12]Exhibit 4: Declaration of Laxman Desai, p. 2, ¶ 3.

4

Toxikon to sign the alleged contract.[13]   Patriot Energy Management, Inc. is a Massachusetts corporation, and its headquarters is also in Massachusetts.[14]

The alleged contract called for fungible goods (natural gas) to be delivered in Massachusetts,[15] to a Massachusetts citizen (Toxikon), under Massachusetts law[16] and New York law.[17] The alleged agreement also requires plaintiff to make available alternative dispute resolution procedures under Massachusetts law, and it gives Toxikon certain arbitration options under Massachusetts law.[18]

No one from Toxikon did anything, or was required to do anything, in Texas concerning the alleged contract.  No one from Toxikon went to, or was present in, Texas to negotiate the alleged contract with plaintiff.  Plaintiff's location in Texas was not a basis for Toxikon's alleged contract, and plaintiff's being located in Texas was in no way advantageous or beneficial for Toxikon. Plaintiff's being located in Texas was irrelevant to Toxikon's allegedly entering into the alleged contract.  Toxikon did not request that plaintiff do any work in Texas, and the alleged contract does not require plaintiff to do any work in Texas.  Toxikon did nothing in Texas concerning the alleged contract, and the alleged agreement did not require either party to perform in Texas.  Under the

---

[13]Exhibit 4: Declaration of Laxman Desai, p. 2, ¶ 3.

[14]Exhibit 5: Patriot Energy's web site; see also Exhibit 6: Massachusetts Secretary of State web page.

[15]Gas was to be delivered to "25 Wiggins Avenue, Bedford, MA 01730" and "15 Wiggins Avenue, Bedford, MA 01730."  *See* Exhibit 3: Plaintiff's Original Petition at Exhibit A, p. 1, "Service Location Utility Information."

[16]For example, the alleged contract provides that: "1. Terms of Service: The 'Terms of Service' that . . . [plaintiff] is required to provide to certain Customers under 220 C.M.R. § 14.05(2) are specified on this and the reverse side of this page . . . ." *See* Exhibit 3: Plaintiff's Original Petition at Exhibit A, p. 2, ¶ 1.

[17]Exhibit 3: Plaintiff's Original Petition, Exhibit A, p. 2, ¶ 14.

[18]Exhibit 3: Plaintiff's Original Petition, Ex. A, p. 2, ¶ 15; Exhibit 1: 220 C.M.R. § 14.06(4)(b).

5

alleged contract, Toxikon was not required to make payment, and it did not make payment, in Texas. Plaintiff's being located in Texas was not a basis for Toxikon's agreement, and Toxikon neither sought, nor received, any benefit or advantage under Texas law or as result of plaintiff's being located in Texas.[19]

Although Toxikon receives requests for work from all over the world, it does the work at its Massachusetts laboratories.  It has never done work in Texas.  A small portion of Toxikon's sales have come from research work done in Massachusetts for requests received from customers in Texas.  From 2007 through 2010, Toxikon  had average annual sales of less than $830,000 from orders placed by customers in Texas.  These sale were less than 4% of Toxikon's average annual sales.[20]

Toxikon:

1.      has never been a resident of Texas;

2.      has never maintained an office in Texas;

3.      has never had any employees in Texas, with the exception of having a single employee, Stephen Mohan, in Texas for about six months from April to October 2009;

4.      has never maintained a mailing address in Texas;

5.      has never kept, maintained or stored any documents in Texas;

6.      has never manufactured anything in Texas;

7.      has never done any work in Texas;

8.      has never had a telephone directory listing or other commercial listing in Texas;

9.      has never owned, leased, used or had any interest in any property in Texas;

---

[19]Exhibit 4: Desai declaration, p. 2, ¶ 4.

[20]Exhibit 4: Desai declaration, p. 2, ¶ 5.

