## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

SPARK ENERGY GAS, LP,   §
          §
Plaintiff,        §
          §
v.           §     CIVIL ACTION NO. 4:11-cv-1120
          §
TOXIKON CORPORATION,   §
          §
Defendant.      §
          §

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS OR TRANSFER VENUE

Dated:  May 25, 2011     Respectfully submitted,

            _____/s/ *Joshua C. Thomas*_____
            Joshua C. Thomas
            Glen Shu
            Baker Hostettler, LLP
            1000 Louisiana Suite 2000
            Houston, Texas 77002
            713.646.1322 (telephone)
            713.751.1717 (facsimile)

            **Counsel for Plaintiff Spark Energy Gas, LP**

## <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF THE NATURE AND STAGE OF THIS CASE ............................1

II.    STATEMENT OF ISSUES TO BE RULED ON BY THE COURT, AND
STANDARD OF REVIEW ...............................................................................2

III.   SUMMARY OF THE ARGUMENT .................................................................2

IV.  BACKGROUND FACTS ..................................................................................3

V.    TOXIKON IS SUBJECT TO PERSONAL JURISDICTION IN THIS
COURT .............................................................................................................5

      A.    Personal Jurisdiction Standards .................................................................5

      B.    Specific Jurisdiction Exists Based on Toxikon's Ongoing Business
Relationship with Spark, a Texas Resident, and the Agreement Which
Was Performable by Spark in Texas .........................................................7

            1.    Toxikon Purposefully Availed Itself of the Benefits and
Protections of Texas Law .............................................................7

            2.    Toxikon Established Minimum Contacts with Texas ...................8

            3.    The Fact that Toxikon Entered into the Agreement Through its
Agent Patriot Does Not Insulate it from the Court's Jurisdiction .............12

            4.    The Massachusetts Statutes Cited by Toxikon Are Irrelevant to the
Jurisdictional Analysis ................................................................15

      C.    General Jurisdiction Exists Because Toxikon Affirmatively Sought to,
and Did, Do Business in Texas ...............................................................16

      D.    Jurisdiction Does Not Offend Traditional Notions of Fair Play and
Substantial Justice ..................................................................................18

      E.    Mr. Laxman Desai's Declaration is Contradicted by Spark's Evidence ........19

VI.  VENUE IS PROPER IN THIS COURT, AND THE CASE SHOULD
REMAIN IN THIS COURT FOR THE CONVENIENCE OF THE
PARTIES .........................................................................................................20

      A.    Venue in this Court is Automatically Proper Under §1441(a) Because
the Case Was Removed to this Court, or Because Toxikon is Subject
to Personal Jurisdiction in this District ...................................................20

      B.    This Case Should Remain in this Court for the Convenience of the
Parties ......................................................................................................21

            1.    Private Factors Are Neutral, or Weigh Against Transfer ..........22

            2.    Public Factors Are Neutral, or Weigh Against Transfer ...........24

VII.  CONCLUSION ...............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694 (5th Cir. 1999) .................. 18

*Am. Gen. Life Ins. Co. v. Rasche*, --- F.R.D. ---, No. H-10-4087,
    2011 WL 1100270 (S.D. Tex. Mar. 22, 2011)............................................... 21, 22, 23

*Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618 (5th Cir. 2008) .......................... 2

*Cantex Energy Corp. v. World Stock Exch., LLC*, No. SA-09-CA-0218-XR,
    2009 WL 2407959 (W.D. Tex. Aug. 4, 2009)......................................................... 12

*Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376
    (5th Cir. 2003)......................................................................................... 10, 11, 19

*Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir. 1990)........................................... 18

*Dotson v. Fluor Corp.*, 492 F. Supp. 313 (W.D. Tex. 1980) ............................................. 14

*Featherston v. HSBC Card Servs., Inc.*, No. H-09-3940, 2010 WL 3120053
    (S.D. Tex. Aug. 9, 2010)..................................................................................... 13

*Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320 (5th Cir. 1996) .............................. 19

*Godwin Gruber, P.C. v. Lambert*, No. 3-03-CV-1095, 2004 WL 813229
    (N.D. Tex. Apr. 13, 2004) ................................................................................... 14

*Guajardo v. Deanda*, 690 F.Supp.2d 539 (S.D. Tex. 2010) ............................................... 14

*Hlavinka Equip. Co. v. Karuturi Global Ltd.*, No. V-09-62, 2010 WL 2196253
    (S.D. Tex. May 27, 2010) ............................................................................... 14, 15

*In re Volkswagen of Am., Inc. (Volkswagen II )*, 545 F.3d 304 (2008) ................................. 2

*Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602 (5th Cir. 2008) ........................ 6, 18

*Karl Rove & Co. v. Thornburgh*, 824 F. Supp. 662 (W.D. Tex. 1993) ................................ 14

*Kelly Law Firm, P.C. v. An Attorney for You*, 679 F.Supp.2d 755 (S.D. Tex. 2009)............ 12

*Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG*, 612 F.Supp.2d 813
    (S.D. Texas 2009) ................................................................................................ 9

*Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999)......................................................... 7

*LeBlanc v. Patton-Tully Trans., LLC*, 138 F.Supp.2d 817 (S.D. Tex. 2001) ...................... 18

*Marinor Assocs., Inc. v. MV PANAMA EXPRESS*, No. H-08-1868, 2009 WL
    4722238 (S.D. Tex. Dec. 9, 2009) ....................................................................... 15

*McClintock v. Sch. Bd. East Feliciana Parish*, 299 Fed. Appx. 363, 2008 WL
    4873245 (5th Cir. 2008)..................................................................... 2

*Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982) ......................... 10

*Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009) ..................................... 2, 6, 7, 20

*O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143 (E.D. Tex. 1995) ............... 14

*PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65
    (2d Cir. 1998) ................................................................................ 3, 21

*Republic Capital Dev. Group, L.L.C. v. A.G. Dev. Group, Inc.*, No. Civ. A.
    H-05-1714, 2005 WL 3465728 (S.D. Tex. Dec. 19, 2005) ........................................ 12

*Runnels v. TMSI Contractors, Inc.*, 764 F.2d 417 (5th Cir. 1985) ....................................... 14

*Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F.Supp.2d 725
    (S.D. Tex. 2006) ............................................................................ 14

*Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992) ........................ 18

*West Gulf Maritime Ass'n v. Lake Charles Stevedores, LLC*, No. H-09-2367,
    2010 WL 276169 (S.D. Tex. Jan. 15, 2010) ................................................... 12

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ........................................ 6, 7

