IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | Jury |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

FRED DIETRICH
State Bar No. 05857050
THE DIETRICH LAW FIRM
2211 Norfolk St., Suite 620
Houston, Texas 77098
Tel.:   713.830.7687
Fax:    713.721.3112
fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I. NATURE & STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT & AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.      No Specific Jurisdiction Because No Minimum Contacts . . . . . . . . . . . . . . . . . 5

         1. Plaintiff's Misstated "Facts" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           1. Conflating Contracts Does Not Create Relevant Contacts . . . . . . . . . 5

           2. The Alleged Contract Did Not Require <u>Plaintiff </u>to Perform in Texas    6

           3. The Nature of Plaintiff's Work Did Not Require Performance in Texas 7

           4. The Alleged Contract Did Not Require <u>Defendant </u>to Perform in Texas 8

           5. Plaintiff Did Not Exist Solely in Texas . . . . . . . . . . . . . . . . . . . . . . . 9

           6. Patriot Energy was <u>Plaintiff's </u>Undisclosed Agent  . . . . . . . . . . . . . 11

              a. Plaintiff Solicited Toxikon in Massachusetts  . . . . . . . . . . . 14
              b. Patriot Negotiated for Itself, Not for Toxikon  . . . . . . . . . . 14
              c. Patriot's "Knowledge" Cannot be Imputed to Toxikon . . . . . 15

           7. Toxikon was Not Actively Engaged in Plaintiff's Work in Texas . . . 17

           8. Only a Few Insignificant Communications were Initiated by Toxikon 18

         2. Plaintiff's Misstated Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

           1. Plaintiff Ignored the Most Important Authority . . . . . . . . . . . . . . . 19

           2. Applying *Moncrief,* Specific Jurisdiction Does Not Exist  . . . . . . . . 20

               a.. Texas is NOT clearly the "hub" of the parties' activities  . . . 20

b. The plaintiff did NOT exist only within Texas . . . . . . . . . . . 21

c. The defendant did NOT actively engage in the activities
that are taking place in Texas . . . . . . . . . . . . . . . . . . . . . . . 23

d. The plaintiff's location in Texas was NOT strategically
advantageous to the defendant . . . . . . . . . . . . . . . . . . . . . . . 23

e. The plaintiff's location in Texas did NOT serve as the basis for
the defendant's agreement . . . . . . . . . . . . . . . . . . . . . . . . . 23

f. The contract did NOT specify that plaintiff's work will be done
in Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

g. There IS a choice of law clause that chooses the law of a
different forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3. Plaintiff's Other Primary Case Supports Toxikon . . . . . . . . . . . . . 24

4. Registering with the Texas Secretary of State Is Not Relevant to
Specific Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5. Given the Choice of Law Clause, Texas Does Not have Jurisdiction   26

6. The Massachusetts Statute Applies & is Relevant to Jurisdiction . . . 27

7. Any Errors in Dr. Desai's April 2001 Declaration are Minor . . . . . . 28

B.    No General Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

1. Registering in Texas & Having a Registered Agent Are but Minor Contacts   30

2. One Employee for 6 Months with a Home Office is a Minor Contact . . . . . 31

3. Purchases Related to Texas do Not Satisfy General Jurisdiction . . . . . . . . 32

4. Toxikon's Sales with Texas are Insufficient for General Jurisdiction . . . . . . 33

C.    28 U.S.C. § 1404(a)'s Factors Clearly Weigh in Favor of Transfer to
Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

A. The Private Interest Factors Weigh in Favor of Transfer . . . . . . . . . . . . . . 37

1. Relative Ease of Access to Sources of Proof . . . . . . . . . . . . . . . . . . 37
2. Availability of Compulsory Process to Secure the Attendance of
   Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
3. Cost of Attendance for Willing Witnesses . . . . . . . . . . . . . . . . . . . 38
4. Other Practical Problems That Make Trial of a Case Easy,
   Expeditious and Inexpensive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

B. The Public Interest Factors in this Case Weigh in Favor of Transfer . . . . . . 39

1. Administrative Difficulties Flowing from Court Congestion . . . . . . 39
2. Local Interest in Having Localized Interests Decided at Home . . . . 39
3. Familiarity of the Forum with the Law That Will Govern the Case . 40
4. Avoidance of Unnecessary Problems of Conflict of Laws . . . . . . . . 40
5. Unfairness of Burdening Citizens in an Unrelated
   Forum with Jury Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

D.    Objections to Drew Henderson's Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . 41

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## <u>INDEX OF AUTHORITIES</u>

**Cases**:

*Access Telecomm., Inc. v. MCI Telcomms. Corp.*
 197 F.3d 694 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*American Bank, F.S.B. v. Auto-owners Mutual Fire & Cas. Ins. Co.*,
 4-10-cv-331-A, 2010 U.S. Dist. Lexis 102341 (N.D. Tex. Sept. 27, 2010) . . . . . . 33, 34

*Am Gen. Life Ins. Co. v. Rasche*,
 2011 U.S. Dist. LEXIS 29902, *19. (S.D. Tex. Mar. 22, 2011) . . . . . . . . . . . . . 33, 34

*Bearry v. Beech Aircraft Corp.*,
 818 F.2d 370 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462, 478 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 26

*Central Freight Lines Inc. v. APA Transport Corp.*,
 322 F.3d 376 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19

*Chilcutt v. United States*,
 4 F.3d 1313 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dalton v. R&W Marine, Inc.*,
 897 F.2d 1359 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Erie R.R. v. Tompkins*,
 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Freudensprung v. Offshore Tech. Servs.*,
 379 F.3d 327 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*GMAC Bank v. HTFC Corp.*,
 248 F.R.D. 182 (E.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Holt Oil & Gas Corp. v. Harvey*,
 801 F.2d 773 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hydrokinetics, Inc. v. Alaska Mech., Inc.*,

iv

700 F.2d 1026 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Johnston v. Multidata Sys. Int'l Corp.,*
523 F.3d 602 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 35

*Jones v. Petty-Ray Geophysical, Geosource, Inc.,*
954 F.2d 1061 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG,*
612 F.Supp.2d 813 (S.D. Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

*LeBlanc v. Patton-Tully Transportation, LLC,*
138 F.Supp.2d 817, 819 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Leonard v. USA Petroleum Corp.,*
829 F.Supp. 882 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*McFadin v. Gerber,*
587 F.3d 753 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010) . . . . . . . . . . . . . . . . . 21

*Mississippi Interstate Express, Inc. v. Transpo Inc.,*
681 F.2d 1003 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 19

*Moncrief Oil Int'l., Inc. v. OAO Gazprom,*
481 F.3d 309 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19, 20, 24, 26

*Ratliff v. Cooper Laboratories, Inc.,*
444 F.2d 745, 748 (4th Cir.), cert. denied, 404 U.S. 948 (1971) . . . . . . . . . . . . . 30, 32

*Revell v. Lidov,*
317 F.3d 467 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Siemer v. Learjet Acquisition Corp.,*
966 F.2d 179 (5th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 34, 35

*Stuart v. Spademan,*
772 F.2d 1185 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Submersible Sys..v. Perforadora Central, S.A. de C.V.,*
249 F.3d 413 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

v

*Vora v. Scottsdale Ins. Co.*,
      Civ. No. 2:10-cv-089-TJW, 2010 U.S. Dist. LEXIS 105997,
      2010 WL 3928072, at *2 (E.D. Tex. Oct. 5, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36


**Rules or Statutes:**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Fed. R. Civ.  P. 30(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ.  P. 39(d)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 45(c)(3)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Fed. R. Civ. P. 45(c)(3)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

20 CMR 14.06(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | Jury |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

Defendant Toxikon Corporation (Toxikon) files this Reply to Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue (Dkt. 17), and defendant respectfully shows the following:

## I.  NATURE & STAGE OF THE PROCEEDINGS

Defendant moved to dismiss plaintiff's breach of contract claim for lack of personal jurisdiction.  Plaintiff timely responded, the parties deposed one of plaintiff's witnesses on jurisdiction and venue issues, and agreed that defendant's Reply could be filed on or before June 17, 2011.  In conjunction with this Reply, defendant is filing an unopposed motion for leave to exceed the Court's 25 page limit for briefs.

## II.  SUMMARY OF THE ARGUMENT

Plaintiff's response concerning specific jurisdiction is persuasive until one recognizes that it misstates the law and facts.

1

Misstated law:  Plaintiff failed to inform the court that both of its primary supporting cases (*Mississippi Interstate Express, Inc. v. Transpo Inc.*, 681 F.2d 1003 (5th Cir. 1982) and *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003)) about specific jurisdiction have been distinguished and clarified by *Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 312-13 (5th Cir. 2007).  Applying *Moncrief*, this Court should dismiss plaintiff's claim for lack of jurisdiction.

The parties' New York Choice of law clause is probably the most important jurisdictional fact in this case, but plaintiff's Response never mentioned it.

Misstated facts: Plaintiff misstated the following facts:

1.      Although plaintiff sues for breach of just one alleged contract,[1] plaintiff repeatedly argues that a separate contract[2] – about which there is no dispute – somehow creates specific jurisdiction over the contract being sued upon.   Plaintiff improperly confuses and conflates the two "agreements."

2.      Plaintiff repeatedly says it was "required" to perform in Texas, but its own witness, Director Drew Henderson, admitted that the contract's language does not require plaintiff to do anything in Texas, and all of its work is done using typical office equipment.   Additionally, plaintiff has competitors in the Massachusetts market that are not headquartered in Texas.   Therefore, there is nothing unique about Texas that would require a gas marketer/supplier such as plaintiff to perform its obligations under this alleged contract in Texas.

3.      Plaintiff argues that Toxikon's sending payments (there was only one payment under the

---

[1] *See* Plaintiff's Exhibit 4 (Spark 1-2)(the contract term was allegedly to have started on June 1, 2010).

[2] *See* Plaintiff's Exhibit 3 (Spark 3-4)(plaintiff does not allege this agreement was breached and its term ended in May 2010).

disputed agreement) to Texas was Toxikon's purposeful act, but the terms of the agreement itself gave the plaintiff the unilateral right to choose where it wanted payments to be sent.

