IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-1120 |
| | § | Jury |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S SUR-REPLY REGARDING
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

FRED DIETRICH
State Bar No. 05857050
THE DIETRICH LAW FIRM
2211 Norfolk St., Suite 620
Houston, Texas 77098
Tel.:   713.830.7687
Fax:    713.721.3112
fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. NATURE & STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     1.    Plaintiff Solicited Toxikon in Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . 3

     2.    Patriot was an Illegal Undisclosed Dual Agent . . . . . . . . . . . . . . . . . . . . . . . 3

     3.    Both of Plaintiff's Alleged Agreements are Illegal . . . . . . . . . . . . . . . . . . . . . 5

     4.    Plaintiff Improperly Tries to Use the Document it Refused to
          Produce & Refused to Testify About . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     5.    Defendant's Declarations Have Not Been Controverted
          by Plaintiff's Declarations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     6.    Plaintiff's Footnote 4 Misrepresents Def.'s Exhibit 18: which is
          plaintiff's "standard form agency agreement" . . . . . . . . . . . . . . . . . . . . . . . . 8

     7.    Plaintiff & Patriot Did Not Provide Toxikon with the "Agreements" . . . . . . . . . 8

     8.    Plaintiff's Confidentiality Agreement with Patriot
          Does Not Entitle Plaintiff to Ignore the Rules . . . . . . . . . . . . . . . . . . . . . . . . 9

     9.    Plaintiff's Claim Does Not Arise Out of Toxikon's Forum Contacts . . . . . . . . . 9

     10.   Plaintiff Did Not Exist Solely in Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     11.   Plaintiff's Acts in Texas are Not Relevant . . . . . . . . . . . . . . . . . . . . . . . . . 11

     12.   Plaintiff's Offers Only Speculation About Communications . . . . . . . . . . . . . 12

     13.   *Moncrief* is the Most Important Authority for this Case . . . . . . . . . . . . . . . . . 12

     14.   The Parties' Choice of Law Clauses Forcefully Indicate No Jurisdiction Exists  12

i

15.     No General Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16.     Venue Should be Transferred to Massachusetts . . . . . . . . . . . . . . . . . . . . . . . . . 13

17.     Toxikon's Exhibits are Relevant, Authentic & Admissible . . . . . . . . . . . . . . . . 16

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## <u>INDEX OF AUTHORITIES</u>

**Cases**:

*American Motorists Ins. Co. v. American Ins. Co.*,
    438 N.E.2d 368 (Mass. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*Centennial Mutual Life Ass'n v. Parham*,
    16 S.W. 316 (Tex. 1891) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*First Texas Joint Stock Land Bank v. Chapman*,
    48 S.W.2d 651 (Tex. Civ. App.1932 writ dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Freudensprung v. Offshore Tech. Servs.*,
    379 F.3d 327 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*J.C. Penny Co. v. Schulte Real Estate Co.*,
    292 Mass. 42 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Jones v. Pettya-Ray Geophysical, Geosource, Inc.*,
    954 F.2d 1061 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*King v. Partt & Whitney*,
    161 F.R.D. 475 (S.D. Fla 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Latshaw v. Johnston*,
    167 F.3d 208 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moncrief Oil Int'l., Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13

*National Credit Union Administration v. TICOR Title Ins. Co.*,
    873 F.Supp. 718 (D. Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Paul v. Prince*,
    228 S.W. 1102 (Tex. Civ. App. 1921 no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Remenchik v. Whittington*,
    757 S.W.2d 836, 839 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Walker v. Osgood*,
    98 Mass. 348 (1867) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPARK ENERGY GAS, LP §
§
Plaintiff, §
§
v. §        CIVIL ACTION NO. 4:11-cv-1120
§                   Jury
§
TOXIKON CORPORATION, §
§
Defendant. §

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S SUR-REPLY REGARDING
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

Defendant Toxikon Corporation (Toxikon) files this Response to Plaintiff's Sur-Reply to
Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue
(Dkt. 12), and defendant respectfully shows the following:

## I.  NATURE & STAGE OF THE PROCEEDINGS

Defendant moved to dismiss plaintiff's breach of contract claim for lack of personal
jurisdiction and alternatively to transfer venue. Plaintiff responded, and defendant replied. On June
27, 2011, plaintiff filed its sur-reply and objections to defendant's evidence. Defendant now files
its response to plaintiff's sur-reply and also separately files its response to plaintiff's objections to
defendant's evidence.

