# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SPARK ENERGY GAS, LP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-1120 |
| | § | |
| TOXIKON CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the court is defendant Toxikon Corporation's ("Toxikon") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, alternatively, motion to transfer venue under 28 U.S.C. §§ 1406(a) or 1404(a).  Dkt. 12.  Upon consideration of the motion, related filings, and applicable law, the court is of the opinion that Toxikon's motion to transfer venue should be GRANTED, and its motion to dismiss should be DENIED AS MOOT.

## I. BACKGROUND

Plaintiff Spark Energy Gas, LP ("Spark Energy"), a Houston-based company that provides natural gas services to retail customers, entered into two contracts with Toxikon, a Massachusetts corporation, to provide fixed quantities of natural gas to meet Toxikon's demands.  Dkt. 1, Exh. 3 at 2.  The first contract was effective from June 1, 2007 through May 31, 2010.  *Id.*  After termination of that contract, Spark Energy and Toxikon entered into a second agreement (the "Contract") that was to run from June 1, 2010 through May 31, 2012.  *Id.*  A third party, Patriot Energy Management, Inc. ("Patriot Energy"), signed both agreements on Toxikon's behalf.[1]  Dkt.

---

[1]  Toxikon contends that Patriot Energy signed the Contract without Toxikon's authorization.  Dkt. 19 at 29; Dkt. 19, Exh. 13, ¶ 7.  That argument goes to the substantive issues of the case and has no bearing on the court's jurisdictional analysis.  Accordingly, the court will not address that issue in this order.

17, Exh. 1, ¶¶ 7, 9.  Spark Energy provided Toxikon with natural gas pursuant to the Contract from June 1, 2010 through August 2010.  Dkt. 1, Exh. 3 at 3.  Spark Energy alleges that Toxikon refused to take the gas and failed to remit any payments in accordance with the Contract.  *Id.*  Thereafter, Spark Energy exercised its right to terminate and liquidate the contract in the event of an uncured default.  *Id.*

Spark Energy filed suit against Toxikon in Texas state court on February 8, 2011.  Dkt. 1, Exh. 3.  Toxikon removed to federal court under 28 U.S.C. § 1446(a) on March 28, 2011.  Dkt. 1.  On April 27, 2011, Toxikon filed the instant motion to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Dkt. 12.  In the alternative, Toxikon moves to transfer venue to the Boston Division of the United States District Court, District of Massachusetts, under Federal Rule of Civil Procedure Rule 12(b)(3) and 28 U.S.C. §§ 1406(a) or 1404(a).  *Id.*  Spark Energy and Toxikon have also both submitted objections to evidence.  Dkt. 19 at 41; Dkt. 23.  The court will first address each of the evidentiary objections, and then it will address Toxikon's motion to dismiss for lack of personal jurisdiction and Toxikon's alternative motion to transfer venue.

## II. Objections to Evidence

### A.      Spark Energy's Objections

Spark Energy objects to exhibits 12 through 19 in Toxikon's reply (Dkt. 19).  Dkt. 23.  Spark Energy first objects to Exhibits 14 through 19 as hearsay under Federal Rules of Evidence 802.  Dkt. 23 at 1.  Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).  A party's own statements being used against him or her, made in either an individual or representative capacity, fall outside of the definition of hearsay.  FED.

R. Evid. 801(d)(2)(A).  Similarly, statements made by persons who are authorized by the party to make the statements fall outside of the definition of hearsay.  Fed. R. Evid. 801(d)(2)(C ).  Toxikon's exhibits 14 through 19 consist of pleadings, declarations, and an email produced by representatives of Spark Energy in an official or representative capacity.  Dkt. 19.  Because employees or attorneys of Spark Energy made the statements, which are all admissions by a party opponent, they fall outside of the definition of hearsay under Rule 801(d)(2).

Spark Energy also objects to Toxikon's exhibits 14 through 17 and exhibit 19 as hearsay within hearsay, but provides no support for its assertions.  Dkt. 23 at 1–2.  Spark Energy has identified only one alleged level of hearsay in its objections, which the court addressed above as falling outside of the definition of hearsay.  Because Spark Energy has failed to articulate any multi-level hearsay in any of Toxikon's exhibits, Spark Energy has failed to show why the court should strike Toxikon's exhibits on that basis.