10.    has never had bank accounts, personal property or other assets in Texas;

11.    has never paid taxes in Texas;

12.    has never sued anyone or otherwise used the court system in Texas;

13.    has not developed a substantial connection with Texas, purposefully or otherwise;

14.    has never had a general business presence in Texas; and

15.    has never had substantial or continuous or systematic contacts with Texas.[21]

Toxikon had a registered agent in Texas for only about six months during 2009; otherwise, Toxikon has never had a registered agent in Texas.  Although at the time plaintiff filed its lawsuit in Texas state court, February 8, 2011, Stephen Mohan was listed with the Texas Secretary of State as Toxikon's registered agent in Texas; this was a mistake made by Toxikon.  Since October 2009, Toxikon did not intend to have a registered agent in Texas.  Stephen Mohan's employment with Toxikon ended in October 2009, but Toxikon mistakenly failed to file documents with the Texas Secretary of State showing that it no longer had an agent in Texas.  The Texas Secretary of State's records now correctly show that Toxikon does not have a registered agent in Texas.  Toxikon has never had any other agents in Texas.[22]

### V.   MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION
### ARGUMENT & AUTHORITIES

**A.    The Standard: Defendant's Purposeful Contacts, Fair Play & Substantial Justice**

Plaintiff bears the burden of establishing that Toxikon, a nonresident defendant, has contacts

---

[21]Exhibit 4: Desai declaration, pp. 2-3, ¶ 6.

[22]Exhibit 4: Desai declaration, pp. 3, ¶ 7.

with Texas sufficient to invoke the jurisdiction of this Court.[23]  Plaintiff can only meet that burden by making "a prima facie showing"[24] that Toxikon "has purposefully availed itself of the benefits and protections of [Texas] by establishing 'minimum contacts' with [Texas]."[25]  "The prima facie case requirement does not require the court to credit conclusory allegations, even if uncontroverted."[26]

A court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process requirements when (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice."[27]  Both prongs must be satisfied in order for a court to exercise personal jurisdiction over the defendant.

If the plaintiff makes a *prima facie* showing of minimum contacts, then the burden shifts to the defendant to show that the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice."[28]  In making a fundamental fairness determination, a court must examine: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5)

---

[23]*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).

[24]*Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[25]*Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

[26]*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[27]*Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[28]*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

the states' shared interest in furthering fundamental social policies.[29]

The "minimum contacts" prong is further subdivided into contacts that suffice to confer "specific jurisdiction" and those that give rise to "general jurisdiction."

Toxikon's contacts with Texas are so minimal that neither specific jurisdiction nor general jurisdiction is satisfied.

**B.      No Specific Jurisdiction: The Contract did Not Require Performance in Texas**

**1.        Plaintiff Alleged Only a Breach of Contract Claim**

Plaintiff alleged only a breach of contract claim,[30] and its sole allegation for specific jurisdiction is that "Defendant entered into a contract performable in Texas."[31]

**2.        The Standard for Specific Jurisdiction**

**a.        Specific Jurisdiction Generally**

When a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether "the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's contacts with the forum state."[32]   The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific jurisdiction in this forum.[33]   Rather, the focus of the specific jurisdiction inquiry is on "the relationship between

---

[29]*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

[30]Exhibit 3: Plaintiff's Original Petition, p. 4.

[31]Exhibit 3: Plaintiff's Original Petition, p. 2, ¶ 5.

[32]*Freudensprung*, 379 F.3d at 343.

[33]*Revell v. Lidov*, 317 F.3d 467, 473 & n.41 (5th Cir. 2002).

9

the defendant, the forum, and the litigation."[34]   Contacts that are "random," "fortuitous," or "attenuated" do not satisfy the minimum contacts requirement.[35]

### b.   Specific Jurisdiction for Breach of Contract Claims

More specifically for breach of contract claims, it is well settled that merely contracting with a Texas company does not satisfy due process's requirement that the defendant have minimum contacts with the forum.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985).  It is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).  Minimum contacts cannot be established by "merely contracting" with a resident of the forum, nor by "[a]n exchange of communications in the course of developing and carrying out a contract," because, were it otherwise, "jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state."  *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 312 (5th Cir.2007).  The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."[36]

---

[34]*Freudensprung*, 379 F.3d at 343.