## Statutes, Regulations, and Rules

28 U.S.C. §1391 ................................................................................... 20, 21

28 U.S.C. § 1404(a) ............................................................................... 2, 21

28 U.S.C. § 1406(a) ........................................................................... 2, 3, 20, 21

28 U.S.C. § 1441(a) ........................................................................... 2, 3, 20, 21

Federal Rules of Civil Procedure, Rule 12(b)(3) .............................................. 2, 3, 20, 21

Tex. Civ. Prac. & Rem. Code § 17.042 ........................................................... 8, 9

220 C.M.R. § 14.06............................................................................... 15, 16

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS OR TRANSFER VENUE**

Plaintiff Spark Energy Gas, LP ("Spark") files this Response to Defendant Toxikon Corporation's ("Toxikon") Motion to Dismiss for Lack of Personal Jurisdiction & Alternatively to Transfer Venue Under 28 U.S.C. §§1406(a) or 1404(a) (the "Motion") (Dkt. No. 12), and in support thereof would respectfully show the Court as follows:

**I.      STATEMENT OF THE NATURE AND STAGE OF THIS CASE**

This is a breach of contract case filed in Texas State court, which Toxikon removed on March 28, 2011 on diversity grounds. (Dkt. No. 1).  Toxikon entered into two Natural Gas Sales Agreements with Spark to purchase natural gas at a fixed price, performed under the first agreement for three years, but then breached the second Agreement by refusing to take and pay for the gas.  Toxikon owes Spark over $300,000 in damages pursuant to the Agreement.

The Parties have conducted a Rule 26(f) conference, submitted a Joint Case Management Plan and an agreed proposed docket control order to the Court, and exchanged Initial Disclosures, limited to jurisdictional and venue issues per the Parties' agreement.  The Parties have also filed an Agreed Motion regarding the briefing schedule for Toxikon's Motion.  The Court has entered a Scheduling Order (Dkt. No. 15) and an Order confirming the Parties' agreed briefing schedule (Dkt. No. 16).

1

## II.   STATEMENT OF ISSUES TO BE RULED ON BY THE COURT, AND STANDARD OF REVIEW

1.     Spark requests that the Court find that personal jurisdiction exists over Toxikon. Appellate review of the Court's exercise of personal jurisdiction is de novo. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

2.     Because venue is proper under 28 U.S.C. § 1441(a), Spark requests that the Court deny Toxikon's Motion to Dismiss or Transfer based on improper venue under Rule 12(b)(3) or 28 U.S.C. § 1406(a).  Appellate review of the Court's decision under Rule 12(b)(3) is for abuse of discretion. *McClintock v. Sch. Bd. East Feliciana Parish*, 299 Fed. Appx. 363, 365, 2008 WL 4873245, *1 (5th Cir. 2008).

3.     Spark requests that the Court deny Toxikon's Motion to Transfer under §1404(a) for the convenience of the parties.  Appellate review of the Court's decisions on a motion to transfer venue for the convenience of the parties is for abuse of discretion. *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008).

## III.   SUMMARY OF THE ARGUMENT

Toxikon breached a contract with a Texas resident, and immediately upon being sued and served in Texas, attempted to "undo" all of its contacts with this State.  Toxikon's Motion to Dismiss for Lack of Personal Jurisdiction should be denied because Toxikon is subject to both specific and general jurisdiction in this Court.  Specific jurisdiction exists because:  (1) Toxikon contracted with a Texas resident; (2) the Agreement created continuing, long-term obligations between Toxikon and Spark; (3) the Agreement created business activity in Texas, because Toxikon's obligations were entirely performable exclusively in Houston, Texas; (4) Toxikon hired a brokerage agent with offices in Texas to negotiate the Agreement, and specifically authorized that agent to enter into the Agreement; (5) Toxikon, through its agent, negotiated the Agreement by reaching out to Spark in Texas; (6) Toxikon communicated directly with Spark in

2

Texas regarding performance of the Agreement; and (7) Toxikon made payments to Spark in Texas.  (*See generally* Exhibit 1, Declaration of Drew Henderson).   General jurisdiction also exists over Toxikon because it: (1) affirmatively availed itself of Texas law by registering to do business in Texas; maintained a registered agent in Texas; (2) hired an employee in Texas for the specific purpose of boosting Texas sales; (3) equipped the employee with a home office; (4) has done regular business with Texas residents for years; and (5) has substantial sales in Texas.  (*See generally* Exhibits referenced in Exhibit 2, Declaration of J. Thomas).

Venue is proper in this Court under 28 U.S.C. § 1441(a), because this is "the district court of the United States for the district and division embracing the place where [the State court] action [was] pending." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998).  Therefore, Toxikon's Motion to Dismiss for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a) must be denied.

For the convenience of the parties, venue should remain in this Court.  Spark's choice of venue is entitled to great weight.  Massachusetts is not clearly a more convenient venue, and Toxikon has not shown good cause for transfer.  Therefore Spark's choice of forum should not be disturbed.  The access to evidence and witnesses, and other potential expenses associated with this litigation would be equally inconvenient to Spark if the case is transferred, as to Toxikon if the case remains in this Court.  With the exception of Spark's choice of forum, which is entitled to great weight and weighs heavily against transfer, the private and public interest factors are at most neutral with respect to Toxikon's request for a transfer to Massachusetts.

## IV.    BACKGROUND FACTS

Spark Energy is a Houston-based, independent supplier of electricity and natural gas service, with its headquarters and all operations located in Texas. (Exhibit 1, ¶2).  In 2007, Spark entered into two Natural Gas Sales Agreements with Toxikon. (*Id*. at ¶3).  The first Agreement

3

was signed May 8, 2007 and effective June 1, 2007 through May 31, 2010. (*Id*.).  The second Agreement, which is the basis for this lawsuit, was signed May 9, 2007 and effective June 1, 2010 through May 31, 2012. (*Id*.)   The two Agreements were negotiated through Toxikon's agent, Patriot Energy Management, Inc. ("Patriot"). (*Id*. at ¶4).   Patriot is a broker who is familiar with Spark's business, and who knew Spark operates exclusively in Houston, Texas. (*Id*. at ¶13).   Patriot provided Spark with a written authorization to enter into the Agreements on Toxikon's behalf.  (Exhibit 5).   Spark priced and negotiated both Agreements exclusively in Houston, Texas.  Both of the Agreements were signed by a representative of Patriot, with the express authorization of Toxikon's CFO.   Ken Ziober, a Spark employee, signed both Agreements in Houston, Texas. (Exhibits 3, 4; Exhibit 1, ¶¶7, 9).