4.      Plaintiff's witness testified that it had only one office, its Houston office, at the time the alleged agreement was entered into; however, plaintiff's own in-court admissions from another federal lawsuit conclusively prove plaintiff had an office in Denver, a joint venture in Colorado, and a Director of Rocky Mountain Operations.

5.      Plaintiff argued that a non-party, Patriot Energy, was Toxikon's agent, but plaintiff's Response failed to disclose that Patriot was plaintiff's undisclosed agent at the time Patriot contacted Toxikon about changing natural gas suppliers.

6.      Patriot, as plaintiff's agent, solicited Toxikon in Massachusetts, not vice versa as plaintiff argues.

7.      Plaintiff's witness testified that Patriot "negotiated" the alleged agreement for Toxikon; however, the evidence shows that Patriot negotiated nothing for Toxikon.  Instead, the contract "negotiations" that took place between plaintiff and Patriot were only over how to split, between themselves, the profits.

8.      Plaintiff's witness testified in his May 2011 declaration that he knew what Patriot knew back in May of 2007.  Not only are such statements inadmissible hearsay, but also on cross-examination the witness could not or would not disclose the details of the basis for his knowledge of what Patriot had known four years before.  The witness did, however, say that this statement in his declaration is based at least in part on an allegedly "confidential" agreement with Patriot that plaintiff refused to produce and improperly refused to testify about.

9.      Plaintiff's witness's declaration stated, or at least suggesting, that Toxikon played some

active role in plaintiff's work in Texas.  His cross-examination shows Toxikon played no role in anything plaintiff did.

10.     Although implying that Toxikon was responsible for many communications with the plaintiff, on cross-examination plaintiff's witness was able to identify only two phone call that might have been initiated by Toxikon.  The two calls were made in 2009 about invoices, and the calls were not regarding the agreement plaintiff is suing about.

Plaintiff failed to cite a single case that supports its argument for general jurisdiction. Instead, it merely offered speculation about how defendant's supporting cases might have been decided differently had the facts in those cases been different.

If jurisdiction does exist, this case should be transferred under 28 U.S.C. § 1404(a) to the District Court of Massachusetts.  Plaintiff, through it agent, Patriot Energy, reached out to solicit Toxikon in Massachusetts.  Plaintiff is license to sell a regulated commodity through a form contract in Massachusetts to Massachusetts citizens under Massachusetts law, and plaintiff agreed to alternative dispute resolution, including arbitration in certain circumstances, in Massachusetts. Title and risk of loss for the gas transfers in Massachusetts, and plaintiff collects and remits Massachusetts sales tax.  This was a transaction local to Massachusetts.  Plaintiff has at least a thousand customers in Massachusetts.  This public interest factor, along with the other applicable private and public interest factors, weighs clearly in favor of transfer.

### III.  ARGUMENT & AUTHORITIES

**A.      No Specific Jurisdiction Because No Minimum Contacts**

**1.      Plaintiff's Misstated "Facts"**

**1.      Conflating Contracts Does Not Create Relevant Contacts**

Although plaintiff sues for breach of just one alleged contract,[3] plaintiff repeatedly argues

that a separate contract[4] – about which there is no dispute – somehow creates specific jurisdiction

over the contract being sued upon.  Plaintiff is wrong for at least two reasons.  First, nothing about

a <u>completed contract over which there is no dispute</u> can be relevant to whether specific jurisdiction

exists over a <u>different contract</u>.  The specific jurisdiction inquiry is "whether the plaintiff's cause

of action arises out of or results from the defendant's forum-related contacts."[5]  "A plaintiff bringing

multiple claims that arise out of different forum contacts of the defendant must establish specific

jurisdiction for each claim."[6]  No element of plaintiff's breach of contract cause of action arose out

of or resulted from anything Toxikon did under a different contract.  Second, the relevant terms of

the two contracts that the plaintiff tries to conflate are the same: (1) both agreements have terms

required by Massachusetts law and are governed by New York law, (2) neither agreement required

plaintiff to do anything in Texas, (3) neither agreement required defendant to do anything in Texas,

and (4) the location for receipt of payments was entirely within plaintiff's unilateral choice.  Had

a dispute arisen over the first agreement (and it did not), there were no constitutionally recognizable

---

[3]*See* Plaintiff's Exhibit 4 (Spark 1-2)(the contract term was allegedly to have started on June 1, 2010).

[4]*See* Plaintiff's Exhibit 3 (Spark 3-4)(plaintiff does not allege this agreement was breached and its term ended in May 2010).

[5]*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)(cert. denied *McFadin v. Gerber*, 2010 U.S. Lexis 6565 (Oct. 4, 2010).

[6]*McFadin*, 587 F.3d at 759.

contacts that would have subjected Toxikon to jurisdiction in Texas.  Plaintiff's attempt to conflate and combine the two separate agreements is an attempt to create additional contacts through confusion, but it fails for the simple reason that adding nothing to nothing still equals nothing.

### 2.    The Alleged Contract Did Not Require Plaintiff to Perform in Texas

Plaintiff repeatedly misstates the facts by saying that it was "required" to perform in Texas.[7] Plaintiff is wrong.  Interestingly, plaintiff never directs the court to any language in the alleged contract to support plaintiff's bald assertion that it was "required" to perform in Texas.  Plaintiff does not cite to any contract language to support its bald assertion because there is no language in the contract that required plaintiff to do anything in Texas.  Even plaintiff's Director Drew Henderson had to admit that there is nothing in the alleged contract that required plaintiff to perform in Texas.[8]  Plaintiff was free to perform its part of the alleged contract (which was just typical office work using phone, fax, computer and mail[9]) from anywhere in the world.

Additionally, the contract's language gave plaintiff the unconditional right to assign the contract.[10]  Plaintiff's right to assign the contract to anyone in the world underlines the fact that nothing in the contract required plaintiff to do anything in Texas.

Plaintiff's unilateral decision to locate its office in Texas plainly cannot create jurisdiction

---

[7]For example, plaintiff says, "Second, as a matter of law, Toxikon did business in Texas by contracting with Spark, via **two agreements that required full performance by Spark in Texas** . . . ."  Plaintiff's Response, p. 8.  (Emphasis added).

[8]Defendant's Exhibit 8, Henderson deposition, p. 82, ln. 19 to p. 83, ln. 3.

[9]*See* Declaration of Drew Henderson, Plaintiff's Exhibit 1, ¶ 11; see also Def.'s Ex. 8, p. 65, ll. 8-20.

[10]The alleged contract states, "This Agreement will inure and be binding on the successors and permitted assigns of the Parties, provided that Customer [Toxikon] may not assign this Agreement, nor any of its rights or obligations, without obtaining written from URS [plaintiff] . . . ."  Def.'s Exhibit 9 at ¶ 14 (a more legible copy of the alleged contract); see also Plaintiff's Ex. 4, ¶ 14.

over Toxikon.  It is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

### 3.     The Nature of Plaintiff's Work Did Not Require Performance in Texas

Plaintiff incorrectly argues that specific jurisdiction exists because the alleged agreement "required full performance by Spark in Texas"[11] and "Spark's obligations under the Agreements were fully performable in Texas."[12]  Plaintiff's argument relies on director Henderson's declaration testimony that "The only location at which Spark Energy can perform these functions is in Houston, Texas."[13]  Plaintiff is wrong.  First, as admitted by Henderson during his deposition, all of plaintiff's work is done by phone, fax or computer.[14]  Plaintiff's business consists entirely of typical office based tasks – communications by phone, fax and computer – that could be performed from almost anywhere.  Second, the alleged contract's terms do not require plaintiff to perform in Texas, and in his deposition, Henderson admitted there is nothing in the alleged contract that required plaintiff to perform in Texas.[15]  Third, as noted elsewhere in this Reply, plaintiff had an office in Denver, Colorado for many years, including during 2007, and plaintiff's Director of Rocky Mountain Operations performed many of the same tasks from that office that plaintiff performed in Texas.

---

[11]Plaintiff's Response, p. 8.

[12]Plaintiff's Response, p. 8.

[13]Plaintiff's Ex. 1, Henderson declaration, ¶ 12.

[14]Def.'s Ex. 8, Henderson deposition, p. 65, ll. 8-20.

[15]Def.'s Ex. 8, Henderson deposition, p. 82, ln. 19 to p. 83, ln. 3.

Fourth, Henderson admitted that plaintiff has competitors in the Massachusetts market,[16] and at least two of the competitors he identified (Santa Buckley Energy[17] and Metromedia Energy[18]) have no office in Texas.[19]   The bottom line is that plaintiff unilaterally chose to locate its work in Texas. Plaintiff's unilateral decision, however, cannot serve as a basis for specific jurisdiction over Toxikon.  Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person."[20]

### 4.   The Alleged Contract Did Not Require <u>Defendant</u> to Perform in Texas

Just as the alleged contract's language did not require plaintiff to do anything in Texas, no language in the contract required Toxikon to do anything in Texas.  Although plaintiff tries to make a big deal out of Toxikon's sending payments to Texas (all but one of which occurred under a contract other than the alleged agreement that is the basis of plaintiff's claim), Toxikon's sending payments to Texas (only one payment was sent to Texas related to the alleged contract the plaintiff sues on[21]) was merely the result of plaintiff's unilateral choice.   The alleged contract states, "Customer [Toxikon] will remit the amount due to URS [plaintiff] in the manner specified in URS' invoice instructions . . . ."[22]  Toxikon did not choose to send payments to Texas.  Under the alleged

---

[16]Def's Ex. 8, Henderson deposition, p. 95, ln. 20 to p. 101, ln. 25.

[17]Def.'s Ex. 8, p. 95, ll. 20-25.

[18]Def.'s Ex. 8, p. 100, ll. 10-14.

[19]See Def.'s Ex. 10 (copies from the Connecticut Secretary of State's web site) and Def.'s Ex. 11 (copy from Metromedia Energy's web site).

[20]*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

[21]Some gas was apparently delivered by plaintiff by mistake, and Toxikon paid for it.  See Def.'s Ex. 12, June 14, 2011 Dr. Desai declaration, ¶ 7.