## II.  SUMMARY OF THE ARGUMENT

Plaintiff's sur-reply has numerous misstatements and invalid arguments.

1

Despite plaintiff's arguments, the undisputed evidence shows that plaintiff solicited Toxikon in Massachusetts.

Patriot Energy was an illegal undisclosed dual agent.  As a matter of law, Patriot could not bind Toxikon to a contract with Patriot's undisclosed principal, plaintiff Spark.  A contract obtained by such illegal means cannot support jurisdiction.  Not only was the May 9, 2007 alleged agreement obtained illegally, but so was the May 8, 2007 agreement.  The first illegally obtained agreement cannot be used to support jurisdiction for the second illegally obtained agreement.

Despite refusing to produce a document and refusing to testify about it, plaintiff repeatedly and improperly uses information from that document in its sur-reply.

None of defendant's affidavits are contradicted by plaintiff's affidavits.  Plaintiff's footnote 4 misrepresents Def.'s Exhibit 18.  Plaintiff and Patriot did not provide Toxikon with the "agreements."  Plaintiff's confidentiality agreement with Patriot does not entitle plaintiff to ignore the Rules.  Plaintiff's claim does not arise out of Toxikon's forum contacts.  Plaintiff did not exist solely in Texas.  Plaintiff's acts in Texas are not relevant.  Plaintiff offers only speculation about communications by Toxikon.  *Moncrief* is the most important authority for this case.  The parties' choice of law clauses forcefully indicate no jurisdiction exists.  Plaintiff offers no support for its general jurisdiction argument.  Venue should be transferred to Massachusetts.  All of Toxikon's exhibits are relevant, authentic and otherwise admissible, and plaintiff's objections are without merit.

### III.  ARGUMENT & AUTHORITIES

**1.      Plaintiff Solicited Toxikon in Massachusetts**

The undisputed evidence shows that plaintiff solicited Toxikon in Massachusetts.  Plaintiff's director Henderson testified that plaintiff markets in Massachusetts through brokers, and Patriot is one of plaintiff's brokers in Massachusetts.[1]  Plaintiff has written agreements with its brokers,[2] and in February 2007, plaintiff and Patriot Energy signed a written broker/agent agreement.[3]  From February 2007 through the present, plaintiff and Patriot have operated under this written broker/agent agreement.[4]  In May 2007, Patriot contacted Toxikon about changing gas suppliers.[5]  Patriot made the first contact with Toxikon; Toxikon did not contact Patriot.[6]  Therefore, the undisputed evidence shows that plaintiff, through its agent (Patriot), reached out to solicit Toxikon in Massachusetts.

**2.      Patriot was an Illegal Undisclosed Dual Agent**

Despite admitting that Patriot has been plaintiff's broker/agent since February 2007, plaintiff argues "Patriot was unquestionably Toxikon's agent [in May 2007],"[7] "[i]t is beyond doubt that Patriot was Toxikon's agent when it entered into the Agreements with Spark [in May 2007],"[8]

---

[1]Def.'s Ex. 8, Henderson deposition, p. 22, ll. 6-18.

[2]Def.'s Ex. 8, Henderson deposition, p. 22. ln. 6 to p. 23, ln. 16.

[3]Def.'s Ex. 8, Henderson deposition, p. 21, ll. 4-12.

[4]Def.'s Ex. 8, Henderson deposition, p. 21, ll. 4-12.

[5]Def.'s Ex. 13, Dexter Williams declaration, ¶ 2 & 3 (Patriot contacted Toxikon, not vice versa).

[6]Def.'s Ex. 13, Dexter Williams declaration, ¶ 3.

[7]Plaintiff's Sur-Reply, p. 1.

[8]Plaintiff's Sur-Reply, p. 2.