Spark Energy further contends that exhibits 14 through 19 are not self-authenticating under Rule 902 or 903 because they are not certified copies, bear no official seal or signature, and are not authenticated by the testimony of any witness who has knowledge of the originals.  Dkt. 23 at 1. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Circumstantial evidence, including the proponent's own testimony regarding the documents, suffices to effectively authenticate the documents.  Fed. R. Evid. 901(b)(1); *see also United States v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011) (citing *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008)) (explaining that a proponent may authenticate a document using the document's own distinctive characteristics and the circumstances surrounding its discovery).  Toxikon's attorney, Fred Dietrich, provided a sworn statement authenticating the documents as true

3

and correct copies obtained through PACER.  Dkt 19, Exh. 20.  Dietrich's affidavit constitutes sufficient evidence to support a finding that the printouts are true and correct.  *See* FED. R. EVID. 901(a), 901(b)(1).  Moreover, Toxikon subsequently filed certified copies from the Colorado District Court of each exhibit in question.  *See* Dkt. 24.  Toxikon has therefore met Rule 901's authentication requirement.  Because the statements relied upon in exhibits 14 through 19 fall outside the definition of hearsay, Spark Energy has failed to support its double hearsay contentions, and Toxikon has sufficiently authenticated the documents, Spark Energy's objections to exhibits 14 through 19 under Rules 802, 805, 902, and 903 are OVERRULED.

Spark Energy also objects to Toxikon's exhibits 14 through 19 as irrelevant and prejudicial under Rules 402 and 403.  Dkt. 23 at 1–3.  Under Rule 402, evidence which is not relevant is not admissible.  FED. R. EVID. 402.  Rule 403 lists circumstances under which even relevant evidence may be excluded.  FED. R. EVID. 403.  Evidence is excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *Id.*  The trial court holds broad discretion in determining whether or not to admit evidence, and must bear in mind that the liberal nature of the Rules of Evidence favors admission rather than exclusion if the evidence has any probative value at all.  *Young v. Ill. Cent. Gulf R.R.*, 618 F.2d 332, 337 (5th Cir. 1980) (citations omitted).  Toxikon's exhibits 14 through 19 are relevant because they shed light on the extent of Spark Energy's presence outside of Texas, which impacts the court's jurisdictional analysis.  *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312–313 (5th. Cir. 2007) (considering the plaintiff's lack of presence *outside* the forum state in the jurisdictional analysis).  Toxikon's exhibits therefore have at least some tendency to make the existence of facts necessary to the determination of Toxikon's motion more or less probable.  *See*

4

FED. R. EVID. 401.  Furthermore, the probative value of this evidence outweighs any potential danger of unfair prejudice, confusion of the issues, or waste of time.  *See* FED. R. EVID. 403.  Therefore, Spark Energy's objections to exhibits 14 through 19 under Rules 402 and 403 are OVERRULED.

Spark Energy next objects to exhibits 12 and 13, which are declarations of two Toxikon corporate representatives—Laxman Desai and Dexter Williams.  Dkt. 23 at 3.  However, Spark Energy fails to cite any rule or legal authority to support its assertions.  *Id.*  Instead, Spark Energy merely labels exhibits 12 and 13 as "unreliable and entitled to no weight."  *Id.*  The declarations, however, support Toxikon's main arguments related to its motion to dismiss, and they are directly relevant to the court's analysis.  Because Spark Energy makes only bare assertions and provides no legally relevant support for its objections to exhibits 12 and 13, Spark Energy's objections to exhibits 12 and 13 are OVERRULED.

## B.  Toxikon's Objections

Toxikon objects to portions of Spark Energy's exhibit 1 (Dkt. 17, Exh. 1), which is a declaration of Spark Energy's corporate representative, Drew Henderson.  Dkt. 19 at 41.  Toxikon contends that Henderson's statements about what Patriot Energy knew are inadmissible hearsay, and also objects to "all of Henderson's conclusory statements about Patriot being Toxikon's agent."  *Id.*  The court does not rely on those statements in its personal jurisdiction or venue analysis.  Accordingly, Toxikon's objection to Drew Henderson's statements are OVERRULED AS MOOT.