[35]*Moncrief*, 481 F.3d at 312.

[36]*See Freudensprung*, 379 F.3d at 344.

10

### 3.     Application of Law to Facts

### a.     Plaintiff's Jurisdictional Allegations are Deficient

Plaintiff does not allege that Toxikon did anything in Texas.  Indeed, plaintiff makes no specific allegations.  Instead, plaintiff only alleges in a conclusory way that "Defendant entered into a contract performable in Texas."[37]  Because plaintiff cannot satisfy its *prima facie* burden through conclusory allegations,[38] it has not carried its burden.  Therefore, specific jurisdiction is not satisfied, and this case should be dismissed for lack of jurisdiction.

### b.     The Alleged Contract is Not "Performable" in Texas

The alleged contract called for fungible goods (natural gas) to be delivered in Massachusetts,[39] to a Massachusetts citizen (Toxikon), under Massachusetts law (the "Code of Massachusetts Regulations" or "CMR")[40] and New York law.[41]  Moreover, Massachusetts's comprehensive regulatory code (220 C.M.R § 14: "The Unbundling of Service Related to the Provision of Natural Gas"), whose purpose is to "establish the rules that will govern the natural gas industry in the Commonwealth"governs and requires alternative dispute resolution procedures between the plaintiff and Toxikon: "If there is a dispute between Customer [Toxikon] and URS [plaintiff's former name], URS will make available alternative dispute resolution procedures as

---

[37]Exhibit 3: Plaintiff's Original Petition, p. 2, ¶ 5.

[38]*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[39]Exhibit 3: Gas was to be delivered to "25 Wiggins Avenue, Bedford, MA 01730" and "15 Wiggins Avenue, Bedford, MA 01730."  *See* Plaintiff's Original Petition, Exhibit A, p. 1, "Service Location Utility Information."

[40]Exhibit 3: Plaintiff's Original Petition, Ex. A, p.2, ¶ 1; For example, the alleged contract provides that: "1. Terms of Service: The 'Terms of Service' that . . . [plaintiff] is required to provide to certain Customers under 220 C.M.R. § 14.05(2) are specified on this and the reverse side of this page . . . ."

[41]Exhibit 3: Plaintiff's Original Petition, Ex. A, p. 2, ¶¶ 1,7,14, and 15.

11

required by 220 C.M.R. § 14.06(4)(b)." *See* ¶ 15 of the alleged agreement's "Terms of Service."[42]

Toxikon did nothing in Texas, and the alleged agreement did not require either party to perform in Texas. The alleged agreement would have required plaintiff to deliver the fungible goods (natural gas) to Toxikon in Massachusetts. Toxikon was not required to make payment and it did not make payment in Texas. Plaintiff's being located in Texas was not a basis for Toxikon's agreement, and Toxikon neither sought nor received any benefit or advantage under Texas law or as result of plaintiff's being located in Texas.[43]

No one from Toxikon did anything, or was required to do anything, in Texas concerning the alleged agreement. No one from Toxikon went to, or was present in, Texas to negotiate the agreement with plaintiff. Plaintiff's location in Texas was not a basis for Toxikon's agreement, and plaintiff's Texas location was in no way advantageous or beneficial for Toxikon. Plaintiff's being located in Texas was irrelevant to Toxikon's entering into the alleged agreement. Toxikon did not request that plaintiff do any work in Texas, and the alleged agreement does not require plaintiff to do any work in Texas.[44]

Plaintiff has failed to prove that Toxikon purposely directed its activities toward Texas or purposely availed itself of the privileges of conducting activities in Texas. Additionally, this controversy does not arise out of, nor is it related to, Toxikon's contacts with Texas. Any Texas contact is random, fortuitous, or attenuated. Therefore, specific jurisdiction does not exist, and this case should be dismissed for lack of personal jurisdiction.

---

[42]Exhibit 3: Plaintiff's Original Petition, Exhibit A, p. 2, ¶ 15.

[43]Exhibit 4: Desai Declaration, p.2, ¶ 4.