Under the terms of the two Agreements, Spark was required to provide natural gas to fill Toxikon's demands, and Toxikon was required to purchase gas at a fixed price, for a period of five years. (Exhibit 1, ¶10).  Spark fully performed its obligations under the Agreements, until August 2010 when Toxikon refused to take or pay for any gas. (*Id*. at ¶¶10–19).   In order to fulfill its contractual obligations to Toxikon, Spark conducted activities exclusively from its headquarters in Houston, Texas. (*Id*. at ¶¶11–12).   These activities included, among other things: negotiating and contracting with third-parties to purchase the requisite supply of gas, transport and deliver the gas, and for balancing; negotiating and contracting with third-parties to hedge gas supply; communicating with local utilities regarding service and delivery of gas to Toxikon; communicating with local utilities regarding invoicing Toxikon; billing and customer service provided to Toxikon; processing payments from Toxikon; recordkeeping associated with Toxikon's account; and communicating directly with Toxikon regarding its accounts. (*Id*.).

From 2007 until May 2010, Toxikon performed under the first Agreement, and was engaged in a continuing business relationship with Spark. (*Id*. at ¶¶10–14).   Toxikon was

4

invoiced for gas directly from Spark, and paid invoices by sending payment directly to Spark in Houston, Texas. (*Id.* at ¶¶11, 15–17; Exhibits 7 & 8).  Beginning in May 2010, Toxikon refused to pay for gas pursuant to the second Agreement. (Exhibit 1, ¶18).  Toxikon's gas service was never interrupted as a result of its refusal to perform under the second Agreement. (*Id.*). Therefore, gas continued to flow to Toxikon's meter after May 31, 2010. (*Id.*).  At the same time, Spark engaged in direct contacts with Toxikon, including telephone calls and emails, attempting to persuade Toxikon to fulfill its obligations under the second Agreement. (*Id.*).  Spark employees in Houston Texas communicated directly with Toxikon employees as well as with Patriot during this time. (*Id.*).  In August 2010, after Toxikon refused to perform under the second Agreement, Toxikon's gas service was switched to another supplier. (*Id.* at ¶19).  Spark then engaged in collection efforts, including direct contacts with Toxikon employees and a Toxikon attorney. (*Id.*).  Spark employees in Houston Texas communicated directly with Toxikon's employees and its attorney during this time. (*Id.*).  Eventually, Toxikon paid for the gas that was provided to it between May 31, 2010 and August 2010. (*Id.*).

Spark filed suit in Texas State court on February 8, 2011, for damages pursuant to the terms of the Agreement. (*See* Dkt. No. 1, Ex. 3).  Spark seeks to recover $301,124 in damages pursuant to the terms of the Agreement. (*Id.* at ¶20).  Toxikon removed the case to this Court March 28, 2011, and has moved to dismiss for lack of personal jurisdiction and improper venue, or in the alternative to transfer venue to the United States District Court, District of Massachusetts. (Dkt. Nos. 1, 12).

## V.    TOXIKON IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

### A.    Personal Jurisdiction Standards

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the

Due Process Clause of the Fourteenth Amendment. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009)  "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id*. (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).   To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994)).

        "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1547 (Fed. Cir. 1995)).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).  "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id*. (citing *Akro,* 45 F.3d at 1549). "The interests to balance in this determination are the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Id*. (citing *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)).

        "Jurisdiction may be general or specific." *Mullins*, 564 F.3d at 398 (quoting *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008)).  Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the

defendant purposefully directed at the forum state. *Id.* (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).  In contrast, general jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see also Mullins*, 564 F.3d at 398–99.

### B. Specific Jurisdiction Exists Based on Toxikon's Ongoing Business Relationship with Spark, a Texas Resident, and the Agreement Which Was Performable by Spark in Texas

Specific jurisdiction exists because Toxikon reached out to contract with Spark, a Texas resident; the contract was fully performable by Spark in Texas, and partially performable by Toxikon in Texas; the contract created an ongoing business relationship with Spark; and Toxikon could foresee that the contract would create ongoing business activity in Texas.

### 1. Toxikon Purposefully Availed Itself of the Benefits and Protections of Texas Law

Toxikon purposely availed itself of the benefits and protections of Texas law in two ways.  First, it registered to do business in Texas (Exhibit 10) and designated a registered agent in Texas. (Exhibits 10–11).  Toxikon's argument that it never expected that "it could or would be dragged to a Texas courtroom" (Motion, at p. 3) is belied by the fact that it purposely availed itself of privilege to do business in Texas by registering with the Texas Secretary of State, and maintained a registered agent, for the very purpose of being served with process in Texas.  It was

only when Toxikon was "dragged" into a Texas court that it attempted to sever these contacts with Texas. (*See* Dkt. No. 1, Ex. 2 (Return of Service, showing Toxikon's registered agent was properly served in Kyle, Texas on March 1, 2011); Exhibit 12 (Resignation of Registered Agent filed on March 9, 2011)).

Second, as a matter of law, Toxikon did business in Texas by contracting with Spark, via two Agreements that required full performance by Spark in Texas and by fully performing one of the Agreements, and breaching the other. (Exhibit 1, ¶¶11–13). The Texas long-arm statute provides that "a nonresident does business in this state if the nonresident … contracts by mail or otherwise with a Texas resident and *either party* is to perform the contract *in whole or in part* in this state." TEX. CIV. PRAC. & REM. CODE § 17.042. Although Spark sells gas to customers in several states, Spark's operations to provide gas to customers are conducted solely in Houston, Texas. (Exhibit 1, ¶12). Therefore, all of Spark's obligations under both Agreements with Toxikon were performed in Houston, Texas. (*Id*. at ¶¶11–12). Toxikon's Motion and the affidavit of Mr. Desai suggest that Toxikon "did nothing in Texas concerning the alleged contract." (Motion, at p.5). However, by entering into the Agreements and establishing this contractual relationship with Spark for at least three years, Toxikon did business in Texas from at least 2007 until 2010. *See* TEX. CIV. PRAC. & REM. CODE § 17.042.