[22]*See* the alleged contract: Plaintiff's Exhibit 4 (Spark 2) at ¶ 5; Def.'s Ex. 9, ¶ 5..

contract, plaintiff could have directed Toxikon to send payment to any location on the planet, and plaintiff could change that location at anytime. Plaintiff's unilateral decision to choose Texas as the place for where payments should be sent cannot serve as a basis for specific jurisdiction over Toxikon. Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person."[23] Therefore, Toxikon's sending payments to Texas is not a contact for purposes of specific jurisdiction.

Even when a contract does require a defendant to send payments into the forum state, the case law is clear that payments are not a contact that weighs strongly in favor of specific jurisdiction.[24] Here, because the plaintiff was free to select anywhere in the world for receipt of payments but unilaterally chose Texas, Toxikon's sending payments to Texas is not a contact sufficient for specific jurisdiction.

### 5. Plaintiff Did Not Exist Solely in Texas

In a grossly inaccurate way, plaintiff's Director of Retail Gas, Drew Henderson, testified in his declaration that, "Spark Energy's . . . sole offices are in Houston, Texas. All of Spark Energy's operations are in Houston, Texas,"[25] and "Spark Energy was located solely in Texas."[26] In his deposition, Henderson again testified that at the time the alleged agreement was entered into, May 2007, Spark's only office was in Houston, and that as far as he knew, Spark had never had any other

---

[23]*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

[24]*See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028-29 (5th Cir. 1983).

[25]Drew Henderson Declaration, Plaintiff's Exhibit 1, p.1, ¶ 2.

[26]Drew Henderson Declaration, Plaintiff's Exhibit 1, p.3, ¶ 13.

offices.[27]

However, at the time the alleged agreement in this case was entered into, May 2007, plaintiff had had an office in Denver Colorado since at least October 2005,[28] had been engaged in a joint venture in Colorado since 2001,[29] and had a "Director of Rocky Mountain Operations."[30] Plaintiff's Director of Rocky Mountain Operations exercised a "very high degree of authority"[31]: he drafted contracts, reviewed and approved contracts for plaintiff, sold natural gas, set prices, signed contracts on behalf of plaintiff, made credit decisions regarding customers, negotiated and executed contracts for the purchase of natural gas, scheduled delivery, invoiced for sales, maintained accounting records, assisted with collections, negotiated hedges for customers, supervised plaintiff's employees, and had access to plaintiff's email system and computer server.[32]

Additionally, plaintiff has contracts with over 40 "brokers," including Patriot Energy Management, Inc. (Patriot or Patriot Energy), who market on its behalf to customers in at least 13 states outside of Texas.[33] From 1991 through 2009, plaintiff had contracts with 46 different brokers,

[27]Def. Ex. 8, Henderson deposition, p. 37, ln. 17 to p. 38, ln. 7.

[28]Def.'s Exhibit 14, plaintiff's first amended counterclaims in the United States District Court, District of Colorado, case 1:09-cv-01881-RPM, Doc. 47, pp. 11-20. Plaintiff's Denver office address was 3773 Cherry Creek North, Suite 575, Denver, Colorado 80209; see pp. 12, 15, and 19.

[29]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.

[30]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.

[31]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, p. 2. See also Def.'s Exhibit 16, the affidavit of plaintiff's Chief Financial Officer, Larry Gibson, p. 2, ¶ 8.

[32]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6. See also Def.'s Exhibit 16, the affidavit of plaintiff's Chief Financial Officer, Larry Gibson, p. 2, ¶ 8.

[33]Def.'s Exhibit 8, June 9, 2011 deposition of Drew Henderson, pp. 21-24.

including Patriot Energy, in 16 different states.[34]   About 10 of those brokers, including Patriot

Energy, market on plaintiff's behalf in Massachusetts, and in Massachusetts alone, plaintiff supplies

gas to well over 1,000 customers.[35]

### 6.    Patriot Energy was **Plaintiff's** Undisclosed Agent

Plaintiff argued that Patriot was Toxikon's agent,[36] but plaintiff failed to disclose (and this

was just recently discovered by Toxikon) that Patriot was plaintiff's undisclosed agent even before

Patriot contacted Toxikon about changing natural gas suppliers.   Patriot never told Toxikon that it

was already plaintiff's agent.[37]   Plaintiff markets in Massachusetts through brokers, and Patriot is

one of plaintiff's brokers in Massachusetts.[38]  Plaintiff has written agreements with its brokers,[39] and

in February 2007, plaintiff and Patriot Energy signed a written agreement cementing their

relationship.[40]  From February 2007 through the present, plaintiff and Patriot have operated under

this written agreement.[41]

Plaintiff has refused to produce a copy of its broker/agent agreement with Patriot.  And, in

response to a deposition seeking testimony from its corporate representative about the agreement

---

[34]Def.'s Exhibit 17, plaintiff's sworn interrogatory answers filed in case 1:08-cv-01291-RPM-KMT, Doc. 86-15.

[35]Def.'s Exhibit 8, June 9, 2011 deposition of Drew Henderson, pp. 21-24.

[36]*See, e.g.*, Plaintiff's Response, pp. 12-15.

[37]Def.'s Exhibit 13, Declaration of Dexter Williams, ¶. 4; see also Def.'s Ex. 12, ¶¶ 8, 9, 10.

[38]Def.'s Ex. 8, Henderson deposition, p. 22, ll. 6-18.

[39]Def.'s Ex. 8, Henderson deposition, p. 22. ln. 6 to p. 23, ln. 16.

[40]Def.'s Ex. 8, Henderson deposition, p. 21, ll. 4-12.

[41]Def.'s Ex. 8, Henderson deposition, p. 21, ll. 4-12.

and the relationship between plaintiff and Patriot, plaintiff unlawfully refused[42] to answer any

questions concerning the details of its agreement with Patriot.[43]

However, through PACER, Toxikon was able to find a copy of plaintiff's standard agency

agreement that it used with its brokers in 2007.[44]  Defendant's Exhibit 18 is a true and correct copy

of that "Agent Agreement" attached to a 2007 email from Geoff Beal, plaintiff's employee, that was

filed in plaintiff's federal lawsuit in Colorado.  In that lawsuit, plaintiff admitted defendant's Exhibit

18 is plaintiff's "standard form agency agreement"[45] that plaintiff had created it by 2002[46] and that

it was used for non-employees to solicit customers for plaintiff.[47]  Therefore, despite plaintiff's

refusal to produce its agent agreement with Patriot and its unlawful refusal to testify about that agent

agreement, we have substantial evidence proving what that written agency agreement says.

Plaintiff's "Agent Agreement" provides in relevant part:

---

[42]Under the Rules, an attorney may instruct a deponent not to answer a question only for the following reasons: (1) to preserve a privilege, (2) to enforce a limitation ordered by the court or (3) to present a motion to terminate or limit the deposition because it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the deponent or party.  See Fed. R. Civ. P. 30(c)(2) and 39(d)(3)(A); *see also GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 191 (E.D. Pa. 2008), n. 10.  Henderson's refusal to answer questions was not based upon any of these reasons.

[43]Def.'s Ex. 8, Henderson deposition, p. 30, ln. 3 to ln. 16; p. 31, ln. 15 to ln. 25; p. 32, ln 22 to p. 33 ln 8; p. 34, ln. 2 to ln. 6; p. 36, ln 11 to ln 14; p. 61, ln. 15-24; p. 69, ln. 9 to ln. 15; p. 90, ln. 1 to ln. 11; p. 100, ln. 2 to ln. 9; p. 106, ln. 7 to ln. 13, p. 107, ln. 16 to ln. 20; p. 111, ln. 2 to p. 114, ln. 4; p. 115 ln. 11 to ln. 12; p. 116, ln. 25 to p. 117 ln. 16; p. 124, ln. 3 to ln. 13; p. 133, ln. 23 to p. 134, ln. 3.  Plaintiff contends that it has a non-disclosure agreement with Patriot to not disclose any information about their relationship, so it cannot produce the agreement or testify about the agreement unless Toxikon also agrees to keep the agreement secret.  Despite there being parts of the agreement that could not be truly confidential, (e.g., the non-disclosure clause and the clause defining Patriot's duties) plaintiff refused to produce a redacted copy of the agreement and plaintiff refused to answer any deposition questions about the agreement.

[44]Def.'s Exhibit 18, Geoff Beal email with Agency Agreement attached.

[45]Def.'s Exhibit 15, plaintiff's response to Amkor's motion for summary judgment, p. 7, ¶¶ 23-24. (Case 1:08-cv-01291-RPM-KMT, doc. 96, p.7.

[46]Def.'s Ex. 19, Gibson deposition, p. 136, ll. 10-22.

[47]Def.'s Ex. 19, Gibson deposition, p. 159, ln. 1 to p. 160, ln. 11.

1.    "[plaintiff] hereby appoints Agent as a non-exclusive agent to represent [plaintiff] for purposes of selling . . . natural gas . . . and Agent accepts the appointment."[48]

2.    **"The Agent is required to locate, solicit and screen prospective customers."**[49]

3.    "Agent shall present <u>[plaintiff's] standard contract</u> . . . with qualified customers"[50]

4.    "Agent and [plaintiff] shall enter into <u>negotiations to determine Agent's fee</u> applicable should Customer and [plaintiff] enter into a formal contract. . . . **Agent will receive a price from [plaintiff] to quote Customer and the commission paid to the Agent will be based upon <u>the amount the Agent is able to obtain from Customer in a Contract over [plaintiff's] quoted price</u>**. The <u>Agent's</u> percentage or fixed <u>commission will be negotiated</u> and confirmed in writing for each customer."[51]

5.    "<u>**Non-disclosure of Confidential Information:**</u> During the term of this agreement, Agent may acquire information from or on behalf of [plaintiff] and all such information . . . is to be treated as confidential information.  Agent will not, during the term of this Agreement or thereafter, without the prior written authorization of [plaintiff] reveal or disclose . . . [plaintiff's] confidential information . . . to any third party . . . ."[52]

Under this confidential agency relationship between plaintiff and Patriot, it becomes apparent that: (1) plaintiff, through its agent (Patriot), solicited Toxikon in Massachusetts, (2) the contract "negotiations" that took place between plaintiff and Patriot were only over how to split, between themselves, the mark-up over plaintiff's quoted price, and (3) Patriot's "knowledge" cannot be imputed to Toxikon because Patriot was already sworn to secrecy by plaintiff.