"[t]his document [dated May 8, 2007] is unambiguous and unquestionably establishes that Patriot was Toxikon's agent with the authority to negotiate and enter into agreements . . .  on Toxikon's behalf,"[9] and "There is simply no doubt that Patriot was Toxikon's agent, and had authority to negotiate and enter into both agreements with Spark."[10]  Plaintiff is wrong.  Patriot's undisclosed dual agency was illegal.  Patriot could not represent both plaintiff Spark and Toxikon without first fully disclosing to Toxikon that it was plaintiff's agent and obtaining Toxikon's consent to the dual agency, which it did not do.[11]

As a matter of law, Patriot Energy could not bind Toxikon to a contract with Patriot's undisclosed principal, plaintiff Spark.  The law is well settled that it is illegal for an agent to serve two principals without fully disclosing its dual role and obtaining the principal's consent.[12]  When the agent's dual role is known by one principal but not the other, the uninformed principal is not charged with the agent's knowledge.[13]  Likewise, the dual agent has no authority to bind the uniformed principal to a contract.[14]  And, any contract growing out of such an "agency" is against

---

[9]Plaintiff's Sur-Reply, p. 3.

[10]Plaintiff's Sur-Reply, p. 4.

[11]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶¶ 8, 9, 10; Def.'s Exhibit 13, Dexter Williams's declaration, ¶¶ 4, 5, 6, 7 & 8.

[12]*See, e.g., American Motorists Ins. Co. v. American Ins. Co.*, 438 N.E.2d 368, 370-71 (Mass. App. 1982); *J.C. Penny Co. v. Schulte Real Estate Co.*, 292 Mass. 42, 44-45 (1935); *Walker v. Osgood*, 98 Mass. 348, 351 (1867); *Paul v. Prince*, 228 S.W. 1102, 1104 (Tex. Civ. App. 1921, no writ).

[13]*See, e.g., American Motorists Ins. Co. v. American Ins. Co.*, 438 N.E.2d 368, 370-71 (Mass. App. 1982); *J.C. Penny Co. v. Schulte Real Estate Co.*, 292 Mass. 42, 44-45 (1935); *First Texas Joint Stock Land Bank v. Chapman*, 48 S.W.2d 651, 654 (Tex. Civ. App.1932 writ dism'd); *Centennial Mutual Life Ass'n v. Parham*, 16 S.W. 316, 319 (Tex. 1891); *National Credit Union Administration v. TICOR Title Ins. Co.*, 873 F.Supp. 718, 727 (D. Mass. 1995).

[14]*See, e.g., American Motorists Ins. Co. v. American Ins. Co.*, 438 N.E.2d 368, 370-71 (Mass. App. 1982); *J.C. Penny Co. v. Schulte Real Estate Co.*, 292 Mass. 42, 44-45 (1935); *National Credit Union Administration v. TICOR Title Ins. Co.*, 873 F.Supp. 718, 727 (D. Mass. 1995); *Remenchik v. Whittington*, 757 S.W.2d 836, 839 (Tex.App. -- Houston [14th Dist.] 1988, no writ).

4

public policy, unenforceable, and a fraud upon the principal.[15]  Finally, "jurisdiction may not be grounded on a contract whose terms have been obtained through fraud . . . ." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 486 (1985)(quotation marks omitted).

The undisputed evidence is: (1) from February 2007 to the present, Patriot has been plaintiff's broker/agent in Massachusetts; (2) Patriot did not disclose to Toxikon that it was already plaintiff's broker/agent;[16] and (3) Toxikon did not know about and did not consent to Patriot's dual agency.[17]  Therefore, contrary to plaintiff's argument and as a matter of law, Patriot's knowledge is not attributable to Toxikon, Patriot had no authority to bind Toxikon to a contract with plaintiff, plaintiff's alleged contract is against public policy, unenforceable, and a fraud upon Toxikon, and this illegally obtained "contract" cannot support jurisdiction.

**3.      Both of Plaintiff's Alleged Agreements are Illegal**

While serving as plaintiff's undisclosed agent, Patriot signed two "agreements" for Toxikon. Patriot's John Allario signed the first agreement "for" Toxikon on May 8, 2007,[18] and Patriot's John Allario signed the second "agreement" for Toxikon on May 9, 2007[19] (the subject of plaintiff's

---

[15]*See, e.g., American Motorists Ins. Co. v. American Ins. Co.*, 438 N.E.2d 368, 370-71 (Mass. App. 1982); *J.C. Penny Co. v. Schulte Real Estate Co.*, 292 Mass. 42, 44-45 (1935); *National Credit Union Administration v. TICOR Title Ins. Co.*, 873 F.Supp. 718, 727 (D. Mass. 1995); *Paul v. Prince*, 228 S.W. 1102, 1104 (Tex. Civ. App. 1921, no writ).