## III.  PERSONAL JURISDICTION

### A.  Legal Standard

A court must dismiss an action when it lacks personal jurisdiction over the defendant.  FED. R. CIV. P. 12(b)(2).  When a district court rules on personal jurisdiction without an evidentiary hearing, as is the case here, the plaintiff must make a *prima facie* showing of jurisdiction.  *Johnston*

*v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted).  In deciding whether to exercise personal jurisdiction, the court may consider the entire contents of the record, including affidavits.  *Paz v. Bush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citations omitted).  The court must resolve all conflicts in the evidence in favor of the plaintiff and accept as true all of the plaintiff's uncontroverted allegations.  *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009) (citation omitted).  The two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Johnston*, 523 F.3d at 609 (5th Cir. 2008) (citation omitted).  "To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  *Mullins*, 564 F.3d at 398 (citations omitted).

"Jurisdiction may be general or specific." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).  General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868 (1984); *see also Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993).  The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible*

6

*Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). The Fifth Circuit imposes a high standard when ruling on general jurisdiction issues. *Johnston*, 523 F.3d at 611 (citations omitted) (illustrating the difficulty of proving general jurisdiction in the Fifth Circuit due to the high standard set by the Supreme Court).

A forum state may exercise specific jurisdiction over a non-resident defendant "when the non-resident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997) (citation omitted). The court considers whether the defendant has purposefully availed himself of the laws of the forum state and could reasonably anticipate being sued there. *Burger King v. Rudzewicz*, 471 U.S. 462, 482, 105 S. Ct. 2174 (1985). Even a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ruston*, 9 F.3d at 419.

**B.    Analysis**

*1.    General jurisdiction*

Spark Energy contends that the court holds general jurisdiction over Toxikon because "Toxikon registered to do business in Texas, maintained a registered agent in Texas, hired an employee in Texas to create business here, equipped the employee with a home office in Texas, and conducted business with Texas residents."[2]  Dkt. 17 at 16.  Spark Energy argues that these are not random, fortuitous, or isolated contacts and that Toxikon indeed "reached out to this State to conduct business here."  *Id.*  Toxikon contends that its contacts with Texas are not substantial, continuous, or systematic, and that the court does not have personal jurisdiction over Toxikon.  Dkt. 12 at 16.

---

[2]  Toxikon asserts that it only had a registered agent in Texas at the commencement of the suit because it mistakenly failed to file appropriate documents with the Texas Secretary of State upon termination of its Texas employee in October 2009.  Dkt. 19 at 30.  The court must "evaluat[e] contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."  *Johnston*, 523 F.3d at 610.  Accordingly, the court must consider the agent in its general jurisdiction analysis.

Toxikon argues that it does not have a general business presence in Texas to create general jurisdiction because "Toxikon has no physical presence in Texas, and its small amount of sales to Texas customers is too insubstantial to satisfy the demanding requirements of general jurisdiction." Dkt. 12 at 17.

Toxikon relies upon the Fifth Circuit's decision in *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602 (5th Cir. 2008) to support its argument that this court lacks general jurisdiction. In *Johnston*, the Fifth Circuit considered whether Texas courts could exercise general jurisdiction over three defendants, two of which had more extensive contacts with Texas than Toxikon—MDS, Inc. ("MDS") and MDS Canada, Inc. ("MDS Canada"). MDS's contacts with Texas included (1) purchasing over $5.2 million worth of goods from Texas companies; (2) entering into a hosting services agreement and a software licensing agreement with a Texas corporation that was governed by Texas law; (3) employing two residents of Texas who performed work for MDS from their homes; and (4) having a former corporate director who resided in Texas. *Johnston*, 523 F.3d at 612–13. MDS Canada's contacts included (1) coordinating or designing clinical trial work in Texas, which was carried out by independent Texas physicians; (2) selling well over $1 million worth of products to Texas customers each year for a period of five years; (3) sending its employees to Texas to service equipment; (4) possibly employing a Texas resident who performed 37 days of technical work for MDS Canada in Texas over three years; and (5) maintaining a Texas Radioactive Materials License. *Id.* at 613–14. The Fifth Circuit determined that neither MDS's nor MDS Canada's contacts were substantial, systematic, and continuous enough to confer general jurisdiction in Texas. *Id.*

Toxikon had a single employee, Stephen Mohan, in Texas from April to October of 2009. Dkt. 12, Exh. 4. Toxikon argues that the contacts associated with Mohan are "minor for