[44]Exhibit 4: Desai Declaration, p.2, ¶ 4; see also the alleged agreement, Exhibit 3.

## C.     No General Jurisdiction:[45] No General Business Presence *in Texas*

### 1.     Plaintiff's Jurisdictional Allegations

Plaintiff alleged that Toxikon "is registered to and regularly conducts business in the State of Texas and maintains an agent for service of process in Texas."[46]

### 2.     The Standard for General Jurisdiction

General jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic."[47]   General jurisdiction is difficult to establish:

> The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.  Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction.[48]

The defendant's contacts with the forum state are evaluated "over a reasonable number of years" up to the date the lawsuit was filed, and are to be reviewed *in toto* rather than in isolation from one another.[49]

Moreover, "in order to confer general jurisdiction a defendant must have a business presence *in Texas*.  It is not enough that a corporation do business *with* Texas."[50]   Likewise, it is well

---

[45]When general jurisdiction exists, the forum state may exercise jurisdiction over the defendant on any matter, even if the matter is unrelated to the defendant's contacts with the forum.

[46]Exhibit 3: Plaintiff's Original Petition, p.2, ¶ 5.

[47]*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

[48]*Johnston*, 523 F.3d at 609-10.

[49]*Johnston*, 523 F.3d at 610.

[50]*Johnston*, 523 F.3d at 611 citing *Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)(emphasis in the original).

established that "merely contracting with a [Texas] resident is insufficient to subject the nonresident to . . . jurisdiction [in Texas],"[51] and regular sales to Texas customers, without more, is insufficient to establish general jurisdiction.[52]

### 3.   Application of Law to Facts

#### a.   Plaintiff's Jurisdictional Allegations are Deficient

In conclusory fashion, plaintiff alleged that Toxikon "is registered to and regularly conducts business in the State of Texas and maintains an agent for service of process[53] in Texas."[54]  However, a defendant's registering to do business and having a registered agent in Texas does  "not create . . . [a] general business presence in Texas, [and]  it also does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter."[55]  Moreover, because plaintiff cannot satisfy its *prima facie* burden through conclusory allegations,[56] it has not carried its burden.  Therefore, this case should be dismissed for lack of jurisdiction.

#### b.   Toxikon Does Not Have a General Business Presence *in Texas*

It is not enough that Toxikon does business with Texas.  Instead, general jurisdiction requires that Toxikon *have a business presence in Texas*.[57]  Toxikon, however, does not have a general

---

[51]*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

[52]*Johnston*, 523 F.3d at 614.

[53]Exhibit 4; Toxikon did not in fact have an agent for service of process in Texas, and did not intend to have a registered agent in Texas.  *See* Desai declaration, p. 3. ¶ 7.

[54]*See* Exhibit 3: Plaintiff's Original Petition, p.2, ¶ 5.

[55]*Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir.1992); *see also Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 889 (S.D. Tex. 1993).

[56]*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[57]*Johnston*, 523 F.3d at 611 ("[I]n order to confer general jurisdiction a defendant must have a business presence *in Texas*.  It is not enough that a corporation do business *with* Texas.").

business presence in Texas.  Toxikon has no physical presence in Texas, and its small amount of sales to Texas customers is too insubstantial to satisfy the demanding requirements of general jurisdiction.[58]

### i.       No Physical Presence in Texas

Toxikon does not have a business presence in Texas.  Toxikon: (1) is not a resident of Texas, (2) does not maintain an office in Texas, (3) does not have employees in Texas, (4) does not maintain a mailing address in Texas, (5) does not keep, maintain or store any documents in Texas, (6) does not manufacture anything in Texas, (7) does no work in Texas, (8) does not have a telephone directory listing or other commercial listing in Texas, (9) does not own, lease, use or have any interest in any property in Texas, (10) does not have bank accounts, personal property or other assets in Texas, and (11) does not pay taxes in Texas.[59]

### ii.       Insubstantial Sales with Texas

Toxikon does bio-tech research and testing at its laboratories in Massachusetts.  Although it receives requests for research work from all over the world, it does the research at its Massachusetts laboratories.  It does not do any work in Texas.  A small portion of Toxikon's sales have come from research work done in Massachusetts for requests received from customers in