## 2.    Toxikon Established Minimum Contacts with Texas

Toxikon entered into two agreements with Spark, establishing a relationship of at least five years, and creating business activity in Texas. (Exhibit 1, ¶¶10–11). Spark's obligations under the Agreements were fully performable in Texas. (*Id*. at ¶12). Toxikon was invoiced directly by Spark, with Spark's Houston address shown on the invoices. (Exhibit 7). Toxikon sent payments directly to Spark in Houston Texas, with checks payable to "Spark Energy Gas,

Post Office Box 4328, Houston, TX." (Exhibit 8).[1] And Toxikon engaged in direct communications with Spark in Texas relating to the performance and breach of the Agreements. (*Id.* at ¶¶15, 18–19). Toxikon argues that entering into a contract with a Texas resident, mailing payments to and communicating with the resident plaintiff, without more, is an insufficient basis for specific jurisdiction. (Motion, at p.10). However, Toxikon ignores Fifth Circuit law which holds that "contracting with a resident of the forum state … mailing payments to the forum state, [and] engaging in communications related to the execution and performance of the contract … may be sufficient for specific personal jurisdiction when the contract contemplates a long-term relationship between the nonresident defendant and a forum resident." *Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co.*, KG, 612 F.Supp.2d 813, 822 (S.D. Texas 2009). Given the long-term relationship here, Toxikon's contacts with Texas, through its contractual dealings with Spark, are sufficient.

In 1982, the Fifth Circuit explained the rule that was, and still is, the law in this Circuit regarding contracts between residents and nonresidents that create business activity in a forum state:

> The rule developed by this circuit, however, is that when a nonresident defendant takes "purposeful and affirmative action," the effect of which is "to cause business activity, foreseeable by (the defendant), in the forum state," such action by the defendant is considered a "minimum contact" for jurisdictional purposes. "When a defendant purposefully avails himself of the benefits and protection of the forum's laws-by engaging in activity ... outside the state that has reasonably foreseeable consequences in the state-maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice."

*Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982) (citations omitted). The plaintiff in *Transpo* was a trucking firm who arranged shipments for the defendant freight broker, and then, from its offices in Mississippi, scheduled shipments and telephoned

---

[1] These checks appear to have been signed by Laxman Desai, who has submitted a sworn declaration stating that "Toxikon … did not make payment, in Texas." (Motion, Ex. 4, ¶4; Exhibit 8).

instructions to drivers. *Id*. at 1005. Even though none of the shipments originated or terminated in Mississippi, the court nevertheless found that "Mississippi was clearly the hub of the parties' activities, from which the Mississippi plaintiff directed at the defendant's order the movement of its trucks throughout the nation." *Id*. at 1010. Likewise, although Spark's customers receive gas in various states, the hub of activity is Spark's headquarters in Houston, Texas. (Exhibit 1, ¶12). Like the plaintiff in *Transpo*, Spark does all of the purchasing, hedging, scheduling, balancing, and communications necessary to arranged for the delivery of gas from its hub in Houston. (*Id*. at ¶11).

In *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 (5th Cir. 2003), the Fifth Circuit reasoned the long-term nature of the agreement remains important to the personal jurisdiction analysis. The court found that because the contract contemplated a long-term relationship, the defendant's contacts with Texas could not be "characterized as random, fortuitous, or attenuated." *Id*. at 383. Rather, the court concluded the nonresident defendant purposefully affiliated itself with a company based in Texas. *Id*. at 382. Even though the nonresident defendant did not pick up or deliver freight in Texas, it "took purposeful and affirmative action by entering into the [agreement], … that had the clearly foreseeable effect of causing business activity in the forum state." *Id*. (internal quotation marks omitted). The Court focused on the continuing obligations between the parties to the agreement, and on the business activity those obligations created in Texas, noting:

> [A] defendant can purposefully contact the forum state and avail itself of the benefits and protections of the forum's laws <u>by creating continuing obligations between itself and residents of the forum</u>. Thus, … a nonresident can establish contact with the forum by taking purposeful and affirmative action, <u>the effect of which is to cause business activity (foreseeable by the defendant) in the forum state</u>.

*Id*. at 382 fn.6 (citations omitted).

10

Here, Toxikon purposefully entered into two agreements with Spark, spanning five years. (Exhibit 1, ¶3).  In fact, after the first Agreement was signed, it was Toxikon who requested the additional two years under the second Agreement. (*Id*. at ¶8).  The Agreements thus created "continuing obligations between" Toxikon and Spark for a period of five years. *See Central Freight*, 322 F.3d at 382 fn.6.  All of Spark's operations are conducted in Houston, Texas (Exhibit 1, ¶10), and thus Toxikon entered into the Agreement knowing that it would be "affiliating itself with an enterprise based primarily in Texas." *See Central Freight*, 322 F.3d at 382 fn.6.  Based on the extensive activities that Spark was required to perform in Houston to carry out its obligations (Exhibit 1, ¶11), the Agreements were certain to, and did, cause business activity – foreseeable to Toxikon – in Texas. *See Central Freight*, 322 F.3d at 382 fn.6.

The fact that Spark's obligations were performed in Texas was not "random," "unilateral" or "fortuitous."  This is not a case where a resident plaintiff has operations in many states and simply chooses to carry out its obligations at one particular location.  Instead, Spark's operational center is located <u>only</u> in Houston, Texas. (Exhibit 1, ¶12).  By agreeing to purchase gas from Spark for five years, Toxikon undoubtedly created business activity in Texas.

Under *Central Freight* and *Transpo*, the long-term, continuing obligations created between Toxikon and Spark, and the business activity required of Spark in Texas, are sufficient to establish specific jurisdiction. *See also West Gulf Maritime Ass'n v. Lake Charles Stevedores, LLC*, No. H-09-2367, 2010 WL 276169, *5 (S.D. Tex. Jan. 15, 2010) (citing *Latshaw*, 167 F.3d at 213 & n. 19; *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1206 (5th Cir. 1993), *cert. denied,* 510 U.S. 1116 (1994)) (plaintiff made a *prima facie* case for specific jurisdiction, where nonresident defendant had contract with plaintiff, and plaintiff performed its services in Texas); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F.Supp.2d 755, 763 (S.D. Tex. 2009) (finding specific jurisdiction where nonresident defendant received leads for potential

11

plaintiffs in mesothelioma and birth injury lawsuits, processed information in New York, and sent the leads to Texas lawyers); *Cantex Energy Corp. v. World Stock Exch., LLC*, No. SA-09-CA-0218-XR, 2009 WL 2407959, *7 (W.D. Tex. Aug. 4, 2009) (concluding jurisdiction was proper where defendant "intentionally reached out to a Texas company with the purpose of establishing an ongoing relationship and causing business activity in Texas" and entered into multiple contracts with the Texas plaintiff, "the collective terms of which exceeded one year"); *Republic Capital Dev. Group, L.L.C. v. A.G. Dev. Group, Inc.*, No. Civ. A. H-05-1714, 2005 WL 3465728, *6 (S.D. Tex. Dec. 19, 2005) (by entering into multi-year business relationship, "defendants knew that they were affiliating themselves with a Texas-based limited liability company").