### a.    Plaintiff Solicited Toxikon in Massachusetts

Plaintiff wrongly argues that "Through its agent Patriot, Toxikon did reach out to Spark in

---

[48]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.1.

[49]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.3.  (Emphasis added.)

[50]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.3.  (Emphasis added.)

[51]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.1-2.  (Emphasis added.)

[52]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.3.  (Emphasis in original.)

13

Texas to negotiate and sign the Agreements."[53]   Plaintiff is wrong.   First, under the "Agency Agreement," Patriot was already plaintiff's agent charged with the duty to solicit customers for plaintiff.   Patriot was plaintiff's agent before it first contacted Toxikon about changing gas suppliers.[54]  Second, Patriot made the first contact with Toxikon; Toxikon did not contact Patriot.[55] In its initial contact with Toxikon, Patriot tried to interest Toxikon in changing gas suppliers.[56] Therefore, it is clear that plaintiff, through its agent (Patriot) reached out to Massachusetts to solicit Toxikon in Massachusetts, not vice versa.

### b.        Patriot Negotiated for Itself, Not for Toxikon

Plaintiff wrongly argues that "Through its agent Patriot, Toxikon did reach out to Spark in Texas to negotiate and sign the Agreements."[57]   Plaintiff's supporting declaration by its Director, Drew Henderson, also states that "The two Agreements with Toxikon were negotiated through Toxikon's agent, Patriot Energy."[58]  Plaintiff is wrong.  First, during his deposition, Henderson could not identify anything that was actually negotiated between plaintiff and Patriot.[59]   Second, the "Agency Agreement" required Patriot to "present [plaintiff's] standard contract "[60] to Toxikon, the alleged agreement at dispute in this lawsuit is the standard form agreement plaintiff uses in

---

[53]Plaintiff's Response, p. 15.

[54]Def.'s Ex. 13, Dexter Williams declaration, ¶ 3 (Patriot contacted Toxikon, not vice versa).

[55]Def.'s Ex. 13, Dexter Williams declaration, ¶ 3.

[56]Def.'s Ex. 13, Dexter Williams declaration, ¶¶ 2, 3 & 5.

[57]Plaintiff's Response, p. 15.

[58]Plaintiff's Ex. 1, Henderson declaration, ¶ 4.

[59]Def.'s Ex. 8, Henderson deposition, p.40, ln. 25 to p.49, ln. 16.

[60]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.3.  (Emphasis added.)

Massachusetts,[61] and it is obvious from the alleged agreement itself[62] that no changes were made to plaintiff's standard agreement – i.e., nothing was negotiated. Third, the "Agency Agreement" does not allow Patriot to negotiate price with plaintiff ("Agent will receive a price from [plaintiff] to quote Customer and the commission paid to the Agent will be based upon <u>the amount the Agent is able to obtain from Customer in a Contract over [plaintiff's] quoted price.</u>").[63] Finally, and pursuant to the "Agency Agreement" the only negotiations that would have occurred between plaintiff and Patriot would have dealt with the amount of Patriot's commission ("Agent and [plaintiff] shall enter into <u>negotiations to determine Agent's fee</u> applicable should Customer and [plaintiff] enter into a formal contract. . . . The <u>Agent's</u> percentage or fixed <u>commission will be negotiated</u> and confirmed in writing for each customer.").[64] Therefore, neither contract terms nor price were negotiated for Toxikon, the only thing plaintiff and Patriot negotiated was how they would split, between themselves, the mark-up over plaintiff's quoted price.

### c.  Patriot's "Knowledge" Cannot be Imputed to Toxikon

Plaintiff says, "Patriot is a broker who is familiar with [plaintiff's] business, and who knew [plaintiff] operates exclusively in Houston, Texas."[65]  In his declaration, Director Henderson testified:

"Spark Energy has done business through Patriot Energy for customers other than Toxikon. Patriot Energy, Toxikon's agent, <u>knew</u> that all of <u>Spark Energy's activities to fulfill the Agreements would be performed in Houston, Texas</u>. Through its agent,

---

[61]Def.'s Ex. 8, Henderson deposition, p. 57, ln. 23 to p. 58, ln. 10.

[62]Def.'s Exhibit 9, the most legible copy of the alleged agreement that has been produced.

[63]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.1-2.  (Emphasis added.)

[64]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.1-2.  (Emphasis added.)

[65]Plaintiff's Response, p. 4.

Toxikon <u>knew</u> that by entering into the Agreements, it was affiliating itself with Spark Energy, and that <u>Spark Energy was located solely in Texas.</u>"[66]

Using Henderson's declaration, plaintiff argues that Patriot's alleged knowledge should be attributed or imputed to Toxikon. Plaintiff is wrong. First, when Henderson was asked during his deposition to explain how he knows what Patriot knew back when the alleged agreement was signed, Henderson engaged in evasion that spanned 9 pages of the transcript (p. 67, ln. 24 through p. 76, ln. 24). Ultimately, Henderson testified that the basis for his declaration testimony is the February 2007 agreement between plaintiff and Patriot that plaintiff refused to produce and about which Henderson unlawfully refused to testify.[67] Clearly plaintiff cannot refuse to produce a document and unlawfully refuse to testify about a document, but then use that document to support sworn testimony in its declaration.[68] Second, prior to signing the alleged agreement "for" Toxikon, Patriot never told Toxikon anything about plaintiff,[69] Toxikon knew nothing about plaintiff,[70] and Toxikon did not realize its gas supplier had been changed by Patriot until long after Patriot had signed the agreement with its principal, plaintiff Spark Energy Gas.[71] Moreover, because the Agency Agreement's non-disclosure clause prohibited Patriot from disclosing to Toxikon any information that Patriot learned

---

[66]Plaintiff's Ex. 1, Henderson declaration, ¶ 13. (Emphasis added.) Henderson's "knowledge" of what Patriot "knew" must be based upon hearsay; and Toxikon objects to Henderson's testimony as being hearsay.

[67]Def.'s Ex. 8, Henderson deposition, p. 67, ln. 24 to p. 76, ln. 24.

[68]Because plaintiff presented no valid objection to the deposition questions and intentionally withheld properly requested information, this court has the authority to presume that plaintiff's refusal to produce that information is "an admission of the want of merit in the asserted defense." *See Chilcutt v. United States,* 4 F.3d 1313, 1324 (5th Cir. 1993) (citing *Hammond Packing Co. v. Arkansas*, 2123 U.S. 322, 352).

[69]Def.'s Ex. 13, Dexter Williams declaration, ¶¶ 4-8; Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶¶ 8 & 10.

[70]Id.

[71]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 10.

from plaintiff, Patriot's knowledge cannot be imputed to Toxikon.[72]   Finally, as pointed out previously in this Reply, plaintiff was not located solely in Texas and did not operate solely in Texas.

### 7.   Toxikon was Not Actively Engaged in Plaintiff's Work in Texas

Plaintiff argues that the parties were "engaged in a continuing business relationship"[73] and that there was an "ongoing business relationship."[74]   Director Henderson also stated in his declaration that the parties had "mutual continuing obligations . . . ."[75]  Plaintiff misleadingly implies that Toxikon was actively engaged in plaintiff's work in Texas.  That is not true.  Toxikon had no involvement in any of plaintiff's work, let alone active involvement.[76]  Toxikon's only obligation would have been to accept gas in Massachusetts and send payment to whatever location plaintiff specified.   During his deposition, director Henderson admitted that Toxikon's only "active involvement" in any of plaintiff's work was: (1) Toxikon's entering into the agreement to begin with, (2) Toxikon's obligation to receive gas in Massachusetts, and (3) Toxikon's obligation to send payment for gas used.[77]  This of course is not "active involvement" in plaintiff's work in Texas, and it is a far cry from the "active involvement" by the defendant in *Transpo*[78] who initiated all freight shipments and "the tasks of directing the details of such shipments were ones in which [the]

---

[72]Def.'s Exhibit 18, plaintiff's "Agent Agreement" p.3, the "Non-disclosure" paragraph.

[73]Plaintiff's Response, p. 4.

[74]Plaintiff's Response, p. 7.

[75]Plaintiff's Ex. 1, Henderson declaration, p. 2, ¶ 10.

[76]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 2.

[77]Def.'s Ex. 8, Henderson deposition, p. 77, ln. 16 to p. 82, ln. 12.

[78]*Mississippi Interstate Express, Inc. v. Transpo Inc.*, 681 F.2d 1003, 1005, 1009, 1011 (5th Cir. 1982).

defendants exercised a significant measure of control . . . ."[79]

### 8.  Only a Few Insignificant Communications were Initiated by Toxikon

Plaintiff incorrectly argues specific jurisdiction exists because "Toxikon communicated directly with Spark in Texas regarding performance of the Agreement."[80]  Director Henderson testified in his declaration that "Toxikon . . . Communicated directly with Spark Energy employees in Houston, Texas."[81]  Director Henderson, however, conveniently did not identify which party initiated the communications.  In fact, only a few phone calls or emails about copies of invoices or in response to plaintiff's calls regarding invoices were initiated by Toxikon.[82]  Director Henderson, himself, confirmed this during 6 pages of evasive testimony at his deposition.[83]  The best Henderson could do was identify two phone calls initiated by "Donna" at Toxikon asking for an invoice to be faxed to Toxikon.[84]  Donna's phone calls were apparently made in 2009.[85]  Because the alleged contract that plaintiff is suing on was not supposed to start until June 2010, Donna's two phone calls have no relevance to the specific jurisdiction issue.

---

[79]*Transpo Inc.*, 681 F.2d at 1009.

[80]Plaintiff's Response, p. 2-3.

[81]Plaintiff's Ex. 1, Henderson declaration, ¶ 15.d.

[82]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 11.

[83]Def.'s Ex. 8, Henderson deposition, p. 66, ll. 6-12; p. 84, ln. 2 to p. 90, ln. 11.