[16]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶¶ 8, 9, 10; Def.'s Exhibit 13, Dexter Williams's declaration, ¶¶ 4, 5, 6, 7 & 8.

[17]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶¶ 8, 9, 10; Def.'s Exhibit 13, Dexter Williams's declaration, ¶¶ 4, 5, 6, 7 & 8.

[18]Plaintiff's Ex. 3 at "Spark 000003."

[19]Plaintiff's Ex. 4 at "Spark 000001."

claim).  Toxikon did not know that Patriot had signed agreements on its behalf.[20]  Toxikon was never provided a copy of the first "agreement," and Toxikon did not receive a copy of the second agreement until three years later – April 2010.[21]

As discussed in the preceding section, the May 9, 2007 "agreement" is against public policy, unenforceable, a fraud upon Toxikon, and cannot support jurisdiction.  For the same reasons, the May 8, 2007 agreement is against public policy, unenforceable, a fraud upon Toxikon, and cannot support jurisdiction.  Therefore, plaintiff cannot use the first illicit agreement as a jurisdictional bootstrap for the second illicit agreement.

**4.**      **Plaintiff Improperly Tries to Use the Document it Refused to Produce & Refused to Testify About**

Although admitting it has a written agreement with Patriot dated February 9, 2007 and despite saying that it did not refuse to produce this agreement, the facts are that plaintiff has not produced its agreement with Patriot, the document is clearly relevant and not privileged, and plaintiff unlawfully refused to testify about the agreement.[22]  Plaintiff's argument that "Mr. Henderson properly declined to answer certain deposition questions"[23] is wrong.  No agreement between the parties gave plaintiff the right to refuse to answer questions, and an attorney is not allowed to instruct a witness not to answer questions just because the attorney thinks the question is outside the scope of a Rule 30(b)(6) deposition notice.[24]

---

[20]Def.'s Ex. 12, Dr. Desai's June 14, 2011 declaration, ¶¶ 8, 9, 10; Def.'s Exhibit 13, Dexter Williams's declaration, ¶¶ 4, 5, 6, 7 & 8.

[21]Def. Ex. 21, Timothy Fisher's July 1, 2011 declaration, ¶¶ 2 & 3.

[22]*See* Defendant's Reply, p. 12, fns. 43, 44 and p. 16, fn. 68.

[23]Plaintiff's Sur-Reply, p. 6, fn. 3.

[24]*See King v. Partt & Whitney,* 161 F.R.D. 475, 476 (S.D. Fla 1995).

Part of director Henderson's declaration was wrongly based on this improperly withheld document (see defendant's Reply, pp. 15-16).  Just as bad if not worse, throughout its Sur-Reply plaintiff uses this improperly withheld document.  For example, plaintiff argues "Patriot does not have the right to bind Spark Energy into an agreement,"[25] and "while the agreements [defendant's Exhibit 18 (which is plaintiff's standard form agency agreement) and the withheld agreement] may have similar terms, they differ in material ways."[26]  The only source for these statements is the withheld agreement.  And more blatantly, "Henderson's testimony . . . is also confirmed by the language of the Patriot Agreement which, unlike Toxikon's Exhibit 18, <u>does not</u> state that Patriot is 'required' to solicit customers."[27]  Toxikon objects to plaintiff's tactic of withholding information while trying to use it offensively, and Toxikon asks that plaintiff's arguments be disregarded or that plaintiff be ordered to produce the withheld agreement, present a corporate representative for deposition, and pay for the cost of deposing plaintiff's representative on this withheld agreement.

**5.     Defendant's Declarations Have not Been Controverted by Plaintiff's Declarations**

Although *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) does stand for the proposition that conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor, plaintiff failed to point to any affidavit that contradicts anything in any of defendant's affidavits.

---

[25]Plaintiff's Sur-Reply, p. 6.

[26]Plaintiff's Sur-Reply, p. 8.

[27]Plaintiff's Sur-Reply, p. 9 (emphasis in the original).