8

jurisdictional purposes," noting that in *Johnston*, MDS employed two Texas residents from their homes who reported to supervisors outside of Texas, yet the court found the contacts insufficient to establish general jurisdiction.  Dkt. 19 at 32.  Spark Energy claims that Mohan's employment in Texas was a more substantial contact than the *Johnston* employees because, unlike the *Johnston* employees, Toxikon hired Mohan "for the specific purpose of boosting Texas sales" and Toxikon equipped Mohan with a home office.  Dkt. 17 at 3; Dkt. 17, Exhs. 2, 13, 14.  The *Johnston* employees did not work with Texas customers and could have performed their work anywhere in the world.  *Johnston*, 523 F.3d at 612–13.  Here, Mohan's offer letter indicates that Toxikon hired Mohan as a sales representative responsible primarily for accounts in Texas and Illinois and secondarily for accounts in Nebraska, Kansas, Oklahoma, Louisiana, Arkansas, Missouri, Mississippi, and Alabama.  Dkt. 17, Exh. 2, Exh. 13.  Mohan was "responsible for directly selling Toxikon's testing services to the assigned territories and industries."  Dkt. 17, Exh. 14.  Individuals located at Toxikon's offices directly oversaw Mohan's work, and Toxikon supplied Mohan with general office equipment.  *Id.*

Mohan's presence in Texas constitutes a regular contact with Texas during the six months he worked for Toxikon.  However, in *Johnston*, the Fifth Circuit noted that MDS's employees' presence in Texas, while "certainly . . . a regular contact with Texas, [was] not substantial enough to create a general business presence in Texas."  *Johnston*, 523 F.3d at 613–14.  Mohan's six-month contact with Texas while employed by Toxikon was more substantial than that of the MDS employees, but it was not substantial, continuous, and systematic enough to justify the exercise of general jurisdiction.

In *Submersible Systems v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001), the Fifth Circuit held that a company that employed three employees to monitor construction

of a marine drilling rig in Mississippi, the forum state, were not "the sort of continuous and systematic contacts that would allow the district court to take jurisdiction over [the defendant] in [that] case." The contacts of these employees were likely not deemed continuous and systematic because their presence in Mississippi was only short term. *See Submersible Sys.*, 249 F.3d at 419. Mohan's presence in Texas, at least as a Toxikon sales representative, was also short-term. While Toxikon *may* have contemplated a more long-term relationship when it initially hired Mohan, which, had that occurred, *may* have reflected continuous and systematic contacts, Toxikon ended up terminating its relationship with Mohan after six months and did not hire a new employee to work on Texas accounts after the termination of its relationship with Mohan. The six-month's worth of contacts that were terminated and never rekindled simply are not the type of continuous and systematic contacts that are sufficient to render a company subject to the general jurisdiction of this state.

Notwithstanding the lack of substantial employee presence in Texas, Spark Energy contends that Toxikon's business with Texas is substantial because its annual Texas sales total roughly $830,000. Dkt. 17 at 17–18. Toxikon argues that this amount is not substantial enough to confer jurisdiction, and, even if it were more substantial, it amounts to less than 4% of its annual revenue. Dkt. 12 at 16. As noted above, the combination of having a Texas employee and having sales over $1 million annually, among other contacts, was not substantial enough to confer general jurisdiction over MDS Canada in *Johnston*. *See Johnston*, 523 F.3d at 614. The Fifth Circuit held that "neither the total amount of sales nor the percentage of annual sales [was] substantial or regular enough to create a general presence in Texas." *Id.* In *Johnston*, the sales were consistently no more than 2.5% of MDS Canada's total annual sales. *Id.* Toxikon's percentage of Texas sales is slightly higher, but still less than 4%. Dkt. 12, Exh. 4. Neither this percentage nor the amount of total sales is

10

substantial enough to confer general jurisdiction.[3]  *See, e.g.*, *Johnston*, 523 F.3d at 614 (no general jurisdiction despite millions of dollars in annual sales in Texas that made up less than 2.5% of total sales); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (no general jurisdiction despite earning over 12% of sales from the forum state); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372 (5th Cir. 1987) (no general jurisdiction despite hundreds of millions of dollars of sales to Texas entities).  While Toxikon's sales in Texas demonstrate that Toxikon does business with Texas, they are not substantial, continuous, and systematic contacts.