---

[58]*See, e.g., Johnston*, 523 F.3d at 614 (millions of dollars in annual sales in Texas that were less than 2.5% of total sales were insufficient to establish general jurisdiction in Texas); *see also  Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717-18 (5th Cir. 1999)(finding no general jurisdiction where the defendant derived millions of dollars a month in revenue from Texas residents); *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-84 (5th Cir. 1992) (holding that general jurisdiction did not exist over a Delaware corporation where the corporation sold slightly over one percent of its products to Texas buyers); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that the defendant did not have a general presence in the forum state despite earning over twelve percent of its revenue from sales in the state); *LeBlanc v. Patton-Tully Transportation, LLC*, 138 F.Supp.2d 817, 819 (S.D. Tex. 2001)("The Court concludes that out-of-state work performed for a Texas business, even if accounting for ten to fifteen percent of Defendant's revenue, cannot possibly give rise, by itself, to general jurisdiction in Texas over the Defendant.").

[59]Exhibit 4: Desai declaration, pp. 2-3, ¶ 6.

Texas. From 2007 through 2010, Toxikon had average annual sales of less than $830,000 from orders placed by customer in Texas. These sale were less than 4% of Toxikon's average annual sales.[60] Neither Toxikon's total amount of sales to Texas customers nor its percentage of total sales is enough to create a general presence in Texas. *See Johnston*, 523 F.3d at 614 (millions of dollars in annual sales in Texas that were less than 2.5% of total sales were insufficient to establish general jurisdiction in Texas); *See also Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 717-18 (5th Cir. 1999)(finding no general jurisdiction where the defendant derived millions of dollars a month in revenue from Texas residents); *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-84 (5th Cir. 1992) (holding that general jurisdiction did not exist over a Delaware corporation where the corporation sold slightly over one percent of its products to Texas buyers); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that the defendant did not have a general presence in the forum state despite earning over twelve percent of its revenue from sales in the state); *LeBlanc v. Patton-Tully Transportation, LLC*, 138 F.Supp.2d 817, 819 (S.D. Tex. 2001)("The Court concludes that out-of-state work performed for a Texas business, even if accounting for ten to fifteen percent of Defendant's revenue, cannot possibly give rise, by itself, to general jurisdiction in Texas over the Defendant.").

Because Toxikon's contacts with Texas are not substantial, continuous or systematic, this Court does not have personal jurisdiction over Toxikon, and this case should be dismissed.

**D.      Fair Play and Substantial Justice**

Even if this Court were to find that Toxikon purposefully established "minimum contacts" in Texas, jurisdiction over Toxikon is still not constitutionally permissible because subjecting

---

[60]Exhibit 4: Desai declaration, p. 2, ¶ 5.

16

Toxikon to the jurisdiction of this Court would offend traditional notions of fair play and substantial justice.[61]

Texas has no connection with this alleged contract, but Massachusetts has many and strong connections with this alleged contract. The alleged contract has no connection with Texas, but does have strong connections with Massachusetts. Toxikon has virtually no connection with Texas, but plaintiff has many and strong connections with Massachusetts.

Plaintiff went to the State of Massachusetts to ask for and received a license to sell a regulated commodity (natural gas) through a form contract to Massachusetts citizens. Plaintiff was to deliver the gas in Massachusetts, to Massachusetts citizens, under Massachusetts law. In order to have the privilege of selling and delivering gas to Massachusetts citizens, plaintiff committed to alternative dispute resolution, including arbitration in certain circumstances, in Massachusetts.

Nothing in the alleged contract notified Toxikon, or any other Massachusetts buyer, that it could or would be dragged to a Texas courtroom if a dispute arose. Nothing about the transaction notified Toxikon, or any other Massachusetts buyer, that it could or would be dragged to a Texas courtroom if a dispute arose. Instead, everything about the alleged contract and transaction suggests that this is just a local purchase of a local commodity, for local use, and local resolution of any disputes. Just as any Houstonian buying natural gas for his or her home or business would think it unreasonable, unjust, and unfair to be dragged into a Massachusetts courtroom if a dispute arose, it is unreasonable, unjust, and unfair to drag Toxikon into a Texas courtroom over natural gas to be delivered and used in Massachusetts.