### 3. The Fact that Toxikon Entered into the Agreement Through its Agent Patriot Does Not Insulate it from the Court's Jurisdiction

In its Motion, Toxikon claims that Patriot was not authorized to enter into the Agreements on Toxikon's behalf.  This is directly contradicted by Spark's evidence, including an express, written Appointment of Agent, which provides:

> [Toxikon] Appoints Patriot Energy Management, Inc. … as its agent to act in its name, place and stead in any way which it could act with respect to researching, negotiating, executing, rescinding and delivering, energy product and service agreements with competitive energy suppliers. … Acknowledges that … pursuant to this Appointment of Agent *it is granting the Agent an exclusive right to, among other things, enter into an agreement(s) with competitive energy suppliers*. … Agrees that *any third party receiving a duly executed copy or facsimile of this Appointment of Agent may act hereunder*, *and that revocation or termination hereof shall be ineffective as to* the Agent and *such third party unless and until actual written notice of such revocation or termination shall have been received by* the Agent and *such third party*.

(Exhibits 5 & 15 (emphasis added); *see also* Exhibit 1, ¶4).  The Appointment of Agent was signed by Toxikon on May 8, 2007, and faxed to Spark. (*Id.*).  Moreover, <u>Toxikon specifically authorized Patriot to enter into the second Agreement that is the basis of this lawsuit on its behalf</u>.  Significantly, Exhibit 15, which Toxikon produced in this lawsuit, includes two copies of

the Appointment of Agent received by Spark in Houston.  Each copy includes a second page, both signed by Dexter Williams, CFO of Toxikon.  The first indicates that Toxikon was entering into a 36-month "Freedom Plan" at a Fixed Energy Rate of $12.08.  (Exhibit 15, at "TOXIKON 2").  The second, which was signed by Toxikon's CFO on May 9, 2007, indicates that Toxikon knowingly entered into the same "Freedom Plan" **at a Fixed Energy Rate of $12.08, with a term of 24 Months and a "June 2010 Start."**  (*Id.* at "TOXIKON 4" (emphasis added)).  It is simply beyond dispute that this refers to the second Agreement, with a fixed price of $12.08 and a term of June 1, 2010 to May 31, 2012. (Exhibit 4).  Accordingly, this is indisputable evidence that Toxikon specifically agreed to enter into the second Agreement, and shows that Mr. Laxman Desai's sworn statement that "Patriot … was not authorized by Toxikon to sign the alleged contract" (Motion, Ex. 4, ¶4) is an utter falsehood.

Toxikon cannot use the fact that it negotiated and signed the Agreements through its agent, Patriot, to insulate it from this Court's jurisdiction (*See* Motion, at p. 12), because acts taken by an agent in the forum State may be attributed to the principal and subject the principal to personal jurisdiction. *See Featherston v. HSBC Card Servs., Inc.*, No. H-09-3940, 2010 WL 3120053, *2–3  (S.D. Tex. Aug. 9, 2010) (principal subject to personal jurisdiction based on acts of debt collection agent in Texas) (citing *Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974)); *see also Runnels v. TMSI Contractors, Inc.*, 764 F.2d 417 (5th Cir. 1985) (jurisdiction existed over Saudi Arabian partnership in part because its agent in California solicited plaintiff's services in Louisiana); *Guajardo v. Deanda*, 690 F.Supp.2d 539, 547 (S.D. Tex. 2010) (personal jurisdiction existed over principal based on authorized agents' telephone calls to recruit Texas plaintiffs for employment); *Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F.Supp.2d 725, 729–31 (S.D. Tex. 2006) (non-party recruiting agent's actions in Texas subjected nonresident principal to personal jurisdiction in Texas); *Godwin Gruber, P.C. v.*

*Lambert*, No. 3-03-CV-1095, 2004 WL 813229, *5 (N.D. Tex. Apr. 13, 2004); *O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143, 145 (E.D. Tex. 1995); *Dotson v. Fluor Corp.*, 492 F. Supp. 313, 314–17 (W.D. Tex. 1980).

In *Hlavinka Equip. Co. v. Karuturi Global Ltd.*, No. V-09-62, 2010 WL 2196253, *3 (S.D. Tex. May 27, 2010), the nonresident defendant's representative traveled to Texas to negotiate an agreement with the plaintiff.  The defendant argued that the person who travelled to Texas was not an officer, director, employee, agent, or representative of the defendant corporation, and had no authority to enter into the contract on the defendant's behalf.  *Id*. However, the plaintiff presented contrary evidence, showing that the representative had actual authority.  *Id*.  The court, as it was required to do, took the plaintiff's evidence as true, and determined that the representative had in fact traveled to Texas on the defendant's behalf to enter into a contract.  *Id*. at *4.

Similarly, in *Karl Rove & Co. v. Thornburgh*, 824 F. Supp. 662 (W.D. Tex. 1993), personal jurisdiction was found over a U.S. Senate candidate from Pennsylvania, where the candidate's agent entered into an agreement with a Texas firm.  The court had "no doubt Thornburgh gave Murray Dickman actual authority to act as his agent with respect to his 1991 campaign for the Senate.   At the very least, Dickman had apparent authority to act on Thornburgh's behalf with respect to the campaign and, specifically, the agreement with Rove." *Id*. at 671.  "Thus, … this Court has personal jurisdiction over Thornburgh because of the acts of his agent Dickman."  *Id*. at 672.

A plaintiff need only make a *prima facie* showing of the connection between the actions of the agent and the principal. *Marinor Assocs., Inc. v. MV PANAMA EXPRESS*, No. H-08-1868, 2009 WL 4722238, *4 & n.8 (S.D. Tex. Dec. 9, 2009) (personal jurisdiction over principal existed based on agent's acts in Texas port).  Here, the Appointment of Agent (Exhibits 5, 15),

14

unambiguously gives Patriot actual authority to negotiate and enter into contacts on Toxikon's behalf.  Toxikon specifically authorized Patriot to enter into the second Agreement.  (*Id*.).  Thus, any action taken by Patriot on Toxikon's behalf should be deemed an act of Toxikon for the purposes of the jurisdictional analysis. *Hlavinka Equip. Co.*, 2010 WL 2196253, *3–4; *Karl Rove & Co.*, 824 F. Supp. at 671–72.  Through its agent Patriot, Toxikon did reach out to Spark in Texas to negotiate and sign the Agreements. (Exhibit 1, ¶4).  Patriot Energy is registered to do business in Texas and has been since 2006, maintains an office in Dallas, Texas, and maintains a registered agent in Dallas.  (Exhibits 6, 16).