[84]Def.'s Ex. 8, Henderson deposition, p. 66, ll. 6-12; p. 84, ln. 2 to p. 90, ln. 11.

[85]Plaintiff's Ex. 9, at  (Spark 32).

### 2.      Plaintiff's Misstated Law

### 1.      Plaintiff Ignored the Most Important Authority

Relying on *Transpo*[86] and *Central Freight*,[87] plaintiff argues that minimum contacts exist in a breach of contract case when a nonresident enters into a long-term contract with a known resident of the forum state if it is reasonably foreseeable that the resident will perform a material part of its obligations in the forum state and thereby cause business activity in the forum state.[88] Plaintiff's argument, however, is wrong on both the law and the facts.

Plaintiff failed to inform the court that both *Transpo* and *Central Freight* have been distinguished and clarified by *Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 312-13 (5th Cir. 2007).  In *Moncrief*, a Texas resident entered into three contracts spanning seven years with a Russian defendant.  The Texas resident was to invest 120 million dollars in the enterprise, secure financing and provide technical expertise.  Like the alleged contract in this lawsuit, the Moncrief contract was silent as to the location of where the plaintiff was to perform its work, and given the nature of the work the plaintiff was to perform there was no indication that the location of its performance mattered.  The contract's choice of law clause chose Russian law (in Toxikon's case it chose Massachusetts and New York law).  Relying on *Transpo* and *Central Freight*, the Texas plaintiff argued that the defendant established minimum contacts by (1) entering into contracts with a Texas resident, (2) knowing from the outset that plaintiff was a Texas resident, (3) acknowledging and approving of the plaintiff's substantial performance in Texas, and (4) sending an executive to

---

[86]*Mississippi Interstate Express, Inc. v. Transpo Inc.*, 681 F.2d 1003 (5th Cir. 1982).

[87]*Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003).

[88]See Plaintiff's Response, pp. 8-11.

visit Texas in furtherance of plaintiff's performance.  Giving significant weight to the parties' choice

of law clause and the fact that the plaintiff's Texas location was (under the terms of the contract)

irrelevant, the Fifth Circuit found jurisdiction lacking and noted that "this case thus falls into the

category of cases discussed in *Holt Oil*, where mere fortuity that one company happens to be a Texas

resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction."

*Moncrief*, 481 F.3d at 313.

In *Moncrief*, the Fifth Circuit, discussing *Transpo* and *Central Freight*, stated that

foreseeability by itself cannot create jurisdiction.  However, foreseeability of the agreement's

causing consequences in Texas may satisfy minimum contacts if: (a) Texas is clearly the "hub" of

the parties' activities, (b) the plaintiff only exists within Texas, (c) the defendant actively engages

in the activities that are taking place in Texas, (d) the plaintiff's location in Texas is strategically

advantageous to the defendant, (e) the plaintiff's location in Texas served as the basis for the

defendant's agreement, (f) the contract specifies plaintiff's work will be done in Texas, and (g) there

is no choice of law clause that chooses the law of a different forum.  *See Moncrief*, 481 F.3d at 312-

13.

### 2.        Applying *Moncrief,* Specific Jurisdiction Does Not Exist

#### a.        Texas is NOT clearly the "hub" of the parties' activities

The actual purchase of the gas was to have occurred in Massachusetts.  "Title to, control,

possession of and risk of loss in the Gas will pass from URS [plaintiff] to Customer [Toxikon] at the

Utility city gate."[89]  And, plaintiff charged Toxikon Massachusetts sales tax on all of its invoices.[90]

---

[89]Plaintiff's Exhibit 4, ¶ 3 of the alleged contract's Terms of Service; Def.'s Ex. 9, ¶ 3.

[90]Plaintiff's Exhibit 7, invoices to Toxikon, e.g., Spark 42, Spark 43, Spark 44.

The place where title to property and risk of loss pass is a consideration under specific jurisdiction.[91]

Under the alleged contract, plaintiff had the obligation to deliver natural gas in Massachusetts,

transfer possession and title in Massachusetts, and collect and remit to Massachusetts its local sales

tax.   The hub of the parties activities, including plaintiff's place of performance, was in

Massachusetts.  Although plaintiff performed typical office work in Texas, the natural gas, which

is the real subject of the alleged contract, would have been delivered in Massachusetts.  There is no

evidence that the natural gas to be delivered in Massachusetts came from Texas – and the evidence

is that it would not have mattered.[92]  In short, defendant is: (1) a Massachusetts corporation that( 2)

would have received the subject of the alleged contract (i.e. the natural gas) in Massachusetts, and

that (3) did nothing to perform the disputed contract in Texas.  Massachusetts was the "hub of

activities," and Toxikon's limited contact with Texas came only from the fortuity of Spark's

residence there.[93]  Texas is not clearly the hub of the parties activities.

> **b.      The plaintiff did NOT exist only within Texas**

In May 2007, when the alleged agreement was allegedly formed, plaintiff had had an office

in Denver Colorado since at least October 2005,[94] had been engaged in a joint venture in Colorado

---

[91]*Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG*, 612 F.Supp.2d 813, 827 (S.D. Tex. 2009).

[92]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 6; see also defendant's Exhibit 4, ¶ 4.

[93]*See McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009).

[94]Def.'s Exhibit 14, plaintiff's first amended counterclaims in the United States District Court, District of Colorado, case 1:09-cv-01881-RPM, Doc. 47, pp. 11-20.  Plaintiff's Denver office address was 3773 Cherry Creek North, Suite 575, Denver, Colorado 80209.

since 2001,[95] and had a "Director of Rocky Mountain Operations."[96]  Plaintiff's Director of Rocky Mountain Operations exercised a "very high degree of authority"[97]: he drafted contracts, reviewed and approved contracts for plaintiff, sold natural gas, set prices, signed contracts on behalf of plaintiff, made credit decisions regarding customers, negotiated and executed contracts for the purchase of natural gas, scheduled delivery, invoiced for sales, maintained accounting records, assisted with collections, negotiated hedges for customers, supervised plaintiff's employees, and had access to plaintiff's email system and computer server.[98]

Additionally, plaintiff has contracts with over 40 "brokers," including Patriot Energy Management, Inc. (Patriot or Patriot Energy), who market on its behalf to customers in at least 13 states outside of Texas.[99]  From 1991 through 2009, plaintiff had contracts with 46 different brokers, including Patriot Energy, in 16 different states.[100]   About 10 of those brokers, including Patriot Energy, market on plaintiff's behalf in Massachusetts, and in Massachusetts alone, plaintiff supplies gas to well over 1,000 customers.[101]

---

[95]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.

[96]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.

[97]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, p. 2.  See also Def.'s Exhibit 16, the affidavit of plaintiff's Chief Financial Officer, Larry Gibson, p. 2, ¶ 8.

[98]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.  See also Def.'s Exhibit 16, the affidavit of plaintiff's Chief Financial Officer, Larry Gibson, p. 2, ¶ 8.

[99]Def.'s Exhibit 8, June 9, 2011 deposition of Drew Henderson, pp. 21-24.

[100]Def.'s Exhibit 17, plaintiff's sworn interrogatory answers filed in case 1:08-cv-01291-RPM-KMT, Doc. 86-15.

[101]Def.'s Exhibit 8, June 9, 2011 deposition of Drew Henderson, pp. 21-24.

**c.**     **The defendant did NOT actively engage in the activities that are taking place in Texas**

Toxikon did nothing in Texas.  For the alleged contract at issue, it sent one payment to Texas.  This one payment sent to plaintiff in Texas is of little significance and does not support finding specific jurisdiction over Toxikon.[102]  Moreover, by no stretch of the imagination could sending one payment to Texas be regarded as "active engagement" in plaintiff's work in Texas.  See also the arguments made at pp. 17-18 of this Reply under the heading: "7. Toxikon was Not Actively Engaged in Plaintiff's Work in Texas."

**d.**     **The plaintiff's location in Texas was NOT strategically advantageous to the defendant**

The alleged agreement was for delivery of natural gas in Massachusetts.  Nothing about plaintiff's being located in Texas was advantageous for Toxikon, let alone strategically advantageous.[103]

**e.**     **The plaintiff's location in Texas did NOT serve as the basis for the defendant's agreement**

It is undisputed that plaintiff's being located in Texas did not serve as the basis for Toxikon's allegedly entering to the alleged agreement.[104]

**f.**     **The contract did NOT specify that plaintiff's work will be done in Texas**

It is self evident from the alleged contract's own language that plaintiff was not required to

---

[102]*Hydrokinetics, Inc. v. Alaska Mechanical, Inc*., 700 F.2d 1026, 1029 (5th Cir. 1983).

[103]See Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 6; see also defendant's Exhibit 4, ¶ 4.

[104]See Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶ 6; see also defendant's Exhibit 4, ¶ 4.

23

do anything in Texas.[105] And,  in his deposition, plaintiff's Director Drew Henderson admitted there

is nothing in the alleged contract that required plaintiff to perform in Texas.[106]

> g.      There IS a choice of law clause that chooses the law of a different
>         forum

It is undisputed that the alleged contract has a choice of law clause that chooses New York

law.[107]

Under *Moncrief*, there is not one factor that supports this court finding specific personal

jurisdiction over Toxikon. Moreover, the most important of the seven factors is the choice of law

clause. *See Moncrief*, 481 F.3d at 313. Here, the alleged contract rejects Texas law and explicitly

chooses New York law to govern the contract.  Based on these facts, it is clear that a Texas court

does not have specific jurisdiction over Toxikon.

**3.      Plaintiff's Other Primary Case Supports Toxikon**

In support of its "*Transpo-Central Freight* argument," plaintiff cited *Lansing Trade Group,*

*LLC v. 3B Biofuels GmbH & Co., KG*, 612 F.Supp.2d 813 (S.D. Tex. 2009).  Other than *Transpo*

and *Central Freight*, *Lansing* is plaintiff's primary case.  *Lansing*, however, supports Toxikon, not

plaintiff. *Lansing* discusses how *Moncrief* distinguished *Transpo* and *Central Freight,* and applying

many of the factors important to the *Moncrief* opinion, holds that despite a long-term contract

between the parties that had foreseeable consequences in Texas, specific jurisdiction did not exist.