7

**6.      Plaintiff's Footnote 4 Misrepresents Def.'s Exhibit 18: which is plaintiff's "standard form agency agreement"[28]**

Defendant's Exhibit 18 is plaintiff's "standard form agency agreement"[29] that plaintiff had created by 2002[30] and that was used for non-employees to solicit customers for plaintiff.[31]  Plaintiff misrepresents the facts when it argues in its footnote 4 that because Exhibit 18 was not the agreement between Mr. Gregory and Spark, it is not probative of the agreement that Spark has with Patriot.  This is wrong.  In its Colorado federal lawsuit against Mr. Gregory, Spark took the position that Mr. Gregory was not a broker/agent, rather Mr. Gregory had been Spark's long time joint venturer and "Director of Rocky Mountain Operations"[32] in Colorado.  Therefore, it makes sense that Spark's "standard form agency agreement" did not represent the special relationship that existed between Spark and Mr. Gregory, and it make sense that Exhibit 18 represents the agreement that Spark has with Patriot, one of Spark's non-employee broker/agents who solicits customers for Spark.

**7.      Plaintiff & Patriot Did Not Provide Toxikon with the "Agreements"**

Plaintiff argues that Patriot must have provided a copy of the alleged contract to Toxikon merely because plaintiff's agreement with Patriot supposedly required it to do so.[33]  Plaintiff, however, offers no evidence that either it or Patriot provided a copy of either of the two alleged

---

[28]Def.'s Exhibit 15, plaintiff's response to Amkor's motion for summary judgment, p. 7, ¶¶ 23-24. (Case 1:08-cv-01291-RPM-KMT, doc. 96, p.7.

[29]Def.'s Exhibit 15, plaintiff's response to Amkor's motion for summary judgment, p. 7, ¶¶ 23-24. (Case 1:08-cv-01291-RPM-KMT, doc. 96, p.7.

[30]Def.'s Ex. 19, Gibson deposition, p. 136, ll. 10-22.

[31]Def.'s Ex. 19, Gibson deposition, p. 159, ln. 1 to p. 160, ln. 11.

[32]Def.'s Exhibit 15, plaintiff's filed response in the United States District Court, District of Colorado, case 1:08-cv-01291-RPM-KMT, Doc. 96, pp. 2-6.

[33]Plaintiff's Sur-Reply, pp. 8 & 9.

agreements to Toxikon.   Instead, the evidence is that Patriot's John Allario signed both

"agreements" "for" Toxikon without telling Toxikon he was doing so and without providing a copy

of either document to Toxikon before or after he signed.[34]  Neither plaintiff nor Patriot ever provided

Toxikon with a copy of the first agreement (signed by plaintiff and Allario on May 8, 2007).[35]  And,

Toxikon was not provided with a copy of the second agreement (signed by plaintiff and Allario on

May 9, 2007) until three years later – April 21, 2010.[36]

## 8.     Plaintiff's Confidentiality Agreement with Patriot Does Not Entitle Plaintiff to Ignore the Rules

In its footnote 6, plaintiff incorrectly argues that its agreement with Patriot to keep their

relationship confidential is also binding on Toxikon.  Plaintiff also incorrectly takes the position that

just because plaintiff and Patriot agree that information is confidential that plaintiff does not have

to abide by the federal Rules.

## 9.     Plaintiff's Claim Does Not Arise Out of Toxikon's Forum Contacts

Without providing any factual explanation, plaintiff concludes that "Spark's Claim Arises

Out of Toxikon's Forum Related Contacts, which Occurred from 2007 until 2010."[37]  Plaintiff,

however, does not point to any specific forum related contacts by Toxikon that gave rise to

plaintiff's breach of contract claim because there are none.  There were no negotiations between

plaintiff and Toxikon (*see* defendant's Reply, pp. 14-15), the terms of the alleged contract did not

---

[34]See Def.'s Ex. 13, Dexter Williams declaration, ¶¶ 4-7; Def.'s Exhibit 21, Timothy Fisher declaration, ¶¶ 2-3.

[35]See Def.'s Ex. 13, Dexter Williams declaration, ¶¶ 4-7; Def.'s Exhibit 21, Timothy Fisher declaration, ¶¶ 2-3.

[36]See Def.'s Ex. 13, Dexter Williams declaration, ¶¶ 4-7; Def.'s Exhibit 21, Timothy Fisher declaration, ¶¶ 2-3.