Spark Energy attempts to distinguish Toxikon's cited cases by contending that in addition to its Texas sales, Toxikon was registered to conduct business in Texas, maintained a registered agent in Texas, had an employee in Texas, and contracted with Texas residents.  Dkt. 17 at 18.  The Fifth Circuit addressed a similar combination of factors in *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992).  Although the defendant in *Siemer* employed no Texas resident, it did make sales to Texas, was authorized to conduct business in Texas, and maintained a registered agent in Texas.  *Siemer*, 966 F.2d at 183.  In denying general jurisdiction, the *Siemer* court stressed that "a corporation's qualification to do business in the forum state and service on its registered agent in the state is of no special weight in evaluating general personal jurisdiction."  *Id.* (internal quotation marks and citation omitted).  "A registered agent, from any conceivable perspective, hardly amounts to 'the general business presence' of a corporation so as to sustain an assertion of general

---

[3]  Spark Energy contends that the data on file is insufficient to classify Toxikon's sales as "insubstantial" because Toxikon fails to reference its percentage of sales from *other* states.  Dkt. 17 at 17.  However, the Fifth Circuit has frequently engaged in jurisdictional evaluations based on percentage data and/or raw sales data in Texas *without* factoring in sales from other states.  *See, e.g.*, *Johnston*, 523 F.3d at 614 (relying on a percentage of total sales and raw revenue without mentioning sales to other states to find no general jurisdiction); *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181–84 (5th Cir. 1992) (noting defendant's percentage of Texas sales without mentioning sales to other states and finding no general jurisdiction); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (noting that one of the defendants yielded 12.9% of its total revenues from Louisiana (the forum state) without discussing defendant's sales to other states).  Accordingly, the court need not consider Toxikon's out-of-state revenue data to rule on general jurisdiction.

11

jurisdiction." *Id.* (quoting *Bearry*, 818 F.2d at 375).  The only substantive difference between Toxikon and *Siemer* is that Toxikon's registered agent was also employed by Toxikon for a short time.  His employment, however, ended well over a year before Spark Energy commenced this suit in state court.[4]  The court finds that the addition of this short-term Texas employee to the other factors considered by the *Siemer* court is not sufficient to render the total combination of factors substantial, continuous, and systematic.

Reviewing Toxikon's Texas business presence *in toto*, its contacts were simply too insubstantial to provide notice that it might be haled into court in Texas.  *See Wilson v. Belin*, 20 F.3d 644, 650 (5th Cir. 1994) (reviewing the defendant's contacts with Texas "*in toto*" and holding that "various brief contacts with Texas" were "simply . . . not substantial enough to give rise to" an expectation of being sued in Texas on any matter).  The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys.*, 249 F.3d at 419 (citation omitted).  Because Spark Energy failed to show that Toxikon's contacts with Texas are substantial, continuous, and systematic, the court may not exercise general jurisdiction over Toxikon.

### 2.    *Specific jurisdiction*

Spark Energy contends that even if Toxikon's contacts with Texas are not sufficient to confer general jurisdiction, its claims arise out of or relate to Toxikon's contacts with Texas, making the exercise of specific jurisdiction appropriate.  Dkt. 22 at 11.  Spark Energy argues that Toxikon established minimum contacts in Texas by entering into two agreements with Spark Energy, which

---

[4]  Toxikon maintains that after Mohan's employment ended in October 2009, it mistakenly failed to file documents with the Texas Secretary of State showing that it no longer had an agent in Texas. Dkt. 12 at 11.  After the commencement of this litigation, Toxikon changed its records with the Texas Secretary of State to reflect that Toxikon has no registered agent in Texas.  *Id.*

12

created long-term and continuing obligations between the parties.  Dkt. 17 at 8–11.  Spark Energy

further argues that Toxikon purposely availed itself of the benefits and protections of Texas laws by

registering to do business in Texas, actually conducting business in Texas, and designating a Texas

registered agent.  *Id.* at 7–8.  On the other hand, Toxikon contends that it neither purposefully

directed its activities toward Texas nor purposefully availed itself of the benefits and protections of

Texas laws.  Dkt. 12 at 12.  According to Toxikon, the Contract required neither party to perform

its obligations in Texas, and no one from Toxikon did anything in Texas concerning the Contract.

*Id.*  Additionally, Toxikon asserts that *Moncrief Oil International, Inc. v. OAO Gazprom*, 481 F.3d

309 (5th. Cir. 2007) is the controlling authority in this case.  Dkt. 19 at 19.  Spark Energy disagrees,

and instead relies on those two prior cases that the *Moncrief* court distinguished—*Mississippi

Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982), and *Central Freight Lines,

Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003)—to support its arguments.