---

[61]In making a fundamental fairness determination, a court must examine: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

17

Given these facts, traditional notions of fair play and substantial justice simply do not allow the plaintiff to reach out to this Massachusetts citizen and drag it all the way to a Texas courtroom.

## VI. MOTION TO TRANSFER VENUE UNDER RULE 12(b)(3) & 28 U.S.C. § 1406(a)<br>ARGUMENT & AUTHORITIES

### A.   Standard for transfer under 28 U.S.C. § 1406(a)

The plaintiff has the burden of proving that the chosen venue is proper.[62]

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  In a diversity case, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

### B.   Application of law to fact

In a conclusory way, plaintiff alleged that "all or a substantial part of the events or omissions and damages giving rise to Plaintiff's claims occurred in Harris County, Texas, and in the alternative because Plaintiff resides in Harris County, Texas."[63]  Plaintiff cannot satisfy its burden through conclusory allegations;[64] therefore, it has not carried its burden.  Accordingly, venue in the Southern District of Texas is improper, and this case should be transferred to the Boston Division of the

---

[62]*See Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002).

[63]Exhibit 3: Plaintiff's Original Petition, p. 2, ¶ 5.

[64]*Cf. Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

District Court of Massachusetts.

Toxikon is a citizen of Massachusetts, and it is the only defendant in this lawsuit. Therefore, under 28 U.S.C. § 1391(a)(1), this lawsuit could have been originally brought in the District Court of Massachusetts. Because this suit may have been brought in the District Court of Massachusetts, 28 U.S.C. § 1391(a)(3) does not apply. Therefore, for venue to be proper in the Southern District of Texas, plaintiff's proof must come within 28 U.S.C. § 1391(a)(2) by showing that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Texas. This, however, plaintiff has not done and cannot do.

No "event or omission" that gave rise to plaintiff's breach of contract claim, let alone a "substantial part" of any such event or omission occurred in the Southern District of Texas. Under the alleged agreement, natural gas was to be delivered in Massachusetts and no place for payment was specified. Any failure or "omission" of "not taking" natural gas or "not paying" for natural gas took place or "occurred," if at all, in Massachusetts, not Texas. Because a substantial part of the events or omissions giving rise to plaintiff's claim did not occur in the Southern District of Texas, plaintiff cannot satisfy 28 U.S.C. § 1391(a)(2), and venue in this district is wrong. Therefore under 28 U.S.C. § 1406(a), this case should be transferred to the Boston Division of the District Court of Massachusetts.

### VII. MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) ARGUMENT & AUTHORITIES

**A.** **Standard for transfer under 28 U.S.C. § 1404(a)**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court's inquiry into the propriety of transfer is two-prong. First, the court

19

must determine if the transferee court, as specified by the movant, is one in which the case originally could have been brought. Second, the court must determine whether the convenience of the parties and witnesses and the interest of justice require that the case be transferred.[65]

When deciding whether a venue transfer under § 1404(a) is for the convenience of parties and witnesses and in the interest of justice, a court should weigh certain public and private interest factors.[66]  The private interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

The public interest factors are:

> (1) the administrative difficulties flowing from the court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

No single factor is determinative, and the weight given each factor is generally determined on a case-by-case basis.[67]

## B.   This Suit Could have been Brought in the United States District Court, District of Massachusetts, Boston Division

A diversity action may be brought in any district where any defendant resides, if all defendants reside in the same state.  *See* 28 U.S.C. § 1391(a)(1).  Toxikon is a citizen of Massachusetts and it resides in Bedford, Massachusetts, a town within the Boston Division of the District Court of Massachusetts.  Toxikon is the only defendant in this lawsuit.  Therefore, under

---

[65]*In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003).

[66]*See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008).