### 4.   The Massachusetts Statutes Cited by Toxikon Are Irrelevant to the Jurisdictional Analysis

In its Motion, Toxikon makes much of the fact that certain Code of Massachusetts Regulations are referenced in the Agreement. (Motion, at pp. 11, 23–24).  These Codes sections do not apply to a breach of contract action by Spark against Toxikon, and have no bearing on the jurisdictional analysis.  Toxikon points to the alternative dispute resolution procedures of 220 C.M.R. § 14.06(4)(b), *not to invoke those procedures*, but to suggest that the reference in the Agreement to them somehow shields Toxikon from this Court's jurisdiction. (Motion, at p. 11).  However, 220 C.M.R. § 14.06(4)(b) applies to "Other Customer Complaints" against a Supplier, not suits by a Supplier against a Customer for non-payment.  Indeed, the entire section 14.06 applies only to *complaints* brought *by a Customer against a Supplier*, not to lawsuits by a Supplier against a Customer.  *See* 220 C.M.R. § 14.06(2), (3) ("A Retail Customer may file a complaint with the Department …"); § 14.06(4)(a) ("All other complaints brought by a Customer …").

Consequently, none of these provisions apply to this lawsuit.  The fact that Toxikon obviously does not want to litigate in Texas, yet does not go so far as to suggest that it can actually invoke these "alternative dispute resolution" procedures in Massachusetts, shows that

Toxikon knows these provisions to be inapplicable to the case at hand.  Further, regardless of what application (if any) the Massachusetts code provisions could have in this dispute, nothing about the code provisions makes the Agreement "performable" in Massachusetts, as Toxikon's Motion suggests.  (*See* Motion, at pp. 11–12.)

### C.    General Jurisdiction Exists Because Toxikon Affirmatively Sought to, and Did, Do Business in Texas

General jurisdiction exists because Toxikon registered to do business in Texas, maintained a registered agent in Texas, hired an employee in Texas to create business here, equipped the employee with a home office in Texas, and conducted business with Texas residents.  Toxikon's general contacts with Texas are not random, fortuitous, or isolated.  Toxikon reached out to this State to conduct business here, by registering to do business in Texas in April 2009, during the term of the first Agreement. (Exhibit 10).  Toxikon was still registered to do business in Texas as of the date this lawsuit was filed, and is still registered to do business in Texas to this day. (Exhibit 11).

Toxikon anticipated that it might be called into court in Texas, because it designated a registered agent to accept service of process in this State. (Exhibits 10, 11).  It was only after this lawsuit was filed, and Toxikon's registered agent in Texas was served, that Toxikon scrambled to sever its contacts with Texas.  On March 9, 2011, eight days after Toxikon's registered agent was served on March 1, 2011, Toxikon filed papers to remove him as their registered agent.  (*See* Dkt. No. 1, Ex. 2 (Return of Service); Exhibit 12 (Resignation of Registered Agent)).  This untimely and suspicious action should not insulate Toxikon from this Court's jurisdiction.

During the time that its Agreements with Spark were in place, Toxikon hired an employee, Stephen Mohan, in Kyle, Texas as "Technical Sales Representative" for the specific purpose of establishing a business practice in Texas. (*See* Exhibit 13 (Offer of Employment showing Mr. Mohan's territory of "Texas and Illinois w/25 Active Existing Accounts").  As

16

Technical Sales Representative, Mr. Mohan was a full time employee with a primary territory that included Texas. (Exhibit 14).  Mr. Mohan's duties in Texas included "directly selling Toxikon's testing services to the assigned territories and industries," "bringing in new accounts," and "maintain and grow any accounts assigned to you." (*Id*.).  Mr. Mohan's work in Texas was "overseen by internal Account Managers through the Customer Service Department located in the corporate office." (*Id*.).  Toxikon equipped Mr. Mohan with a home office in Texas, stating in his agreement that, "[i]t is Toxikon's expectation that your house will be your base office. Toxikon will provide a phone, computer, printer and software necessary to interact with the laboratory operation(s).  Toxikon will provide business cards, letterhead, and other standard business supplies …" (*Id*.).

Toxikon argues that it is not subject to general jurisdiction because it "has no physical presence in Texas." (Motion, at p. 15).  However, Toxikon did have an employee in Texas, who was required to grow sales in Texas and interact directly with other Toxikon locations. (Exhibit 14).  Toxikon provided that employee with a computer, printer, telephone, and other office supplies. (*Id*.).  Thus, while Mr. Mohan was employed by Toxikon, the corporation did have a physical presence in this State.

Toxikon also argues that it had only "insubstantial sales with Texas." (Motion, at p. 15–16).  Toxikon admits that its sales come from "all over the world." (*Id*. at p. 15; Ex. 4 at ¶5).  It also admits that "less than 4%" of its average annual sales from 2007 to 2010 came from Texas, but does not reference the percentage of sales from any other state. (*Id*.).  This evidence is insufficient to conclude as a matter of law that Toxikon's Texas sales are "insubstantial."  If a corporation did an equal amount of business in all 50 U.S. states, its sales would average 2% from each state.  Toxikon should not be insulated from a federal court's jurisdiction in every state, simply because its sales are distributed among many states.  Toxikon's own records show

17

that it did hundreds of thousands of dollars per year in sales in Texas, which spanned every month in every year from 2007 through 2010. (Exhibit 17).

Further, the cases cited by Toxikon for the proposition that its sales are too insignificant to create general jurisdiction are distinguishable, in that here general (or specific) jurisdiction does not hinge solely on Toxikon's Texas sales.  Importantly, the cases cited by Toxikon do not involve corporations that not only made sales in Texas, but also were registered to do business in Texas, had employees and/or offices in Texas, maintained a registered agent in Texas, and contracted with Texas residents, creating long-term continuing obligations and business activities in this State.  *See Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 612–14 (5th Cir. 2008) (defendants did not have registered agents and were not registered to do business in Texas); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 & n.6 (5th Cir. 1999) (same); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) (defendant was not registered to do business in Texas); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (neither parent nor subsidiary were registered to do business or maintained agent in Louisiana); *LeBlanc v. Patton-Tully Trans., LLC*, 138 F.Supp.2d 817, 818 (S.D. Tex. 2001) (defendant did not maintain a registered agent in Texas).  Unlike these cases, the <u>combination</u> of: registering to do business in this State; maintaining a registered agent here (until being sued); hiring an employee to make sales in Texas; equipping that employee with a home office; and actually doing business in this State, is more than sufficient to make a *prima facie* case of general personal jurisdiction.