The *Lansing* court said:

---

[105]*See* Plaintiff's Exhibit 4 (Spark 000001-000002); see also a more legible copy of the same document at
defendant's Ex. 9.

[106]Def.'s Ex. 8, Henderson deposition, p. 82, ln. 19 to p. 83, ln. 3.

[107]Def.'s Ex. 8, Henderson deposition, p. 82, ln. 19 to p. 83, ln. 3.

The present case did involve contractual performance over several months as opposed to a single or fortuitous act, as well as reasonably foreseeable contractual performance by [plaintiff] in Texas for the September delivery.  But, as in *Moncrief*, there is no basis to conclude that the nonresident defendant engaged in a purposeful or affirmative act that would  subject it to jurisdiction in Texas. [* * * *]

[Defendant] was not actively engaged in the plaintiff's contractual activities that took place in Texas. [Defendant] did not initiate or direct the details of the shipments. The bill of lading and other commercial documents were prepared by [plaintiff] or third parties in Texas. There is no indication that [defendant] contracted with [plaintiff] because of its Texas location, or that it accepted the Port of Houston designation for strategic business reasons.  Based on the record evidence, [defendant] did not engage in a purposeful act that caused business activity in Texas. [Defendant's] Texas contacts were limited to accepting [plaintiff's] designations of the Port of Houston for the shipments under the contract. That is insufficient for the exercise of personal jurisdiction over [defendant] by this Texas court.

*Lansing*, 612 F.Supp.2d at 826-27.

### 4.   Registering with the Texas Secretary of State Is Not Relevant to Specific Jurisdiction

Plaintiff argues specific jurisdiction exists because "Toxikon purposely availed itself of the benefits and protections of Texas law . . . [when] it registered to do business in Texas and designated a registered agent in Texas."[108]  Plaintiff is wrong for at least three reasons.  First, plaintiff provides absolutely no legal authority to support its opinion that Toxikon's registering to do business in Texas and/or having a registered agent in Texas qualifies as "purposeful availment" sufficient to subject Toxikon to specific jurisdiction in Texas.[109]  Whether a defendant registers to do business in Texas and has a registered agent in Texas is completely irrelevant to the test for specific jurisdiction.[110]

---

[108]Plaintiff's Response, p. 7, section B.1.

[109]As will be discussed later in this reply, registering to do business in Texas and/or designating a registered agent for service of process in Texas are also legally insufficient to confer general jurisdiction.

[110]When a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether "the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's contacts with the forum state."  The fact that a Texas plaintiff suffered some harm in Texas is

Second, although plaintiff's breach of contract claim is about one contract allegedly formed on May 9, 2007, plaintiff's own evidence shows Toxikon did not register with the Texas Secretary of State and designate a registered agent until two years later;[111] therefore, there can be no relationship between these alleged contacts and plaintiff's claim.  Third, the alleged contract includes terms required by Massachusetts's comprehensive regulatory code and states that "This Agreement is governed by New York law."[112]  "Choice of law clauses 'indicate rather forcefully' that defendant 'did not purposefully direct its activities towards Texas.'"[113]

>    **5.    Given the Choice of Law Clause, Texas Does Not have Jurisdiction**

"This Agreement is governed by New York law."[114]  This is the choice of law clause from the alleged contract.  The parties unambiguously chose New York law to govern this dispute.

Both the Fifth Circuit and the U.S. Supreme Court[115] have asserted that when a choice of law provision is inserted into a contract, that provision is significant in determining whether or not a state can exercise jurisdiction over a nonresident company.  The sufficient minimum contacts needed

---

insufficient to establish specific jurisdiction in this forum.  Rather, the focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation."  *Revell v. Lidov*, 317 F.3d 467, 473 & n.41 (5th Cir. 2002); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

[111]Toxikon registered with the Texas Secretary of State and appointed a registered agent on May 11, 2009. *See* plaintiff's exhibit 10 at "Spark 22."

[112]Defendant's Exhibit 3: Plaintiff's Original Petition, including its Exhibit A, p.2, ¶¶ 1, 7,14 and 15; see also plaintiff's Exhibit 4 at "Spark 2," ¶¶ 1, 7,14 and 15; Def.'s Ex. 9, ¶¶ 1, 7,14 and 15.

[113]*Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)(quoting *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992).

[114]Plaintiff's Exhibit 4 (Spark 2), ¶ 14; see also defendant's Exhibit 9, ¶ 14 for a more legible copy of the alleged contract's "Terms of Service."

[115]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)("Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a state's law for jurisdictional purposes.").

to establish specific jurisdiction over a nonresident defendant are **not** present even though the nonresident: (1) contracts with a Texas-based company, (2) initiates and contemplates a long-term business with the Texas-based company, (3) communicates with the Texas-based company concerning the development and execution of the contract, and (4) wires money to the company in Texas.[116]  These kinds of contacts are "severely diminished" when the disputed contract explicitly states that it is to be governed by a law other than the law of the proposed forum state.[117]

Therefore, because the parties chose New York law to govern the alleged contract, defendant did not purposefully avail itself of the benefits and protections of Texas law, and this Court should not exercise personal jurisdiction over Toxikon.

### 6.     The Massachusetts Statute Applies & is Relevant to Jurisdiction

Without citing any authority, plaintiff says that 220 CMR 14.00 does not apply to its breach of contract claim arguing that  this Massachusetts's statute "applies only to complaints brought by a Customer against a Supplier, not to lawsuits by a Supplier against a Customer."[118]  Plaintiff is wrong.  Both the statute and the terms of alleged agreement apply the CMR's dispute resolution procedures to disputes **between** customers and suppliers.  First, the statute itself states that its "purpose . . . is to establish the complaint and dispute resolution procedures . . . applicable to Customer complaints or **damage claims between** Retail Customers and . . . Suppliers . . . ."[119] Second, the alleged contract states, "If there is a dispute **between** Customer [Toxikon] and URS

---

[116]*See Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 344-345 (5th Cir. 2004).

[117]*See Freudensprung*, 379 F.3d at 344-345.

[118]Plaintiff's Response, p. 15.

[119]Defendant's Exhibit 1, 220 CMR 14.06(1)(a) Purpose and Scope.  (Emphasis added.)

[plaintiff], URS [plaintiff] will make available dispute resolution procedures as required by 220 CMR § 14.06(4)(b)."[120]

Plaintiff also wrongly argues that "Theses [Massachusetts] Code sections . . . have no bearing on the jurisdictional analysis."[121]   Plaintiff fails to understand that through these statutes Massachusetts is expressing its interests in regulating a particular industry, regulating particular transactions, and protecting its citizens.   With such a regulatory framework in place, no Massachusetts citizen could reasonably anticipate being hailed into a Texas courtroom concerning a dispute about natural gas delivered to his or her home or business in Massachusetts.   Moreover, just as the parties chose New York law, they chose these particular provisions of Massachusetts law; therefore, all of the reasons the New York choice of law clause is important to the jurisdictional analysis are equally applicable to what is basically a Massachusetts choice of law or choice of forum clause.

### 7.    Any Errors in Dr. Desai's April 2001 Declaration are Minor

In much the same way the plaintiff has misstated the law and the facts, plaintiff says Dr. Desai's April 2011 declaration "is completely contradicted by documentary evidence."   Again, plaintiff is wrong.

Plaintiff first argues that Dr. Desai falsely stated "that Patriot . . . was not authorized by Toxikon to sign the alleged contract."   Plaintiff is wrong.   Patriot never disclosed to Toxikon that it was already serving as plaintiff's agent.   Patriot did not disclose to Toxikon that it had already agreed with plaintiff not to negotiate either contract price or terms.   Had Patriot disclosed that it was

---

[120]Plaintiff's Exhibit 4 (Spark 2), ¶ 15 (emphasis added); see also defendant's Exhibit 9, ¶ 15 for a more legible copy of the alleged contract's "Terms of Service."

[121]Plaintiff's Response, p. 15.

already serving plaintiff, Dexter Williams would never have signed any documents with Patriot concerning natural gas.[122]   And, to this day, plaintiff refuses to disclose to Toxikon all of its agreements with Patriot.   Therefore, Patriot was not authorized by Toxikon to sign the alleged agreement.

Dr. Desai's misstatement about the mistaken receipt of a small quantity of gas and one payment to plaintiff is fairly innocuous to say the least.   Dr. Desai's "record keeping" error is nothing compared to director Drew Henderson's failure to disclose plaintiff's Denver office and Rocky Mountain Regional Director that had existed for six years and about which there was a federal lawsuit.

Plaintiff argues that Dr. Desai falsely said "the alleged contract does not require plaintiff to do any work in Texas."   The truth of Dr. Desai's statement is proved by the terms of the alleged contract itself[123] and by director Drew Henderson's admission agreeing with Dr. Desai's statement.[124]

Finally, plaintiff tries to make a big deal out of Dr. Desai's forgetting that for six months during 2009 Stephen Mohan may have used a company computer and printer while Mohan officed from his home.   This kind of a mistake is minor and understandable.   It pales in comparison to plaintiff's never once mentioning in its Response to Toxikon's motion to dismiss that from February 2007 to this day, Patriot has been plaintiff's agent to solicit customers in Massachusetts.[125]

---

[122]Def.'s Exhibit 13, Dexter Williams's declaration, ¶¶ 4, 5, 6 & 7.

[123]Def.'s Ex. 9.

[124]Def.'s Ex. 8, Henderson deposition, p. 82, ln. 19 to p. 83, ln. 3.

[125]Def.'s Ex. 8, Henderson deposition, p. 21, ln. 4 to p. 22, ln. 18.