[37]Plaintiff's Sur-Reply, p. 11.

require either party to do anything in Texas (*see* defendant's Reply, pp. 6-9), the parties' course of dealing was nothing but invoicing and payment.  The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."[38] Moreover, Toxikon did not know that Patriot had signed contracts "for" it, and Toxikon was not provided with a copy of those "contracts."  *See* section 7, above.

**10.    Plaintiff Did Not Exist Solely in Texas**

Despite its own admissions filed in another federal court showing that it has had a Colorado office for a long time, plaintiff says that director Henderson was not lying in his declaration because his declaration testimony, when carefully dissected, shows he was stating "in the present tense" that "plaintiff sole offices are in Houston . . . ."[39]  This statement is also false.  Henderson's declaration stated, "Spark **was** located solely in Texas"[40] at the time the alleged agreement was entered into.

Additionally, plaintiff in an evasive way argues that just because three of its contracts show that it had an office at "3773 Cherry Creek North, Suite 575, Denver, Colorado"[41] with a phone and fax number too these "contracts say nothing about an 'office' in Denver, Colorado."[42]  Likewise,

---

[38]*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

[39]Plaintiff's Sur-Reply, p. 12, fn. 8.

[40]Drew Henderson Declaration, Plaintiff's Exhibit 1, p.3, ¶ 13.

[41]Def.'s Exhibit 14, plaintiff's first amended counterclaims in the United States District Court, District of Colorado, case 1:09-cv-01881-RPM, Doc. 47, pp. 11-20.  Plaintiff's Denver office address was 3773 Cherry Creek North, Suite 575, Denver, Colorado 80209; see pp. 12, 15, and 19.

[42]Plaintiff's Sur-Reply, p. 12.

plaintiff argues that just because it had a joint venture located in Colorado for many years, that does not prove it had an office in Colorado.[43]  Plaintiff's untruthfulness on this issue is further proved by yet another document that it created and filed in its federal lawsuit in Colorado.  In a letter dated March 13, 2008, plaintiff's Senior Vice President, Ken Ziober, stated "Spark Energy would like the opportunity to provide you with gas bids directly through **our Denver, Colorado regional sales office**."[44]

## 11.    Plaintiff's Acts in Texas are not Relevant

Plaintiff argues that everything it did it chose to do in Texas, and not surprisingly, the hub of plaintiff's activities was in Texas.[45]  Plaintiff fails to understand that its decision to act in Texas is not relevant.  It is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

## 12.    Plaintiff Offers Only Speculation About Communications

After reviewing plaintiff's records, director Henderson could identify only two phone calls initiated by Toxikon.[46]  These calls were in 2009[47] asking for an invoice concerning the May 8, 2007

---

[43]Plaintiff's Sur-Reply, p. 13.

[44]Def.'s Exhibit 22, Ken Ziober's letter filed in case 1:08-cv-01291-RPM-KMT, document 96-17, filed 08/04/09, USDC Colorado.

[45]Plaintiff's Sur-Reply, pp. 12-15.

[46]Def.'s Ex. 8, Henderson deposition, p. 66, ll. 6-12; p. 84, ln. 2 to p. 90, ln. 11.

[47]Plaintiff's Ex. 9, at  (Spark 32).

agreement to be faxed to Toxikon.[48]  Reviewing the same records director Henderson reviewed, plaintiff's lawyer speculates that there "appear[s]" to a few more.[49]  Of course, plaintiff's attorney's speculation is not evidence, none of the speculated additional communications concern the alleged contract being sued on, all are about insignificant invoicing matters, and "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."[50]

### 13.    *Moncrief* is the Most Important Authority for this Case

Without citing to any other authority, plaintiff says "*Moncrief* is not the 'Most Important Authority' and does not support Toxikon,"[51] but plaintiff is unable to offer any authority that is more important.  Similarly, although plaintiff finds a few facts in *Moncrief* "distinguishable" from this case, plaintiff does not cite to any court opinion distinguishing or criticizing *Moncrief's* statement of what the law is, including the test it sets out.  Plaintiff also fails to show how Toxikon's application of *Moncrief* is wrong.  Applying *Moncrief* (see defendant's Reply, pp. 20-25), this Court does not have specific jurisdiction over Toxikon.