      In *Transpo*, a Mississippi trucking firm entered into an agreement with a California freight

broker under which the Mississippi company would supply trucks to move goods for the California

company.  *Transpo*, 681 F.2d at 1005.  After the plaintiff sued to recover unpaid invoices under the

contract, the defendant moved to dismiss for lack of personal jurisdiction, and the district court

granted the defendant's motion.  *Id.*  In reversing the district court's judgment, the Fifth Circuit

discussed the defendant's contacts with Mississippi.  *Id.* at 1005–06.  All of the plaintiff's trucks

were garaged and serviced at its Mississippi headquarters and regularly returned there.  *Id.*  The

general agreement reasonably contemplated payment to the plaintiff at its Mississippi headquarters,

and the plaintiff used its headquarters to telephone the defendant's drivers and pay their salaries.  *Id.*

The court cited the Fifth Circuit's well-established rule that "when a nonresident defendant takes

purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by

the defendant in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes." *Id.* at 1007 (citations and quotations omitted).  The Fifth Circuit held that by contracting with the resident plaintiff, it was reasonably foreseeable to the defendant that the plaintiff would perform a material part of its contractual obligations within the forum state.  *Id.* at 1008.  Accordingly, the court ruled that the Mississippi trial court could exercise specific jurisdiction over the defendant.  *Id.* at 1012.

In *Central Freight Lines*, a Texas freight delivery company sued a New Jersey freight delivery company for breach of a contract under which each carrier could utilize the other's delivery services.  *Central Freight Lines*, 322 F.3d at 379.  The district court dismissed the case for lack of personal jurisdiction.  *Id.* a 378.  The Fifth Circuit evaluated several of the defendant's Texas contacts and determined that they were sufficient to establish specific jurisdiction.  *Id.* at 382-84.  The defendant sent two representatives to Texas to meet with the plaintiff, and it obtained information about the plaintiff in the hope of finding a business partner in Texas.  *Id.* at 382.  The defendant "reached out" to the plaintiff by telephone and mail "with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation."  *Id.*  The court found that the defendant caused "purposeful and affirmative action" in Texas by agreeing to deliver freight to Texas customers, which had the clearly "foreseeable" effect of "causing business activity in the forum state."  *Id.* (citing *Transpo*, 681 F.2d at 1007).

In *Moncrief*, a Texas-based oil and gas investment company contracted with Russian defendants based in Moscow to develop a natural gas field in Russia.  *Moncrief*, 481 F.3d at 310.  The plaintiff filed suit in Texas after the main defendant announced that it had partnered with German entities to develop the natural gas field.  *Id.* at 311.  The plaintiff argued that the defendant established minimum contacts by "(1) entering into contracts with Moncrief, (2) knowing from the

14

outset that Moncrief is a Texas resident, (3) acknowledging and approving of Moncrief's substantial performance in Texas, and (4) sending an executive to visit Texas—at Moncrief's expense—in furtherance of that performance." *Id.* at 312. In denying specific jurisdiction, the court explained that the plaintiff's reliance on *Transpo* and *Central Freight*'s "foreseeability" standard failed because, among other reasons, the court's "finding of jurisdiction in *Transpo* [and *Central Freight*] was supported not only by foreseeability, but also by the fact that the forum state was 'clearly the hub of the parties' activities'" in both cases. *Id.* at 312-13 (citation omitted).

The *Moncrief* court went on to list several types of contacts with Texas that either the *Transpo* or the *Central Freight* defendants had that the *Moncrief* defendants lacked: (1) Texas was clearly the hub of the parties' activities in both *Transpo* and *Central Freight*; (2) the *Transpo* plaintiff existed only within the state of Texas; (3) the *Transpo* defendant actively engaged in the various activities taking place in Texas; (4) the *Central Freight* plaintiff's Texas location was strategically advantageous to the defendant; (5) the *Central Freight* plaintiff's Texas location was the basis for the agreement; and (6) the *Central Freight* contract contemplated Texas as the location for performance. *Id.* An additional important distinction between *Central Freight* and *Moncrief* is that the *Moncrief* contract contained a clause requiring arbitration in Russia under Russian law, and the *Central Freight* contract was silent as to choice of law. *Id.* at 312–13 (citations omitted). *Moncrief* thus clarified the holdings of *Transpo* and *Central Freight* by explaining the court's reliance on a variety of Texas contacts in *Transpo* and *Central Freight*. The court emphasized that "[m]ere foreseeability, standing alone, does not create jurisdiction." *Id.* at 313.