[67]*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

20

28 U.S.C. § 1391(a), this lawsuit could have been originally brought in the Boston Division of the District Court of Massachusetts.

## C.      Transfer Would be Convenient and in the Interest of Justice

### 1.      The private interest factors weigh in favor of transfer:

#### a.      the relative ease of access to sources of proof

The alleged agreement was not signed by any Toxikon employee.  Instead, it was apparently signed by someone from Patriot Energy Management, Inc., an entity whose corporate headquarters is in Woburn, Massachusetts.[68]  Documents and witnesses from Patriot Energy will be necessary to Toxikon's defense that the alleged agreement was not authorized by Toxikon.  It may also become necessary to add Patriot Energy as a party to this lawsuit.  Because at least two sets of witnesses, Toxikon employees and Patriot Energy employees, are located in Massachusetts, this factor weighs in favor of transfer to Massachusetts.

#### b.      the availability of compulsory process to secure the attendance of witnesses

Patriot Energy and its employees are not parties to this lawsuit.  They are, however, within the subpoena power of the Massachusetts district court.  Therefore, this factor weighs in favor of transfer to Massachusetts.

#### c.      the cost of attendance for willing witnesses

All of Toxikon's officers and employees live and work near Boston, Massachusetts.[69]  At least three of Toxikon's officers or employees may be trial witnesses.  Additionally, the alleged

---

[68]See Exhibit 5, page from Patriot Energy's web site; see also Exhibit 4: Desai declaration, p. 2, ¶ 3.; *see also* Exhibit 6: Massachusetts Secretary of State web page.

[69]Exhibit 4: Desai declaration, p. 3, ¶ 8.

21

agreement is governed by Massachusetts and New York law.  If this case is not transferred, both parties may be burdened by the additional expense of having to hire attorneys licensed in Massachusetts and New York to testify in Texas about Massachusetts and New York law.  Therefore, this factor weighs in favor of transfer to Massachusetts.

> ### d.    all other practical problems that make trial of a case easy,  expeditious and inexpensive

As previously noted, it may become necessary for Toxikon to add Patriot Energy as a party to this lawsuit.  Given that Patriot Energy's headquarters is in Massachusetts, transferring this case to Massachusetts would obviate any objections Patriot Energy may have to this Court's personal jurisdiction or venue.  Additionally, any claims and defenses by or between Toxikon and Patriot Energy would be governed by Massachusetts law, not Texas law.  Therefore, this factor weighs in favor of transfer to Massachusetts.

> ### 2.    The public interest factors weigh in favor of transfer:

> ### a.    the administrative difficulties flowing from court congestion

Toxikon does not know that there would be any administrative difficulties flowing from court congestion, so this factor is neutral.

> ### b.    the local interest in having localized interests decided at home

Plaintiff applied for, and obtained, a license from Massachusetts (license number GS-027)[70] to sell natural gas in Massachusetts.  Massachusetts has a  comprehensive regulatory code (220 C.M.R § 14: "The Unbundling of Service Related to the Provision of Natural Gas"), whose purpose is to "establish the rules that will govern the natural gas industry in the Commonwealth."[71]

---

[70]See Exhibit 2, p. 5.

[71]See Exhibit 1: 220 C.M.R. 14.01.

Plaintiff's breach of contract claim is based upon an obvious "form contract" that it uses to sell natural gas to countless Massachusetts citizens.  For example, the terms of the "form contract" that plaintiff is suing on are terms that are required by Massachusetts law: "1. Terms of Service: The 'Terms of Service' that . . . [plaintiff] is required to provide to certain Customers under 220 C.M.R. § 14.05(2) are specified on this and the reverse side of this page . . . ."[72]  Any court interpretation of this form contract could potentially affect large numbers of Massachusetts citizens. Massachusetts has a strong interest in having such form contracts interpreted by courts in Massachusetts.  Clearly, any Texan who bought gas in Texas, for delivery in Texas, under a form contract, which applies Texas law, and from a company licensed by the State of Texas, would think it unjust, and fundamentally unfair, for a court in Massachusetts to decide the dispute.  Likewise, no Texas licensing agency would want such a form contract that is used by its licensee, and that applies to numerous Texans, to be interpreted by a court in Massachusetts.