### D.   Jurisdiction Does Not Offend Traditional Notions of Fair Play and Substantial Justice

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. The defendant must make a 'compelling case.'" *Central Freight Lines,*

322 F.3d at 384 (quoting *Burger King,* 471 U.S. at 477). "In deciding whether it is fair and reasonable to require a nonresident defendant to litigate in Texas, a court must consider several factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Central Freight Lines*, 322 F.3d at 384 (citations omitted); *Felch v. Transportes Lar-Mex SA DE CV,* 92 F.3d 320, 324 n.9 (5th Cir. 1996).

Here, there is no compelling case that litigation in Texas would be unduly burdensome to Toxikon. The fact that Toxikon may have to maintain Texas counsel and travel to Texas is not a compelling case, otherwise no out-of-state corporation could ever be compelled to litigate in Texas, regardless of their contacts with this State. This State has an interest in this dispute, as it involves business activity that took place primarily in Houston, Texas. Toxikon has already retained Texas counsel and is actively participating in litigation here. Thus it is clear Toxikon will be equally able to secure any relief it seeks in this Court. Maintaining the case in this Court would be most efficient because the Parties are already before the Court. Finally, there are no fundamental social policies at issue. This is a simple breach of contract case in which a Texas resident is attempting to collect the monies owed to it.

### E.    Mr. Laxman Desai's Declaration is Contradicted by Spark's Evidence

The Declaration of Mr. Desai is completely contradicted by documentary evidence in at least the following ways:

(1) As noted above, Mr. Desai's statement that "Patriot … was not authorized by Toxikon to sign the alleged contract" (Motion, Ex. 4, ¶4) is plainly false. Toxikon's CFO specifically authorized the precise terms of the second Agreement. (Exhibit 15).

(2) "Mr. Desai states "Toxikon did not receive any natural gas … under the alleged contract." (Motion, Ex. 4, ¶2). In fact, Toxikon continued to receive, and ultimately

19

paid for, gas after May 1, 2010 under the second Agreement.  (Exhibit 1, ¶18; Exhibit 8 (showing payments made by Toxikon in October 2010)).

(3) Mr. Desai claims that "the alleged contract does not require plaintiff to do any work in Texas."  (Motion, Ex. 4, ¶4).  To the contrary, <u>all of Spark's work</u> is done in Houston, Texas.  (Exhibit 1, ¶¶11–12).

(4) Mr. Desai claims that Toxikon "did nothing in Texas concerning the alleged contract" and "did not make payment, in Texas."  (Motion, Ex. 4, ¶4).  However, Toxikon communicated directly with Spark in Texas, made payments to Spark in Texas, and acted through its agent in its contacts with Spark.  (Exhibit 1, ¶¶15–17).

(5) Mr. Desai states that Toxikon "has never maintained an office … never maintained a mailing address … stored any documents … done any work … [or] had personal property or other assets in Texas."  (Motion, Ex. 4, ¶6).  All of this is contradicted by its own documents, showing that Toxikon hired Mr. Mohan to conduct business in Texas, and equipped Mr. Mohan with a home office.  (Exhibits 13, 14).

Unless there is an evidentiary hearing, the Court must "resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Mullins*, 564 F.3d at 398–99.   Given the clear inaccuracies noted above, Mr. Desai's statements are unreliable, his entire declaration undermined, and the Court should disregard his statements for purposes of Toxikon's Motion.

## VI.   VENUE IS PROPER IN THIS COURT, AND THE CASE SHOULD REMAIN IN THIS COURT FOR THE CONVENIENCE OF THE PARTIES

### A.   Venue in this Court is Automatically Proper Under §1441(a) Because the Case Was Removed to this Court, or Because Toxikon is Subject to Personal Jurisdiction in this District

Toxikon's Motion to Dismiss or Transfer for improper venue under Rule 12(b)(3) and/or 28 U.S.C. § 1406(a), must both be denied because venue is proper in this Court.  Venue in a removed action is governed by the removal statute, 28 U.S.C. §1441(a), not the general venue statutes, 28 U.S.C. §1391.   "[T]he removal statute provides that venue is proper in 'the district court of the United States for the district and division embracing the place where such action is pending.' 28 U.S.C. § 1441(a) (1994). Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 (West Supp. 1997), governs venue in removed cases." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998).  Under

20

§1441(a), venue is <u>always</u> proper in the federal court "embracing the place where [the State court] action is pending." 28 U.S.C. §1441(a).  Spark filed suit in State court in Harris County, Texas.  (Dkt. 1, Ex. 3).  Toxikon removed to this Court, which is the district where the State court action was pending, making venue automatically proper in this Court.   Therefore, Toxikon's Motion to Transfer must be denied to the extent that it seeks dismissal or transfer for *improper* venue under either Rule 12(b)(3) or 28 U.S.C. § 1406(a).   Alternatively, because Toxikon is a corporation, it "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c). Therefore, because Toxikon is subject to personal jurisdiction in this district, it resides in this district, and venue is proper under the general venue statute, 28 U.S.C. § 1391(a).   In short, Toxikon's only available argument for a transfer of venue is 28 U.S.C. § 1404(a), but as discussed below, transfer for convenience is not warranted.  *See PT United Can*, 138 F.3d at 72.

### B.      This Case Should Remain in this Court for the Convenience of the Parties

Under 28 U.S.C. § 1404(a), the Court may transfer a case to another appropriate forum "[f]or the convenience of parties and witnesses, in the interest of justice."  "Section 1404(a) requires that defendant show good cause in order to effect a transfer."  *Am. Gen. Life Ins. Co. v. Rasche*, --- F.R.D. ---, No. H-10-4087, 2011 WL 1100270, *6 (S.D. Tex. Mar. 22, 2011) (citing *Volkswagen II*, 545 F.3d at 315).  "To show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  *Id.* (quoting § 1404(a)).  "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.*

The private interest factors to be considered on a § 1404(a) are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of

witnesses; 3) the cost of attendance for willing witnesses; 4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and 5) the plaintiff's choice of forum. *Id.* The public interest factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; 4) the avoidance of unnecessary problems of conflict of laws; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

### 1.    Private Factors Are Neutral, or Weigh Against Transfer

***Plaintiff's choice of forum***.  Spark chose Houston, Texas as its forum.  "Plaintiff's choice of this court as the forum for this case carries great weight." *Id*. at *7.  Spark's business is unique in that it conducts all of its activities in Houston, Texas, but gas is delivered through third-party pipeline transporters and local utilities to customers in various states.  (Exhibit 1, ¶2).  If the mere fact that a customer received gas in another state was enough to negate Spark's choice of forum, Spark would never be able to litigate in its own State against a non-paying, out-of-state customer.  Such a result is inequitable and is not the purpose of §1404(a).