## B.      No General Jurisdiction

### 1.      Registering in Texas & Having a Registered Agent Are but Minor Contacts

For less than six months (from April 22, 2009 to October 9, 2009), Toxikon had one employee (Stephen Mohan) in Texas.[126]  Mr. Mohan was also listed as Toxikon's registered agent in Texas.  During his brief employment, Mr. Mohan officed out of his house.  When Mohan's employment terminated in October 2009, Toxikon did not intend for him to be its registered agent, but Toxikon mistakenly failed to file documents with the Texas Secretary of State showing that it no longer had a registered agent in Texas.[127]  Toxikon has never had any other employees or agents in Texas.[128]

Without citing any authority, plaintiff argues that Toxikon is subject to general jurisdiction because it registered to do business in Texas and had, for 6 months, a registered agent in Texas.[129]  Plaintiff is wrong because: (1) the law considers these types of contacts as minor for jurisdictional purposes, and (2) as regards Mohan's being Toxikon's registered agent, this was not a "purposeful" contact after October 2009.  Under the law, "[A] corporation's qualification to do business in the forum state and service on its registered agent in the state 'is of no special weight in evaluating general personal jurisdiction.'"[130]  "A registered agent, from any conceivable perspective, hardly amounts to 'the general business presence' of a corporation so as to sustain an assertion of general

---

[126]Defendant's Exhibit 12, Dr. Desai's June 14, 2011 declaration, ¶ 3.

[127]Defendant's Exhibit 4, Dr. Desai's April 26, 2011 declaration, ¶ 7.

[128]Defendant's Exhibit 4, Dr. Desai's April 26, 2011 declaration, ¶ 6.3 and ¶ 7.

[129] *See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 3.

[130]*Siemer v. Learjet Acquisition Corp*., 966 F.2d 179, 183 (5th Cir.1992)(citing *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.)**,** *cert denied*, 404 U.S. 948 (1971).

jurisdiction.[131]  Not only does a non-resident defendant's registration of an agent in Texas fail to establish the non-resident's general business presence in Texas, it also does not provide the non-resident's consent to be hauled into Texas courts.[132]  Additionally, only a defendant's "purposeful" acts count, so Mohan's mistakenly being listed as Toxikon's registered agent, when in fact he no longer was its agent, is not a contact that counts for deciding jurisdiction.

### 2.    One Employee for 6 Months with a Home Office is a Minor Contact

On April 22, 2009, one employee (Stephan Mohan – the same person who was the registered agent) began working for Toxikon.[133]  Mr. Mohan was a technical sales representative whose territory included Texas, Illinois, Nebraska, Kansas, Oklahoma, Louisiana, Arkansas, Missouri, Mississippi, and Alabama.[134]  At the time of his hire, Mr. Mohan lived in Texas and was going to work for Toxikon from his house located in Texas, with Toxikon promising to provide him with standard office equipment.[135]  Mr. Mohan left Toxikon on October 9, 2009.[136]  During his brief time with Toxikon, he reported to Simon Dolan, who worked for Toxikon in its Massachusetts office.[137]

Without citing any authority, plaintiff argues that Toxikon is subject to general jurisdiction because for almost 6 months Mr. Mohan worked from his home and used a company computer,

---

[131]*Siemer.*, 966 F.2d 179, 183 (5th Cir.1992); *see also Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 889 (S.D. Tex. 1993).

[132]*Siemer*, 966 F.2d at 183.

[133]Defendant's Exhibit 12, Dr. Desai's June 14, 2011 declaration, ¶ 3.

[134]Plaintiff's Exhibit 14 (Toxikon 27).

[135]Plaintiff's Exhibit 14 (Toxikon 27-29).

[136]Defendant's Exhibit 12, Dr. Desai's June 14, 2011 declaration, ¶ 3.

[137]Defendant's Exhibit 12, Dr. Desai's June 14, 2011 declaration, ¶ 3.

printer and phone.[138]  Plaintiff is wrong.

In *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008), the non-resident defendant employed <u>two</u> Texas residents who worked from their homes, and like Mohan both employees reported to a supervisor who was located outside Texas.  The court found these facts insufficient to establish the "continuous and systematic" contacts needed for general jurisdiction. *Johnston*, 523 F.3d at 612-13 (citing *Ratliff v. Cooper Labs, Inc.*, 444 F.2d 745, 746-48 (4th Cir. 1971)(finding no general jurisdiction despite the fact that the defendant had five employees located in the forum state).  *See also Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)(maintenance of a traditional office with three employees in the forum state was not sufficient for general  jurisdiction).

### 3.    Purchases Related to Texas do Not Satisfy General Jurisdiction

From 2007 through 2010, Toxikon  had average annual purchases of less than $46,512 made from Texas.  These purchases were less than ½ of one percent (0.5%) of Toxikon's average annual purchases in the United States for this period, and approximately 4/10 of one percent (0.4%) of Toxikon's worldwide purchases for this period.[139]

Without citing any authority, plaintiff argues that defendant is subject to general jurisdiction because it has done "regular business" with Texas residents for years.[140] Plaintiff is wrong.

The U.S. Supreme Court addressed the issue of "regular business" conferring general jurisdiction in its *Helicopteros* decision.  The Court wrote "...we hold that mere purchases, even if

---

[138] *See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 3.

[139]Defendant's Ex. 4, Dr. Desai's April 26, 2011 declaration, ¶ 4.

[140]*See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 3.

occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). In *Helicopteros*, the nonresident corporation's contacts that the Court held were insufficient to confer general jurisdiction: (1) were made over a period of 7-8 years, (2) included purchasing helicopters (about 80% of its helicopter fleet) as well as spare parts and accessories, (3) these purchases exceeded $4 million, and (4) were made from the Bell Helicopter Company in Forth Worth, Texas. *Id* at 411. Here, Toxikon's purchases from Texas are insignificant compared to the extensive purchases made by the nonresident defendant in *Helicopteros*.[141] Consequently, it is obvious that Toxikon's "regular business" with Texas residents is insufficient to confer general jurisdiction.

### 4.    Toxikon's Sales with Texas are Insufficient for General Jurisdiction

Without citing any authority, plaintiff argues that Toxikon is subject to general jurisdiction because it has done "substantial sales" in Texas.[142] Plaintiff is wrong.

"[S]ales of a product in the forum state are generally insufficient to establish general jurisdiction. *See, e.g.*, *Johnston*, 523 F.3d at 612 (defendant's sale of approximately $140,000 worth of goods in Texas plus travel by five of its employees to Texas insufficient to justify general jurisdiction); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373-76 (5th Cir. 1987) (sale of over $250 million of products to Texas customers over five years did not support general jurisdiction)." *American Bank, F.S.B. v. Auto-owners Mutual Fire & Cas. Ins. Co.*, 4-10-cv-331-A, 2010 U.S. Dist. Lexis 102341 (N.D. Tex. Sept. 27, 2010). In *American Bank, F.S.B.*, no general jurisdiction existed

---

[141] *See* Def.'s Ex. 12, ¶ 4.

[142] *See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 3.

even though the defendant had: (1) been licensed by the Texas Department of Insurance; (2) contracted and communicated with, and issued insurance policies to, its insureds located in Texas; (3) billed and collected premiums from insureds in Texas; (4) adjusted and paid claims by and against its insureds in Texas on insurance policies issued to Texas insureds; (5) hired and paid Texas attorneys to represent it and its insureds when they were sued in Texas more than 100 times during the past ten years; (6) purposefully invoked the jurisdiction of a Texas court by filing suit in Dallas County to collect a debt; (7) contracted with Texas-based vendors and paid them more than $25 million over the past five years; (8) purchased almost $400 million worth of Texas municipal bonds, upon which defendant receives over $15,000,000 annually in interest; and (9) paid over $80,000,000 in claims-related expenses to Texas-based insureds, claimants, adjusters, and others. Id. at *13 -*14. In *American Bank, F.S.B.*, the court also ruled that "The fact that defendant was once licensed by the Texas Department of Insurance is also of little bearing, as registering to do business in the forum state carries 'no special weight,' and fails to create the 'general business presence' necessary for a finding of general jurisdiction. *American Bank, F.S.B.,* 2010 U.S. Dist. Lexis 102341 at *16 (citing *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-82 (5th Cir. 1992).

Again without citing any authority supporting its argument, plaintiff tried to distinguish Toxikon's cases by pointing out that in each of Toxikon's cited cases the defendant had not registered to do business in Texas and did not have a registered agent in Texas.[143]  Plaintiff's speculation is that the cases cited by Toxikon might have been decided differently had the defendants in those cases also been registered to do business and had a registered agent in the forum state.  Not only is plaintiff merely speculating, but also it is wrong.  In all but one of Toxikon's cited

---

[143]Plaintiff's Response, p. 18.

cases, the defendant had contacts with the forum state in addition to sales, and these additional contacts were more significant than the basically insignificant contacts of registering to do business and having a registered agent in the forum state.  Moreover, plaintiff was just plain wrong when it said that in *"Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) [the] defendant was not registered to do business in Texas."[144]

In *Siemer*, 966 F.2d at 181-84, the court found general jurisdiction did not exist over a Delaware corporation where the corporation sold slightly over one percent of its products to Texas buyers, held "a certificate from Texas giving it the right to do business in Texas," had an agent for service of process in Texas, advertised in Texas, and had a wholly owned subsidiary transacting business in Texas.

In *Johnston*, 523 F.3d at 612-14, the court analyzed general jurisdiction for two defendants. One defendant had millions of dollars in annual sales to Texas that were less than 2.5% of global sales.   Additionally, the defendant's Texas contacts included doing clinical trial work for pharmaceutical companies.  This work consisted both of work done for Texas companies and work done in Texas by independent contractors, and sometimes included contracts between the defendant and its contractors that were governed by Texas law.  These contacts were insufficient to establish general jurisdiction in Texas.  *Id*. at 613-14.  The other defendant in *Johnston* had sales of approximately $140,000 worth of goods in Texas, which were about 3% of its business, plus periodic travel by its employees to Texas to attend trade shows or service equipment.  The court found theses contacts did not establish general jurisdiction.  *Id*. at 612.

In *Access Telecomm.,* 197 F.3d 694, 717-18, no general jurisdiction existed where the

---

[144]Plaintiff's Response, p. 18.

defendant derived millions of dollars a month in revenue from Texas residents and leased real property and personal property in Texas.

In *Dalton*, 897 F.2d at 1362, the court held that the defendant did not have a general presence in the forum state despite earning over twelve percent of its revenue from sales in the forum state, advertising in the forum, buying vessels in the forum, and actually sending its boats into the forum state.