### 14.    The Parties' Choice of Law Clauses Forcefully Indicate No Jurisdiction Exists

Plaintiff incorrectly states "The *Moncrief* opinion concludes that where parties select not

---

[48]Def.'s Ex. 8, Henderson deposition, p. 66, ll. 6-12; p. 84, ln. 2 to p. 90, ln. 11.

[49]Plaintiff's Sur-Reply, p. 15.

[50]*See Freudensprung*, 379 F.3d at 344.

[51]Plaintiff's Sur-Reply, p. 15.

only the governing law, but also *the location and the forum* for their disputes, their choice is an important indication . . . ."[52]  Plaintiff is wrong and misrepresents *Moncrief*.  The *Moncrief* court did not require the *presence of both* a choice of law clause *and* a choice of forum clause in order to find forceful indication that the defendant had not purposefully directed its activities toward the forum. Instead, the *Moncrief* court stated that both are forceful indications: *"See Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (stating that forum-selection and choice-of-law clauses 'indicate rather forcefully' that defendant 'did not purposefully direct its activities towards Texas')."[53]  Therefore, the parties' choice of law clause, standing alone, indicates rather forcefully that Toxikon did not purposefully direct its activities towards Texas.

In this case, there is not only a New York choice of law clause, but also Massachusetts law and forum provisions that require alternative dispute resolution in Massachusetts and potentially arbitration in Massachusetts.[54]  This combination of clauses indicates even more forcefully that Toxikon did not purposefully direct its activities towards Texas.

**15.    No General Jurisdiction**

Plaintiff is still unable to cite to any authority that supports its argument for general jurisdiction.

**16.    Venue Should be Transferred to Massachusetts**

In its Sur-Reply, Spark writes "Toxikon continues to overstate the role that Patriot may play in this case, and the 'source of proof' that might be located in Massachusetts.  Toxikon speculates

---

[52]Plaintiff's Reply, p. 16 (italics used by plaintiff).

[53]*Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007).

[54]*See* Def.'s Exhibit 1, 220 CMR 14.06(4)(b).

that Patriot's witnesses and sources of proof will be in Massachusetts. Toxikon offers no evidence of this alleged fact, thus it is not entitled to any weight.  Patriot has offices in Dallas, Texas and its witnesses or source of proof are equally likely to be located in Dallas, as opposed to Massachusetts."[55]  Spark is wrong.  Toxikon is <u>not</u> speculating when it asserts that key witnesses affiliated with Patriot are located in Massachusetts. <u>Spark's own Initial Disclosures</u> identify John Allario and Carol Anne Rein as two (out of three) individuals who are (or were) employed by Patriot and are likely to have discoverable information.[56]  The most recent information available indicates that both of these individuals are located in the greater Boston area.[57]  In short, at least two-thirds of the key Patriot witnesses identified by Spark's own Initial Disclosures live in or near Boston.

Spark also writes "Patriot has offices in Dallas, Texas and its witnesses or sources of proof are equally likely to be located in Dallas, as opposed to Massachusetts."[58]  This statement is demonstrably wrong.  Patriot is headquartered in Boston,[59] and common sense dictates that much (if not all) of the documentary evidence Patriot possesses that is relevant to this matter will be located in Boston.

Spark also attempts to minimize the possibility that Toxikon may be required to subpoena some of Patriot's witnesses by writing "First, it is abundantly clear that, as to Spark's breach of

---

[55]Plaintiff's Sur-Reply, p. 17.

[56]Def.'s Exhibit 23, page 3 from Spark Energy Gas, LP's Initial Disclosures in this lawsuit.

[57]Def.'s Exhibit 24, a true and correct copy of John Allario's Linkedin page showing he is currently a Patriot Energy Vice President in the "Greater Boston Area."  See also Def's Exhibit 25, a true and correct copy of Carol Anne Rein's Linkedin page showing she was previously employed by Patriot Energy and she is in the "Greater Boston Area."

[58]Plaintiff's Sur-Reply, p. 20.

[59]Def's Exhibit 4, ¶ 3.