Spark Energy insists that *Moncrief* does not apply to the present case because (1) unlike Spark Energy, whose gas trading operations exist only in Texas, the *Moncrief* plaintiff had numerous locations around the world where it could perform, even establishing an office in Russia specifically

15

for its relationship with the foreign defendant; and (2) unlike the defendant in *Moncrief*, Spark Energy and Toxikon did not choose the location and forum for their dispute resolution.  Dkt. 22 at 15–16.  Spark Energy contends that the court should rely on *Transpo* and *Central Freight* instead of *Moncrief*, and that, under *Transpo* and *Central Freight*, the court should exercise specific jurisdiction because Toxikon should have foreseen that its actions would cause business activity within Texas.  Dkt. 17 at 11; Dkt. 22 at 15.  However, even if *Moncrief* is not 100% analogous with the instant case, the court finds the Fifth Circuit's interpretation of *Transpo* and *Central Freight* in *Moncrief* to be particularly instructive with regard to how the court should apply the cases here.  The court, therefore, will consider each of the types of contacts that the *Moncrief* court noted were important to the Fifth Circuit's findings of specific jurisdiction in *Transpo* and *Central Freight*.

First, record evidence shows that Spark Energy, unlike the *Transpo* plaintiff, did not exist only in Texas.  *See Transpo*, 681 F.2d at 1009.  Like the *Moncrief* plaintiff, Spark Energy is based in Texas, but it engages in various projects in other jurisdictions.  Dkt. 19, Exh. 8 at 17–24 (Drew Henderson's testimony acknowledging that Spark Energy has contracts with over forty brokers who market on its behalf to customers in at least thirteen states all across the country).  For example, Spark Energy has maintained a "Director of Rocky Mountain Operations" based in Colorado who used a Denver address and who exercised a "very high degree of authority" to run Spark Energy's operations in that area.  Dkt. 19, Exh. 15 at 2–6; Dkt. 19, Exh. 16, ¶¶ 5–8.  Although Spark Energy did not establish an office in the defendant's home jurisdiction as was the case in *Moncrief*, Spark Energy did extend its business outside of Texas and existed elsewhere.

Second, regardless of whether the Contract spelled out a specific location and forum for dispute resolution, it contained a New York choice-of-law clause coupled with a reference to the Code of Massachusetts Regulation's arbitration procedures.  Dkt. 1, Exh. 3 at 8–9.  This "indicate[s]

16

rather forcefully" that Toxikon "did not purposefully direct its activities towards Texas."[5] *Moncrief*, 481 F.3d at 313 (quoting *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992)).   Leaving Texas out of the choice-of-law clause and arbitration procedures while specifically delineating New York and Massachusetts indicates that Toxikon was not purposefully availing itself of the benefits and protections of Texas laws when it entered into the Contract.  *See Moncrief*, 481 F.3d at 313 (reasoning that the Russian arbitration and choice-of-law clauses in *Moncrief* suggested that "Moncrief's Texas location was irrelevant" and that "Gazprom meant for the undertaking to remain wholly Russian in nature").

Third, even assuming *arguendo* that the contacts above weigh in Spark Energy's favor, the five remaining types of contacts discussed by the *Moncrief* court weigh in favor of denying specific jurisdiction.  Texas did not serve as the hub of the parties' activities because the risk of loss passed inside Massachusetts, the natural gas was to be physically transported to Toxikon's Bedford office, and no term in the Contract mandates that payment be sent to Texas or specifies that Spark Energy's work under the contract must be performed in Texas.  Dkt. 1, Exh. 3 at 8–9; Dkt. 19, Exh. 8 at 82–83.  Toxikon did not actively engage in the activities taking place in Texas because its only connection to Texas was sending payments to Spark Energy's Texas office, which the Fifth Circuit has deemed insufficient to confer jurisdiction.  *See Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985).  Spark Energy's Texas location was not strategically advantageous to Toxikon because the natural gas could have come from anywhere, and Spark Energy's location in Texas did not benefit Toxikon in any way.  Dkt. 19, Exh. 12, ¶ 6.  Additionally, Toxikon did not specifically seek