Massachusetts also has a strong interest in the resolution of disputes involving plaintiff, its licensee, who allegedly contracts with Massachusetts citizens.  For example, the form contract provides that: "If there is a dispute between Customer [Toxikon] and URS [plaintiff], URS will make available alternative dispute resolution procedures as required by 220 C.M.R. § 14.06(4)(b)." *See* ¶ 15 of the alleged agreement.[73]  Logically, this dispute resolution scheme required by Massachusetts regulations would take place in Massachusetts.

Additionally, under 220 C.M.R. § 14.06(4)(b)(2) of the Massachusetts required dispute resolution procedures, plaintiff "shall submit to arbitration" if requested by Toxikon and Toxikon

---

[72]Exhibit 3: Plaintiff's Original Petition, Exhibit A, p.2, ¶ 1.

[73]Exhibit 3: Plaintiff's Original Petition, Exhibit A, p. 2, ¶ 15.

alleges unfair or deceptive trade practices have occurred.[74]  Logically, any arbitration required by Massachusetts regulations would take place in Massachusetts.

Given that plaintiff reached out to the State of Massachusetts for a license to sell a regulated commodity through a form contract in Massachusetts to Massachusetts citizens under Massachusetts law, and that plaintiff agreed to alternative dispute resolution, including arbitration in certain circumstances, in Massachusetts, this public interest factor weighs heavily in favor of transfer to Massachusetts.

     **c.**     **the familiarity of the forum with the law that will govern the case**

The district court in Massachusetts certainly has more familiarity with Massachusetts law that applies to this case.  Therefore, this factor favors transfer.

     **d.**     **the avoidance of unnecessary problems of conflict of laws or in the application of foreign law**

Given that the alleged agreement chooses the applicable law, Massachusetts and New York law, there should be no dispute involving conflicts with Texas law.  Any conflicts of law dispute would be between Massachusetts law and New York law.  Having a court that regularly deals with Massachusetts law would therefore minimize any potential conflicts of law issues.  Therefore, this factor favors transfer.

     **3.**     **Conclusion: All but One Factor Weigh in Favor of Transfer**

Massachusetts's interest in having this essentially local dispute (a dispute between a company that reached out to Massachusetts for a license to sell in Massachusetts to Massachusetts citizens under a form contract employing Massachusetts law) decided by a court in Massachusetts

---

[74]Exhibit 1: 220 C.M.R. 14.06(b)(2).

24

weighs heavily in favor of transfer.  Accordingly, under 28 U.S.C. 1404(a), this case should be transferred to the Boston Division of the District Court of Massachusetts.

## VIII. <u>PRAYER</u>

Defendant Toxikon Corporation respectfully requests that this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction and dismiss this case without prejudice.  Alternatively, Toxikon requests that the Court grant its Motion to Transfer Venue Under 28 U.S.C. § 1406(a) or its Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and transfer this case to the United States District Court, District of Massachusetts, Boston Division.  Toxikon also asks for such other and further relief, both general and special, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

THE DIETRICH LAW FIRM


By:      s/ Fred Dietrich
         Fred Dietrich
         Attorney-in-Charge
         SBOT 05857050
         2211 Norfolk St., Suite 620
         Houston, Texas 77098
         Tel.: 713.830.7687
         Fax: 713.721.3112
         fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT
TOXIKON CORPORATION


## CERTIFICATE OF CONFERENCE

I certify that on April 26, 2011, I discussed these motions with Mr. Joshua Thomas, one of plaintiff's attorneys, and he informed me that plaintiff opposes these motions.


         s/ Fred Dietrich
         Fred Dietrich


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Motions to Dismiss for Lack of Personal Jurisdiction & Alternatively Motions to Transfer Venue under 28 U.S.C. §§ 1406(a) or 1404(a) was served upon all opposing counsel through the federal courts' ECF system on April 27, 2011.


         s/ Fred Dietrich
         Fred Dietrich


26