***Relative ease of access to sources of proof.***  All of Spark's sources of proof – including four witnesses and all documents – are located in Texas.  (Exhibit 1, ¶¶21, 23).  Toxikon claims that three witnesses are located in Massachusetts.  (Motion, p. 21).  This factor is, at most, neutral. *Rasche*, 2011 WL 1100270, *7 ("[E]ach forum would be equally inconvenient for one of the parties, making this factor neutral.").  Moreover, it is likely that the witnesses and documents actually used at trial of this matter are more likely to be maintained by Spark in Texas, than by Toxikon in Massachusetts.  Toxikon's primary defense on the merits (doomed though it may be by Exhibit 15) appears to be that it did not authorize Patriot to enter into the Agreement.  (Motion, p. 21).  It is unlikely that Toxikon will rely on any significant amount of documents or tangible things in Massachusetts for this defense.  Although Toxikon states that

Patriot had no authority to enter in the Agreement, and Patriot is located in Massachusetts (*id.*), the unambiguous terms of the Appointment of Agent negates the need for additional extrinsic evidence on this point. (Exhibit 15).  Further, Patriot has offices in Texas and dealt directly with Spark in Texas, and therefore will not be unduly burdened by producing records or witnesses here. (Exhibits 6, 16).

Likewise, the fact that Toxikon is located in Boston, and received gas there, does not mean that key evidence is located there.   There is no dispute in this case about any issues regarding the actual delivery of gas to Toxikon in Massachusetts.   On the other hand, the documents, witnesses, and other evidence necessary for Spark to prove its damages are all located in Houston, Texas. (Exhibit 1, ¶¶21, 23).

*Availability of compulsory process to secure the attendance of witnesses*.   Toxikon claims that the potential need to compel Patriot witnesses to attend depositions or trial weighs in favor of transfer to Massachusetts.  However, Toxikon has stated that if this case is not dismissed or transferred, it will add Patriot as a party.  (*See* Dkt. No. 13 - Joint Case Management Plan). Thus, Patriot will be a party and this factor will be inapplicable as to Patriot.  One key non-party witness, Dexter Williams who is Toxikon's former CFO, lives in Arizona, weighing neither in favor of nor against transfer.   In addition, Preston Ochsner is a former Spark employee who participated in the negotiation of the Agreements, and is thus now a non-party witness.  (Exhibit 1, ¶21).  Overall, this factor weighs against transfer.

*Cost for attendance of willing witnesses*.  This factor is at best neutral, because the cost for Toxikon witnesses to travel to Houston will be similar to the cost for Spark witnesses to travel to Boston.  *Rasche*, 2011 WL 1100270, *7.  Toxikon claims to have three witnesses in Massachusetts but fails to identify any specifically.

Toxikon claims the New York choice-of-law provision weighs in favor of transfer.

23

(Motion, at p. 21–22).  First, the Agreement is not "governed by" Massachusetts law.  (*See* Exhibit 4).  Second, in this simple breach of contract case, the need for experts on New York law is speculative at best.  Third, even if anyone from New York was needed for adjudication of this case, which is doubtful, the difference in time and expense between a three-hour flight from New York to Houston, and a flight (or a three-hour drive) from New York to Boston is minimal.

*Other Practical Problems*.  Toxikon claims that the potential addition of Patriot again weighs in favor of transfer, because Patriot may have issues regarding personal jurisdiction or venue.  First, problems that Toxikon may have in asserting a third-party claim are irrelevant to this analysis.  Toxikon can sue Patriot wherever it chooses.  Second, as shown by the arguments and evidence herein, Patriot has just as much, if not more, contact with this State as did Toxikon.

### 2.  Public Factors Are Neutral, or Weigh Against Transfer

*Administrative difficulties or court congestion*.  While there are no apparent congestion issues in either court, in this Court, the Parties have already exchanged Initial Disclosures, agreed to a Scheduling Order and a Joint Case Management Plan.  Efficient administration of the case therefore weighs against transfer.

*Local interest in having localized disputes decided at home*.  Toxikon makes much of the unsurprising fact that Spark is licensed to and does sell gas in Massachusetts.  (Motion, pp. 22–23).  Spark obviously follows the licensing regulations of every state in which it sells gas.  Spark's licensing or compliance with Massachusetts law has nothing to do with this case.  Toxikon has not attempted to invoke any of the Massachusetts code provisions regarding "alternative dispute resolution" because those provisions are plainly inapplicable to this case.  As noted above, if the mere fact that Spark complies with the laws of the states in which it sells gas means that venue should lie only in those other states, Spark would never be able to litigate in a Texas court against any out-of-state defendant.  Toxikon also ignores the fact that Texas has an

interest in protecting the rights of its citizens when contracts are breached by out-of-state parties.

*Familiarity of the forum with the law that will govern the case*.   Toxikon quite incorrectly claims that Massachusetts law may govern the dispute. (Motion, at p. 24).   The Massachusetts code provisions referenced in the Agreement have no bearing on this dispute, and Toxikon does not purport to invoke them.   The Agreement does contain a New York choice-of-law provision.   (Exhibit 4).   If New York law applies, this Court is equally able to apply New York law as is the federal court in Massachusetts.

*Avoidance of unnecessary problems of conflict of laws*.   Toxikon again incorrectly assumes that the Agreement may be covered by Massachusetts law.   (Motion, at p. 24).   It is highly unlikely that New York, Texas, or even Massachusetts law would be in significant conflict over this breach of contact case.   This Court is equally able to resolve any potential conflicts of law problems, if any arise, as any federal court.

*Unfairness of burdening citizens in an unrelated forum with jury duty*.   Texas citizens will be ready, willing, and able to do their duty to protect the contract rights of a Texas resident.

The public and private interest factors are either neutral or weigh against transfer.   "In the interest of justice" Toxikon should not be able to avoid litigation in this State by "undoing" all of its Texas contacts shortly after being served here, and submitting sworn statements to this Court that are undoubtedly false.   Toxikon has not shown good cause for transfer, and has not clearly shown that Massachusetts is a more convenient forum.   Therefore, Spark's choice of venue should not be disturbed.

## VII.   CONCLUSION

Spark Energy Gas, LP respectfully requests that the Court deny Toxikon Corporation's Motion to Dismiss for Lack of Personal Jurisdiction & Alternatively Motions to Transfer Venue Under 28 U.S.C. §§ 1406(a) or 1404(a), and for such further relief to which Spark is entitled.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2011, a copy of the foregoing was served on the following counsel via the Court's ECF email Notice of Electronic Filing.

Mr. Fred Dietrich
fdietrich@dietrich-law.com
Counsel for Defendant Toxikon Corporation


_____/s/ *Joshua C. Thomas*_____