In *LeBlanc*, 138 F.Supp.2d 817, 819, the defendant's only contacts with Texas were sales, and "The Court conclude[d] that out-of-state work performed for a Texas business, even if accounting for ten to fifteen percent of Defendant's revenue, cannot possibly give rise, by itself, to general jurisdiction in Texas over the Defendant."

## C.   28 U.S.C. § 1404(a)'s Factors Clearly Weigh in Favor of Transfer to Massachusetts

Plaintiff incorrectly sets out "Plaintiff's choice of forum" as though it were an independent factor, and incorrectly says that plaintiff's choice of forum "carries great weight."[145]   Instead, the burden of proof is that the movant must show "good cause," and this burden is satisfied when the movant shows the transferee venue is "clearly more convenient."[146]   The plaintiff's choice of venue is not an independent factor to be considered in the transfer analysis; instead, deference to the plaintiff's choice of venue is accounted for in the "clearly more convenient" burden on the movant.[147]

---

[145]Plaintiff's Response, p. 22.

[146]*See, e.g., Vora v. Scottsdale Ins. Co.*, Civ. No. 2:10-cv-089-TJW, 2010 U.S. Dist. LEXIS 105997, 2010 WL 3928072, at *2 (E.D. Tex. Oct. 5, 2010).

[147]*See Volkswagen II*, 545 F.3d at 315.

### A.      The Private Interest Factors Weigh in Favor of Transfer

#### 1.      Relative Ease of Access to Sources of Proof

In the instant case, there are three entities that are inextricably linked to this case.  They are Spark, Toxikon, and Patriot Energy Management, Inc. ("Patriot").  Spark alleges that Toxikon appointed Patriot to act as Toxikon's agent.[148]  Toxikon denies that Patriot was authorized to sign the alleged contract on Toxikon's behalf.[149]  Regardless of which side is correct, it is clear that Patriot will be called upon to provide documents and testimony in this case.  Patriot is located in Massachusetts and has its headquarters in Massachusetts.[150] In all likelihood, any documents that Patriot (and Toxikon) possess that are relevant to this case will be located in Massachusetts.  Most (if not all) of the potential witnesses for both Toxikon and Patriot reside in Massachusetts.  Consequently, although Spark would be slightly inconvenienced by having to travel to Massachusetts, most of the "sources of proof" are more easily found and maintained in Massachusetts.  This factor weighs in favor of transfer.

#### 2.      Availability of Compulsory Process to Secure the Attendance of Witnesses

As stated previously, Patriot will be intimately involved in this case.  Because Patriot is not a party to this action, Toxikon may be required to subpoena a number of Patriot witnesses.  Under the Federal Rules of Civil Procedure, a subpoena can be quashed if it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides,

---

[148]*See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 12.

[149]*See* Defendant's Motion to Dismiss for Lack of Personal Jurisdiction & Alternatively Motion to Transfer Venue Under 28 §§ U.S.C. 1406(a) OR 1404(a), p. 4-5.

[150]*See* Declaration of Laxman Desai in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction & Alternatively Motions to Transfer Venue, Def.'s Ex. 4,  ¶ 3.

is employed, or regularly transacts business in person–except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held."[151]  Consequently, the only way that Toxikon can avoid Patriot employees in Massachusetts quashing Toxikon subpoenas is to have the case in a Massachusetts' court. Conversely, if the case were to be adjudicated in Texas, many (perhaps all) Patriot witnesses could quash any subpoenas issued by Toxikon or Spark.  Spark tries to dismiss this argument by writing "Toxikon has stated that if this case is not dismissed or transferred, it will add Patriot as a party. Thus, Patriot will be a party and this factor will be inapplicable as to Patriot."[152]  This argument is specious. First of all, Toxikon has not concluded that it will add Patriot as a party to the instant case, and it is quite possible that Toxikon will choose not to add Patriot as a party to this case.  In any event, it would not make sense if Toxikon were to add Patriot as a party to this case simply to make sure that Patriot witnesses can be compelled to testify. This factor weighs in favor of transfer.

### 3.      Cost of Attendance for Willing Witnesses

Ideally, neither side will have to unnecessarily spend money on subpoenas.  If the case is tried in Massachusetts, the cost of attendance for willing witnesses from Patriot (who will likely comprise most if not all of the key non-party witnesses in this case) will be markedly less than if they have to travel to Texas.[153]  There would be added costs to Spark's Texas employees  if the case is tried in Massachusetts, but those witnesses would not qualify as "willing" witnesses anyway since they are employed by Spark.  This factor weighs in favor of transfer.

---

[151]Fed. R. Civ. P. 45(c)(3)(A)(ii)

[152]*See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 23.

[153]This assumes that a Patriot employee would volunteer to travel to Texas at his/her own expense. More than likely s/he would resist such an effort and quash any subpoena that tried to force him/her to testify in Texas.

38

### 4. Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

In the instant case, the disputed agreement specifies that New York state law is to govern the case.[154]  Basic logic strongly suggests that a federal court in Massachusetts would have more familiarity with New York state law than a federal court in Texas.  Moreover, should it become necessary for either side to retain an expert on New York state law, it would likely be: 1) easier to find this expert in Massachusetts or New York than in Texas AND 2) the costs (for either side) of retaining an expert from Massachusetts or New York would be considerably reduced if he or she were not required to travel to Texas.  This factor weighs in favor of transfer.

### B. The Public Interest Factors in this Case Weigh in Favor of Transfer

### 1. Administrative Difficulties Flowing from Court Congestion

Toxikon has no way of determining whether the federal court in Boston are more "congested" than the federal court  in Houston. Toxikon assumes that both courts are busy but able to administer this case. This is a neutral factor that neither weighs for or against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

As discussed above, Massachusetts's comprehensive regulatory and dispute resolution statue applies to this dispute.  Through these statutes Massachusetts is expressing its interests in regulating a particular industry, regulating particular transactions, and protecting its citizens.  Plaintiff uses the "standard form contract" in dispute in this case to sell gas to thousands of Massachusetts citizens.[155] This transaction is local to Massachusetts: under the alleged contract, plaintiff had the obligation to deliver natural gas in Massachusetts, transfer possession and title in Massachusetts, and collect and

---

[154]*See* Plaintiff's Exhibit 4 (Spark Gas Energy, L.P. contract, Spark 000001-000002); see also Def.'s Ex. 9.

[155]Def.'s Exhibit 8, Henderson's deposition, pp. 21-24 and p. 57, ln. 23 to p. 58, ln. 10.

remit to Massachusetts its local sales tax.  Clearly, Massachusetts has a strong interest in having this dispute decided in Massachusetts.

### 3.        Familiarity of the Forum with the Law That Will Govern the Case

In the instant case, the disputed agreement unambiguously states that New York law applies. Moreover, the agreement references a Massachusetts statute,[156] though Plaintiff denies its applicability to this case.  Although a Texas federal court is undoubtedly capable of understanding and applying Massachusetts and New York law, basic common sense suggests that a Boston federal court would have much more familiarity and experience dealing with Massachusetts and New York law than a Texas federal court. This factor weighs in favor of transfer.

### 4.        Avoidance of Unnecessary Problems of Conflict of Laws

U.S. Supreme Court precedent states that "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  If this case is not transferred from Houston to Boston, then there is the possibility that the laws of three states (Texas, Massachusetts, and New York) may be in conflict.  Conversely, if the case is transferred to Boston, then any possible conflict of laws issues would be limited to two states (Massachusetts and New York).  Consequently, this factor weighs in favor of transfer.

### 5.        Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Spark asserts that "Texas citizens will be ready, willing and able to do their duty to protect the contract rights of a Texas resident."[157]  While this is undoubtedly true, there is no reason to

---

[156]Def.'s Ex. 9, ¶¶ 1, 5, 7, and 15.

[157]*See* Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue, p. 25.

40

believe that Massachusetts citizens are any less ready, willing and able to do their duty to protect the rights of its residents.  Moreover, the facts of this case demonstrate that Massachusetts has a stronger connection with the litigation than Texas does. This factor weighs in favor of transfer.

There are a total of ten factors (five private interest factors, five public interest factors) that are properly considered when determining whether or not venue transfer under 28 U.S.C. § 1404(a) is proper.  In this case, one factor weighs against transfer, one factor is neutral, and eight factors clearly weigh in favor of transfer. Consequently, it is clear that transferring this case is required.

**D.      Objections to Drew Henderson's Declaration & Testimony**

As stated elsewhere in this Reply, Henderson's statements about what Patriot Energy knew are based upon inadmissible hearsay.  Moreover, because he stated that his knowledge was also based upon a document that plaintiff refused to produce and refused to testify about, any of Henderson's statements about what Patriot knew must be disregarded.

Defendant also objects to all of Henderson's conclusory statements about Patriot being Toxikon's agent.  Given that the evidence, including Henderson's own testimony, proves there was an agency relationship between plaintiff and Patriot that predated the alleged agency relationship between Toxikon and Patriot, and given the undisputed evidence that Patriot did not disclose to Toxikon its existing agency relationship with plaintiff, there is substantial evidence that Patriot was not in fact Toxikon's agent.  Patriot could not be Toxikon's agent to sign a contract "for" Toxikon, but with Patriot's undisclosed principal, plaintiff Spark.  Therefore, all of Henderson's testimony about Patriot being Toxikon's agent should be disregarded.

## IV.  CONCLUSION

Defendant Toxikon Corporation respectfully requests that this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction and dismiss this case without prejudice.  Alternatively, Toxikon requests that the Court grant its Motion to Transfer Venue Under 28 U.S.C. § 1406(a) or its Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and transfer this case to the United States District Court, District of Massachusetts, Boston Division.  Toxikon also asks for such other and further relief, both general and special, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

THE DIETRICH LAW FIRM

By:    s/ Fred Dietrich
Fred Dietrich
Attorney-in-Charge
SBOT 05857050
2211 Norfolk St., Suite 620
Houston, Texas 77098
Tel.: 713.830.7687
Fax: 713.721.3112
fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT
TOXIKON CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue (Dkt. 17) was served upon all opposing counsel through the federal courts' ECF system on June 17, 2011.

s/ Fred Dietrich
Fred Dietrich