14

contract claim against Toxikon, all the evidence from Patriot that is necessary – the Appointment of Agent – is already in the record."[60]  Notwithstanding Spark's belief that it has the sole power to determine the evidence that Toxikon needs to prosecute its case, the importance and meaning of the "Appointment of Agent" agreement that Spark cites has been called into question by Dexter Williams's declaration.[61]  Moreover, it is undisputed that Patriot is inextricably involved in this case. Consequently, the parties will likely have to take the testimony of the key Patriot witnesses identified by Spark's Initial Disclosures to determine what these witnesses knew about Patriot's role vis-a-vis Toxikon and Spark.

Spark further argues that venue transfer is unnecessary because "Toxikon has stated unequivocally that it will add Patriot as a party if its Motion to Dismiss is denied, making compulsory process unnecessary."[62]  That is not true.  Toxikon has made no such "unequivocal" statement regarding adding Patriot as a party if the Motion to Dismiss is denied.  Toxikon has made no final decision regarding adding Patriot to this case.

Spark also ignores common sense in disputing the notion that a Massachusetts court would have more familiarity with New York state law than would a Texas court.[63]  Spark then doubles down on its illogical argument by wrongly asserting that Toxikon has implied that "this Court is not familiar or in a position to become familiar with New York law as necessary."[64]  Toxikon does not

---

[60]Plaintiff's Sur-Reply, p. 20.

[61]Def.'s exhibit 13, June 13, 2011 declaration of Dexter Williams and Def.'s Exhibit 26, July 1, 2011 declaration of Dexter Williams.

[62]Plaintiff's Sur-Reply, p. 20.

[63]Plaintiff's Sur-Reply, p. 20.

[64]Plaintiff's Sur-Reply, p. 20.

15

argue (and has never argued) that this Court "is not familiar or in a position to become familiar with New York law as necessary."  What Toxikon does argue is that a federal court in Massachusetts almost certainly has had more experience dealing with cases involving New York and Massachusetts state laws than does a federal court in Houston, Texas.

Spark also presumes to tell Toxikon which witnesses it will and will not need to call by writing "And once again, there will be no need for 'experts' on New York law."[65]  Although no final decisions have been made regarding the need for expert witnesses, it is quite possible that Toxikon will decide to call witnesses who have expertise in New York law or Massachusetts law.  Basic common sense dictates that it will be easier (and more cost effective) for Toxikon (and Spark) to locate these expert witnesses in or near Massachusetts or New York, not Texas.

**17.     Toxikon's Exhibits are Relevant, Authentic & Admissible**

All of Toxikon's exhibits are relevant, authentic and otherwise admissible, and plaintiff's objections are without merit.  *See also* Toxikon's Response to Plaintiff's Objections, which was filed separately.  Defendant's Exhibits 14, 15, 16, 17, 18 and 19 were authenticated by Defendant's Exhibit 20, Dietrich's declaration.  Additionally, certified copies of these federal court filings are being filed with this response.  All of these exhibits were created by plaintiff; therefore, they are admissions of a party opponent and not hearsay.  The relevance of these documents has been demonstrated throughout defendant's Reply (Dkt. 19) and this Response.  Plaintiff's objections should be overruled.

## IV.  CONCLUSION

Defendant Toxikon Corporation respectfully requests that this Court grant its Motion to

---

[65] Plaintiff's Sur-Reply, p. 21.

Dismiss for Lack of Personal Jurisdiction and dismiss this case without prejudice.  Alternatively, Toxikon requests that the Court grant its Motion to Transfer Venue Under 28 U.S.C. § 1406(a) or its Motion to Transfer Venue Under 28 U.S.C. § 1404(a) and transfer this case to the United States District Court, District of Massachusetts, Boston Division.  Toxikon also asks for such other and further relief, both general and special, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

THE DIETRICH LAW FIRM

By:      s/ Fred Dietrich_____
Fred Dietrich
Attorney-in-Charge
SBOT 05857050
2211 Norfolk St., Suite 620
Houston, Texas 77098
Tel.: 713.830.7687
Fax: 713.721.3112
fdietrich@dietrich-law.com

ATTORNEY FOR DEFENDANT
TOXIKON CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document, Defendant's Response to Plaintiff's Sur-Reply Regarding Defendant's Motion to Dismiss or Transfer Venue (Dkt. 12), was served upon all opposing counsel through the federal courts' ECF system on July 5, 2011.

 s/ Fred Dietrich_____
Fred Dietrich