---

[5]  The parties dispute whether or not 220 C.M.R. section 14.06(4)(b) governs this alleged breach of contract. The court need not rule on that issue in its jurisdictional analysis because the question of whether Toxikon purposefully availed itself of Texas laws can be answered by noting the mention of Massachusetts and New York and the absence of a reference to Texas in the arbitration and choice-of-law provisions. *Cf. Moncrief*, 481 F.3d at 313 (noting that the court in *Central Freight*, in finding specific jurisdiction, "gave weight to the *absence* of a choice of law provision that might have given the defendant reason to believe it could not be haled into court in the forum state").

out a Texas gas supplier, but instead used Patriot Energy to research natural gas prices and terms of service.  Dkt. 19, Exh. 13 at 3.  Texas did not serve as the basis for the Contract because Spark Energy's Texas location was irrelevant to the basis of the parties' bargain.  Dkt. 19, Exh. 12, ¶ 6. The Contract contained no requirement specifying Spark Energy's performance as being necessary in Texas.  Dkt. 19, Exh. 9; Dkt. 19, Exh. 8 at 82–83.  Toxikon's contacts with Texas, therefore, fall short of the *Transpo* and *Central Freight* defendants' extensive Texas contacts.

Spark Energy also attempts to support its specific jurisdiction argument by claiming that Toxikon's registration to conduct business in Texas and Texas registered agent demonstrate purposeful availment for purposes of specific jurisdiction.  Dkt. 17 at 7–8.  However, Spark Energy fails to cite any authority that uses Texas business registration or a Texas registered agent as a minimum contact for purposes of specific jurisdiction.  These contacts do not arise from and are not directly related to Spark Energy's cause of action.  Accordingly, the court need not factor those alleged contacts into its specific jurisdiction analysis.

In sum, the court may not exercise specific jurisdiction over Toxikon because Toxikon's contacts with Texas are insufficient to support specific jurisdiction.  It is unnecessary, therefore, to consider whether the exercise of such jurisdiction would violate traditional notions of fair play and substantial justice.  *See Wilson*, 20 F.3d at 650 n.7.  Because Spark Energy failed to show that Toxikon directed its activities toward Texas or purposefully availed itself of the privileges of conducting activities in Texas, the court may not exercise specific jurisdiction over Toxikon.

## IV. MOTION TO TRANSFER VENUE

Toxikon moves to dismiss and, in the alternative, Toxikon requests that the court transfer the case to the Boston Division of the District Court of Massachusetts.  Dkt. 12 at 18–25.  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss,

or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  Even a court that lacks personal jurisdiction over the defendant may transfer the case to another judicial district under 28 U.S.C. § 1406(a).  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67, 82 S. Ct. 913 (1962); *see also Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981).  Section 1406(a) applies equally to cases originally filed in federal court and cases originally filed in state court and later removed to federal court.  *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985).

Here, the court finds that it is in the interest of justice to transfer this case rather than dismiss it.  In a diversity case, venue is proper in a judicial district where any defendant resides, if all defendants reside in the same state.  28 U.S.C. § 1391(a)(1).  "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  Toxikon, which is the only defendant in this case, maintains its principle place of business in Bedford, Massachusetts (Dkt 12, Exh. 3 at 1), and therefore is subject to personal jurisdiction there.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2854–55 (2011) (citation omitted) (identifying a defendant's principal place of business as a "paradigm" basis for the exercise of general jurisdiction).  Accordingly, Toxikon resides in the District of Massachusetts, and this suit may have originally been brought in the District Court of Massachusetts.

The case should be transferred to another district where both venue is proper and personal jurisdiction can be had over Toxikon.  *See Bentz*, 778 F.2d at 1028.  Venue is proper and personal jurisdiction can be had over Toxikon in the Boston Division of the District Court of Massachusetts

because Toxikon's principal place of business is in Bedford. *See* 28 U.S.C. § 1391(c). Accordingly, Toxikon's motion to transfer venue under 28 U.S.C. § 1406(a) is granted.[6]

## V. CONCLUSION

Because the court lacks personal jurisdiction over Toxikon and venue is proper in the Boston Division of the Federal District Court of Massachusetts, Toxikon's motion to transfer venue is GRANTED and this case is hereby TRANSFERRED to the United States District Court, District of Massachusetts, Boston Division. Toxikon's motion to dismiss for lack of personal jurisdiction is DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on August 15, 2011.

_____
Gray H. Miller
United States District Judge

---

[6] Because the court is transferring the case under 28 U.S.C. 1406(a), the court need not consider Toxikon's motion to transfer venue under 28 U.S.C. 1404(a).